1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  MONTIQUENO CORBETT, DAMARIS<br>12  LUCIANO, and ROB DOBBS,<br>  individually and on behalf of all others<br>13  similarly situated,<br>14                                    Plaintiffs,<br>15  v.<br>16  PHARMACARE U.S., INC.,<br>17                                    Defendant. | Case No.:  21cv137-GPC(AGS)<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION TO DISMISS AND<br>DENYING DEFENDANT'S MOTION<br>TO STRIKE**<br>**[Dkt. No. 6.]** |

18

19        Defendant Pharmacare U.S., Inc. filed a motion to dismiss the complaint pursuant

20  to Federal Rule of Civil Procedure 9(b), 12(b)(1) and 12(b)(6) and motion to strike under

21  Rule 12(f).  (Dkt. No. 6.)  Plaintiffs filed an opposition to which Defendant replied.  (Dkt.

22  Nos. 12, 17.)  The Court finds that the matter is appropriate for decision without oral

23  argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court

24  GRANTS in part and DENIES in part Defendant's motion to dismiss and DENIES

25  Defendant's motion to strike.

26                                **Background**

27        On January 25, 2021, Plaintiffs Montiqueno Corbett, Damaris Luciano and Rob

28  Dobbs ("Plaintiffs") filed a putative class action complaint against Defendant

PharmaCare U.S., Inc. ("Defendant" or "PharmaCare") for violations of California's consumer fraud statutes for its sale of twelve dietary supplement products ("Products") under the name Sambucol that include elderberry.[1]  (Dkt. No. 1, Compl. ¶ 1.)  Elderberry is derived from a flowering plant called Sambucus which has become a popular dietary supplement and has recently generated $100 million in sales in the United States.  (*Id.* ¶¶ 2, 3.)

Plaintiffs allege two theories of consumer fraud: 1) an illegal products theory; and 2) false and misleading labels, packaging and advertising theory as well as omissions claims.  On the first theory, Plaintiffs claim that Defendant's Products are illegal to sell and are mislabeled as dietary supplements under the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 321(ff), and the Dietary Supplement Health and Education Act, (DSHEA") which passed in 1994 and established a new framework to govern the "composition, safety, label, manufacturing and marketing of dietary supplements" as well as California's Sherman Law, California Health & Safety Code section 110095, California's consumer protection laws that incorporate the FDCA  (*Id.* ¶¶ 23-27, 36.)

A dietary supplement is a "product (other than tobacco) intended to supplement the diet" and contain one or more of the following; 1) vitamins, 2) minerals, 3) herbs or other botanicals, 4) amino acid, 5) a supplement meant to increase total dietary intake, or 6) a concentrate, metabolite, constituent, extract or combination of any of the listed ingredients.  (*Id.* ¶ 26 (citing 21 U.S.C. § 321(ff)(1).)  Under the DSHEA, a "new" dietary ingredient (those not used in the United States before 1994), may be used in dietary supplements but must first be submitted to the FDA prior to sale unless the

---

[1] The 12 Elderberry Products at issue are 1) Sambucol Black Elderberry Original Syrup, 2) Sambucol Black Elderberry Advanced Immune Syrup, 3) Sambucol Black Elderberry Sugar Free Syrup, 4) Sambucol Black Elderberry Syrup for Kids, 5) Sambucol Black Elderberry Gummies, 6) Sambucol Black Elderberry Gummies for Kids, 7) Sambucol Black Elderberry Advanced Immune Capsules, 8) Sambucol Black Elderberry Effervescent Tablets, 9) Sambucol Black Elderberry Chewable Tablets, 10) Sambucol Black Elderberry Pastilles (Throat Lozenges), 11) Sambucol Black Elderberry Daily Immune Drink Powder, and 12) Sambucol Black Elderberry Infant Drops.  (Dkt. No. 1, Compl. ¶ 1.)

ingredient has been "present in the food supply as an article used for food without being chemically altered." (*Id.* ¶¶ 28, 30 (quoting 21 U.S.C. § 350b(a)(1).)  A manufacturer or distributor must provide the FDA with information that demonstrates "history of use or other evidence of safety establishing that the dietary ingredient when used under the conditions recommended or suggested in the labeling of the dietary ingredient will reasonably be expected to be safe." (*Id.* ¶ 31 quoting 21 U.S.C. § 350b(a)(2).)  After receiving information about the new dietary ingredient ("NDI"), the FDA may then determine whether the manufacturer or distributor has provided an adequate basis to conclude that the NDI is reasonably expected to be safe. (*Id.* ¶ 32.)  Dietary supplements that contain undisclosed NDIs are "adulterated" for purposes of the FDCA. (*Id.* ¶ 34.)  The complaint avers that Defendant did not notify the FDA with the required NDI notification for its elderberry extract. (*Id.* ¶ 33.)  As such, Plaintiffs allege that Defendant's Products are illegal to sell because the elderberry extract is adulterated and misbranded under the FDCA and California's Sherman Law. (*Id.* ¶ 36.)

On their illegal products theory, Plaintiffs allege three additional violations of the FDCA.  First, they contend that Defendant, by marketing the Products as "scientifically tested", "virologist developed", "developed by a world renowned virologist", as well as advertising that the Products "support[] immunity" or claim "immunity support" are implied disease claims under 21 C.F.R. § 101.93(g)(2) and misbranded under 21 U.S.C. § 343(r)(6). (*Id.* ¶¶ 38-42, 44 50 (citing 21 U.S.C. § 343(r)(6).)  These phrases promise the Products have the ability to mitigate, treat, cure, or prevent diseases which are barred by the FDCA's requirement that a product cannot make a claim to "diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." (*Id.*)  Second, Plaintiffs allege the Products are misbranded under 21 U.S.C. § 352(f)(1) because the labeling fails to include adequate directions for use and violate 21 U.S.C. § 331(a) of the FDCA. (*Id.* ¶¶ 56-59.)  Third, Plaintiffs claim that the Products are misbranded by stating the Products have "high antioxidant levels" and fail to comply with 21 C.F.R. § 101.54(g). (*Id.* ¶¶ 60-68.)

1

2      Plaintiffs' second theory alleges that the claim that the Products have been

3   "scientifically tested" is misleading and deceptive because no published studies that test

4   the Products exist and those that do exist do not contain the same elderberry extract

5   formulation used in published studies. (*Id*. ¶¶ 69-72.)  Also, "scientifically tested"

6   improperly suggests that the products are effective in keeping consumers safe from

7   diseases which is false.  (*Id.* ¶ 73.)

8      Plaintiffs Montiqueno Corbet is a resident and citizen of San Diego, California,

9   Damaris Luciano is a resident and citizen of Holyoke, Massachusetts, and Rob Dobbs is a

10  resident and citizen of Florissant, Missouri.  (*Id.* ¶¶ 14-16.) They all purchased certain of

11  the Products at issue after being exposed to, saw and relied on Defendant's materially

12  misleading representations on the either the Products' packaging and labeling, on

13  advertisements on T.V. or on websites.  (*Id.* ¶¶ 79-93.)  When they purchased the

14  Products, they believed they were legally sold supplements and they all claim they

15  experienced no improvement in their health after using the Products.  (*Id.* ¶¶ 80, 81, 87,

16  88, 94, 95.)

17      Plaintiffs seek to certify a national class of "All persons in the United States who

18  purchased the Products (the 'National Class') for personal use and not for resale."[2]  (*Id.* ¶

19  100.)  They also seek to certify a California, Massachusetts and Missouri subclass.  (*Id.*)

20  The complaint alleges claims under 1) California's Unfair Competition Law ("UCL"),

21  Cal. Bus. & Prof. Code section 17200 *et seq.* on behalf of a national class and the

22  California subclass; 2) California's False Advertising Law ("FAL"), Cal. Bus. & Prof.

23  Code section 17500 on behalf of the California subclass; 3) California's Consumer Legal

24  Remedies Act ("CLRA"), Cal. Civ. Code section 1750 *et seq.* on behalf of the California

25  subclass; 4) Massachusetts General Laws Chapter 93A, § 2 on behalf of the

26

27  ───────────────

28  [2] The Court notes that there is no temporal limitation on the proposed class.

4

Massachusetts subclass; 5) Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. § 407.010 *et seq*. on behalf of the Missouri subclass; 6) breach of express warranty on behalf of a national class and the subclasses; and 7) breach of the implied warranty of merchantability on behalf of a national class and the subclasses.  (*Id.* ¶¶ 111-194.)

### Discussion

**A.    Legal Standard on Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted).  "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack.  *Id.*  Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction.  *See Chandler v. State Farm Mut. Auto Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010).

Here, Defendant appears to make a facial challenge to subject matter jurisdiction relying on the allegations in the complaint.

**B.    Legal Standard on Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

/ / /

## C.    Legal Standard on Federal Rule of Civil Procedure 9

Where a claim alleges fraud or is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).

Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct). In addition, the complaint must state "what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*) superseded by statute on other grounds, *Private Sec. Litig. Reform Act of 1995*, 15 U.S.C. § 78u–4(b)(1), *as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

## D.    Legal Standard on Federal Rule of Civil Procedure 12(f)

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds* 510 U.S. 517 (1994)).

"Motions to strike are 'generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Cortina v. Goya Foods, Inc*., 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015) (quoting *Rosales v. Citibank,* 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)).  As such, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Colaprico v. Sun Microsys., Inc*., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).  "Courts will not grant motions to strike unless 'convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'"  *Novick v. UNUM Life Ins. Co. of America*, 570 F. Supp. 2d 1207, 1208 (C.D. Cal. 2008) (quoting *RDF Media Ltd. v. Fox Broad. Co*., 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)).  "When ruling on a motion to strike, this Court 'must view the pleading under attack in the light most favorable to the pleader."  *Id*. (citing *RDF Media Ltd*., 372 F. Supp. 2d at 561).

## Discussion

### A.    Standing

Defendant argues that Plaintiff's illegal products theory fails for lack of Article III standing and statutory standing.  (Dkt. No. 6-1 at 11-13.[3])  Plaintiffs claim they have Article III standing to pursue their claims that Defendant's products were not legally sold supplements under the FDCA and DSHEA, that if they had known about the illegality of the Products, they would not have purchased them and they suffered an injury in fact because they lost money when they purchased the Products.  (Dkt. No. 12 at 16.)  As to statutory standing, Plaintiffs merely distinguish the cases cited by Defendant.  (*Id*. at 18-19.)

---

[3] Page numbers are based on the CM/ECF pagination.

As a starting point, both parties conflate the legal analysis and standard of Article III standing and statutory standing under the UCL, CLRA and warranty claims. However, Article III standing and statutory standing are distinct legal analyses. *Cetacean Community v. Bush*, 386 F.3d 1169, 1174-75 (9th Cir. 2004) (noting distinction between constitutional and non-constitutional standing); *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (2015) ("Article III standing is different from, and not to be measured by, statutory standing."); *City of Los Angeles v. Well Fargo & Co.*, 22 F. Supp. 3d 1047, 1056 (C.D. Cal. 2014) ("Statutory standing is a different inquiry from Article III standing."). Moreover, to support its argument, Defendant merely summarily argues that Plaintiffs' illegal products theory have been rejected by numerous courts citing to a number of cases.[4]   (*See* Dkt. No. 6-1 at 11-13.)  However, Defendant fails to conduct a legal analysis explaining what element of Article III standing or statutory standing is deficient and fails to explain why the allegations in the complaint do not support standing.

Therefore, the Court DENIES Defendant's motion to dismiss the complaint for lack of standing as not legally or factually supported.  Nonetheless, the Court must consider Article III standing because "[s]tanding is a threshold matter central to our subject matter jurisdiction."  *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

Article III, Section 2 the United States Constitution requires that a plaintiff have standing to bring a claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

---

[4] In fact, the one case Defendant cites in support of Article III does not directly support it.  In *Brazil,* on the issue of whether the plaintiff's illegal products theory was deficient under Article III standing, the district court stated "it is doubtful whether Brazil's illegal product theory is sufficient to establish causation for purposes of Article III standing" and instead conducted an analysis of standing under the UCL, FAL and CLRA.  (*See* Dkt. No. 6-1 at 12-13 (citing *Brazil v. Dole Food Co., Inc.,* Case No.: 12–CV–01831–LHK, 2013 WL 5312418, at *8 (N.D. Cal. Sept. 23, 2013).)  This language does not provide decisive support of Defendant's Article III argument.  Moreover, it is noted that in *Brazil*, the defendant challenged Article III based on causation.  *Id.*

"[T]he 'irreducible constitutional minimum of [Article III] standing'" requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. "Economic injury is clearly a sufficient basis for standing." *San Diego Cnty. Gun Rights Committee v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) ("Economic injuries are '[c]ertainly' concrete.").

The plaintiff bears the burden of demonstrating the elements of Article III standing. *Spokeo, Inc*., 136 S. Ct. at 1547. At the pleading stage, the plaintiff "must 'clearly . . . allege facts demonstrating' each element." *Id.* In a class action, Article III standing is met if at least one named plaintiff satisfies the requirements. *Bates*, 511 F.3d at 985.

Here, the complaint alleges the three named Plaintiffs suffered an economic injury in the amount of money spent on the Products due to the sale of illegally sold and falsely advertised Products. (Dkt. No. 1, Compl. ¶¶ 84, 91, 98, 125, 134, 160, 184, 194.) Therefore, the Court concludes that Plaintiffs have alleged "an injury in fact [] that is fairly traceable to the challenged conduct", *Spokeo*, 136 S. Ct. at 1547, and have sufficiently alleged Article III standing. *See Backus v. General Mills, Inc*., 122 F. Supp. 3d 909, 921 (N.D. Cal. 2015) ("The purchase of such an allegedly unsafe and illegal

product is sufficient to confer standing for an economic injury under Article III and the UCL."); *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 917 (N.D. Cal. 2013) ("palpable economic injuries have long been recognized as sufficient to lay the basis for standing") (quoting *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972)).  Therefore, the Court has subject matter jurisdiction over this case.

**B.    Rule 9(b)**

The Ninth Circuit has held that Rule 9(b) applies to state-law causes of action, including the UCL and FAL when they are grounded in fraud.  *Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103 (9th Cir. 2003) (applying Rule 9(b) to section 17500 claim); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) particularity requirement to UCL claim grounded in fraud).  When a plaintiff "allege[s] a unified course of conduct and rel[ies] entirely on that course of conduct as the basis of the claim[,]  . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess,* 317 F.3d at 1103-04.

Defendant argues that the complaint alleges a unified fraudulent course of conduct, and therefore all causes of action fail to comply with Rule 9(b) because Plaintiffs do not specifically identify what representations they relied on, where they saw each representation, when they saw each representation, and how the representations were deceptive.  (Dkt. No. 6-1 at 14.)  Plaintiffs respond that their UCL claim under the unlawful and unfair prongs survive because they not grounded in fraud.  (Dkt. No. 12 at 19-21.)  Further, they contend their allegations more than meet the Rule 9(b) requirements.  (*Id.*)

The Court questions Defendant's assertion that Plaintiffs' allegations concern a unified fraudulent course of conduct so that Rule 9(b) applies to all causes of action.  As noted above, Plaintiffs allege two theories of liability.  One is an illegal products theory, which does not appear to sound in fraud, and the second is a false or misleading advertisement claim which are fraud claims that must comply with Rule 9(b).

21cv137-GPC(AGS)

Nonetheless, the Court concludes Plaintiffs have not complied with the specificity requirement under Rule 9(b) on the fraud claims and grants Plaintiffs leave to amend. The complaint alleges that Plaintiff Corbett purchased the Sambucol Black Elderberry Capsules, Sambucol Black Elderberry Syrup Original, and Sambucol Black Elderberry Gummies from April 2018 through April 2020 on Amazon and at CVS Pharmacy. (Dkt. No. 1, Compl. ¶ 79.) Prior to purchasing these products, Corbett relied on Defendant's materially misleading representations on the Products' packaging and labeling, the Sambucol website, and Amazon's website, including, among other statements, Defendant's claims that its elderberry ingredient was developed by a virologist, has been clinically and scientifically tested, and has been used in clinical studies. (*Id*.) Corbett's decision to purchase Defendant's Products was based on claims that they had been clinically and scientifically tested and the Products' ability to support her immune system and reduce cold symptoms. (*Id.* ¶ 82.)

Plaintiff Luciano purchased Sambucol Black Elderberry Gummies at Walgreens, more than a year ago. (*Id.* ¶ 86.) Prior to purchasing the Products, Luciano saw and relied on Defendant's materially misleading representations on the Products' packaging and labeling and in television commercials, including, among other statements, that the Products were clinically and scientifically tested. (*Id.*) Luciano's decision to purchase Defendant's Products was also based on claims that they had been clinically and scientifically tested and the Products' ability to support her immune system and reduce cold symptoms. (*Id.* ¶ 89.)

Plaintiff Dobbs purchased Sambucol Black Elderberry Gummies from August 2019 to April 2020 through Amazon. (*Id.* ¶ 93.) Prior to purchasing the Sambucol products, Dobbs relied on Defendant's materially misleading representations on the Products' packaging and labeling, television commercials, and websites including Defendant's claims that its Elderberry ingredient were clinically and scientifically tested and had been used in clinical studies. (*Id.*) Dobbs' decision to buy the Products was directly impacted by misleading representations that the Elderberry Products were

clinically and scientifically tested and the Products' ability to support his immune system. (*Id.* ¶ 96.)

On the allegations for misleading statements and false advertising, the Court concludes they do not comply with Rule 9(b). First, on the "when", Plaintiffs only allege when they purchased Defendant's Products but fail to specify when they saw and relied on the alleged misrepresentations or misleading advertisements or labeling. Plaintiffs must identify a time period when they saw the false advertisements. *See Interserve, Inc. v. Fusion Garage PTE Ltd.*, No. C-095812-RS-PSG, 2011 WL 500497, at *3 (N.D. Cal. Feb. 9, 2011) (denying a motion to dismiss where allegations concerning "the purported fraud [were] limited to a narrow window of time"); *Griffin v. Green Tree Serv., LLC*, 166 F. Supp. 3d 1030, 1057 n.63 (C.D. Cal. 2015) (one-month time period was sufficient to plead the "when" of a fraudulent misrepresentation) *McCann v. Jupina, Court*, Case No.16-cv-03244-JSC, 2017 WL 1540719, at *2 (N.D. Cal. Apr. 28, 2017) (nine month time range when misrepresentations occurred fail to satisfy Rule 9(b)); *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 598 (S.D. Ind. 2000) ("[Plaintiff] cannot expect simply to rest on its broad assertion that the fraud occurred over a period of six months."). Further, on the "where", Plaintiffs must specify where they saw each of the alleged false misrepresentations. *See Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) (finding that plaintiff failed to meet Rule 9(b) pleading standards when she failed to point to the "particular advertisements or promotional materials that she was personally exposed to"); *Goldsmith v. Allergan, Inc.*, CV 09-7088 PSG (Ex), 2011 WL 2909313, (C.D. Cal. 2011) (finding that plaintiff failed to plead fraud cause of action because he failed to specify the specific television ads on which he relied).

Next, on the "what", while Plaintiffs properly allege certain specific misrepresentations they relied on such as "clinically and scientifically tested", the Products' "ability to support her immune system and reduce cold symptoms", the Products were "developed by a virologist" and "used in clinical studies", they also indicate these were just examples and necessarily imply there were other statements.

(Dkt. No. 1, Compl. ¶¶ 79, 89, 93.)  Therefore, in their amended complaint, if Plaintiffs seek to proceed on other misrepresentations not alleged, they must specify what these other misrepresentations are in order to satisfy Rule 9(b).  Accordingly, because Plaintiffs has not sufficiently alleged the "what, when and where" of the alleged misrepresentations, the Court GRANTS Defendant's motion to dismiss the fraud based claims under Rule 9(b).

Finally, Defendant also argues for dismissal of the consumer fraud claims based on a challenge to the "scientifically tested" label because at best they challenge the quality of Defendant's substantiation which is barred in California.  (Dkt. No. 6-1 at 16.)  Plaintiff opposes arguing that the "scientifically tested" labels are false.  (Dkt. No. 12 at 23.)

Under California Business and Professions Code section 17508, challenges to lack of substantiation are left to the Attorney General and other prosecuting authorities while private plaintiffs have the burden of proving that advertising is actually false or misleading.  *Nat'l Council Against Health Fraud v. King Bio Pharm., Inc*., 107 Cal. App. 4th 1336, 1344–45 (2003) ("private plaintiffs are not authorized to demand substantiation for advertising claims").  Therefore, "[c]laims that rest on a lack of substantiation, instead of provable falsehood, are not cognizable under the California consumer protection laws."  *Bronson v. Johnson & Johnson, Inc*., No. C 12-04184 CRB, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013).  The holding in *King Bio* was reaffirmed in *Kwan* where the Ninth Circuit held that "California law does not provide for a private cause of action to enforce the substantiation requirements of California's unfair competition and consumer protection laws."  *Kwan v. SanMedica Int'l,* 854 F.3d 1088, 1091 (9th Cir. 2016).  In order to allege a consumer fraud claim, a private plaintiff must establish the claims are false or misleading by citing to "testing, scientific literature, or anecdotal evidence."  *Id.* at 1097 (quoting *King Bio*, 107 Cal. App. 4th at 1348).

A claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false.  *In re Clorox Consumer Litig*., 894 F. Supp. 2d 1224, 1232-33 (N.D. Cal. 2012) (denying defendant's motion to dismiss on a

lack of substantiation challenge where the plaintiffs alleged two scientific studies directly contradicted the defendant's advertising).  Moreover, "Plaintiff could allege that one or more of the authorities alluded to actually studied or tested the [defendant's product] and found that it does not [deliver the promised result], or that Plaintiff herself did not experience such [a result] when using the product, or that a study exists somewhere demonstrating that [the result] is categorically impossible to achieve [ ]"  *Kwan*, 854 F.3d at 1091.

Here, the complaint alleges that the Products' labels state that they have been "scientifically tested" but there are no published studies that test the Products and therefore, they have not been scientifically tested.  (Dkt. No. 1, Compl. ¶¶ 69, 71.) Moreover, clinical studies of Defendant's proprietary extract have not conclusively established that the Products are in fact effective, making the "scientific testing" representation misleading.  (*Id.* ¶ 74.)

A claim that the product has not been scientifically tested or clinical studies have not conclusively established that Defendant's Products are effective must be dismissed for lack of substantiation.  *See Kwan,* 854 F.3d at 1096 (falsely implying health benefits were clinically proven by scientific proof by label "clinically tested" and claim that "growth hormone levels are associated with certain health benefits" falsely implied product was based on scientific proof were summary and did not demonstrate falsehood of the claims); *Engel v. Novex Biotech, LLC,* 689 Fed. Appx. 510, 510–11 (9th Cir. Apr. 21, 2017) ("allegations that defendant's marketing claims are not supported by any reliable clinical trials and that a comprehensive search could not produce any publication to support claims . . . do not support a finding that the advertising claims are actually false, only that they lack substantiation."); *Tubbs v. AdvoCare Int'l, LP*,  2017 WL 4022397, at *6 (C.D. Cal. Sept. 12, 2016) ("no genuine scientific research" to support Defendant's advertising was impermissible lack of substantiation claim).  Accordingly, the Court additionally GRANTS dismissal of the UCL, FAL and CLRA causes of action to the extent they are based on the "scientifically tested" claims.

1    / / /

2    / / /

3    **C.      Breach of the Implied Warranty of Merchantability**

4           Defendant argues that the implied warranty claim fails for lack of privity.  (Dkt.

5    No. 6-1 at 16-17.)  Plaintiffs respond that vertical privity is not required because they are

6    third-party beneficiaries.  (Dkt. No. 12 at 24-25.)

7           The complaint alleges that "Plaintiffs and the Class Members purchased the

8    Elderberry Products manufactured and marketed by Defendant by and through

9    Defendant's authorized sellers for retail sale to consumers, or were otherwise expected to

10   be the third-party beneficiaries of Defendant's contracts with authorized sellers, or

11   eventual purchasers when bought from a third party."  (Dkt. No. 1, Compl. ¶ 190.)

12          The California Commercial Code "implies a warranty of merchantability that

13   goods '[a]re fit for ordinary purposes for which such goods are used.'"  *Birdsong v.*

14   *Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting Cal. Com. Code § 2314(2)(c)).

15   "Under California Commercial Code section 2314, . . . a plaintiff asserting breach of

16   warranty claims must stand in vertical contractual privity with the defendant."  *Clemens*

17   *v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *All West Elecs., Inc. v.*

18   *M–B–W, Inc.,* 64 Cal. App. 4th 717, 725 (1998) ("The general rule is that privity of

19   contract is required in an action for breach of either express or implied warranty and that

20   there is no privity between the original seller and a subsequent purchaser who is in no

21   way a party to the original sale."); *Anthony v. Kelsey–Hayes Co.*, 25 Cal. App. 3d 442,

22   448 (1972) ("It is settled law in California that privity between the parties is a necessary

23   element to recovery on a breach of an implied warranty of [merchantability or] fitness for

24   the buyer's use, with exceptions not applicable here.").  "A buyer and seller stand in

25   privity if they are in adjoining links of the distribution chain."  *Clemens,* 534 F.3d at

26   1023.  An "end consumer" who "buys from a retailer is not in privity with a

27   manufacturer."  *Id.*

28

In *Clemens*, the Ninth Circuit identified a number of specific exceptions to the privity rule such as cases when a "plaintiff relies on written labels or advertisements of a manufacturer" and other "special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser." *Id.* at 1023 (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695-96 (1954); *Windham at Carmel Mountain Ranch Ass'n v. Superior Ct.,* 109 Cal. App. 4th 1162, 1169 (2003); *Fieldstone Co. v. Briggs Plumbing Prods., Inc.,* 54 Cal. App. 4th 357, 369 (1997); *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 608 (1960)).  A direct dealing exception to the privity requirement has also been recognized by the court of appeal in *U.S. Roofing, Inc. v. Credit Alliance Corp.* 228 Cal. App. 3d 1431, 1442 (1991).  *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*,169 Cal. App. 4th 116, 138-39 (2008) (applying direct dealing exception).  The Ninth Circuit noted that California "has painstakingly established the scope of the privity requirement under [ ] section 2314, and a federal court sitting in diversity is not free to create new exceptions to it." *Clemens,* 534 F.3d at 1024.

Before and after the Ninth Circuit ruling in *Clemens,* district courts in California have been split on whether an exception to the privity requirement exists for a breach of implied warranty of merchantability claim when a plaintiff can show that he or she was a third-party beneficiary of a contract between the defendant and a third party.  *Compare Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018) (recognizing split in authority but adopting third-party beneficiary exception); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014) ("the Court concludes that the third-party beneficiary exception remains viable under California law."); *In re Sony Vaio Computer Notebook Trackpad Litig.,* No. 09CV2109 BEN (RBB), 2010 WL 4262191, at *3 (S.D. Cal. Oct. 28, 2010) (finding that the plaintiffs had plausibly pleaded that the exception applied when they purchased a Sony laptop from Best Buy, which they alleged was an authorized Sony retailer and service facility); *Kearney v. Hyundai Motor Am.*, No. SACV09-1298-JST MLGX, 2010 WL 8251077, at *10 (C.D. Cal. Dec. 17, 2010) *with Skiathitis v. Nyko Techs., Inc.*, No. 18-3584, 2018 WL 6427360, at *11 (C.D. Cal. Sept.

12, 2018) ("The applicability of the third-party beneficiary exception to retail consumers like Plaintiffs is far from settled, but the Court concludes that the best reading of California law is that the exception does not apply."); *Xavier v. Philip Morris USA, Inc*., 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) (finding that the exception does not apply because "[n]o reported California decision has held that the purchase of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale"); *Anunziato v. eMachines, Inc*., 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (third-party beneficiary exception does not allow a consumer who purchased a laptop from BestBuy.com to bring a breach of implied warranty claim against the laptop manufacturer).

It is notable that "no published decision of a California court has applied this [third party beneficiary exception] doctrine in the context of a consumer claim against a product manufacturer." *Loomis v. Slendertone Distrib., Inc*., 420 F. Supp. 3d 1046, 1089 (S.D. Cal. 2019) (quoting *In re Seagate Tech. LLC Litig*., 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017)); *see also Xavier v. Philip Morris USA, Inc.,* 787 F. Supp. 2d 1075, 1083 (N.D Cal. 2011) ("No reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale.")

District courts that have adopted the third-party beneficiary exception theory rely on *Gilbert Fin. Corp. v. Steelform Contracting Co*., 82 Cal. App. 3d 65, 69-70 (1978).  In that case, the court of appeal reversed the trial court's dismissal of the breach of implied warranty claim for lack of privity made against a roofing sub-contractor and held that the plaintiff could bring such action for breach of an implied warranty of fitness against the sub-contractor because he, the owner of a building who was not named in the contract, was the intended third-party beneficiary of the contract between the contractor and the roofing subcontractor.  *Id.* at 69-70.  The court of appeal noted that it did not have to

decide the privity issue because the plaintiff was a third-party beneficiary of the contract between the contractor and sub-contractor and could therefore sue for breach of the implied warranty of fitness.  *Id.* at 69.  *Gilbert* is specific to its facts and has limited bearing on this case.  While courts are split on recognition of the third-party beneficiary exception to the privity requirement, the cases that recognize it require a plaintiff to show that he or she was a third-party beneficiary of a contract between the defendant and a third party.  *In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 WL 4020104, at *7 (N.D. Cal. Nov. 19, 2009) (exception to the privity requirement for a breach of implied warranty of merchantability claim if a plaintiff can show that he was a third party beneficiary of a contract between the defendant and a third party); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 924 (N.D. Cal. 2018) ("Huawei concedes that the relevant states allow plaintiffs to bring implied warranty claims in the absence of privity if the plaintiff shows that he was a beneficiary to a contract between the defendant and a third party.")

Here, Plaintiffs allege that they "were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers when bought from a third party."  (Dkt. No. 1, Compl. ¶ 190.)  This allegation does not satisfy the pleading requirement for a third party beneficiary exception to the privity requirement.  Accordingly, the Court GRANTS Defendant's motion to dismiss the beach of implied warranty of merchantability claim.

**D.     Dismissal of Claims on Products Plaintiffs Never Bought**

Defendant next argues that Plaintiffs' claims should be narrowed to only those Products purchased by Plaintiffs and seeks dismissal of Products not purchased by Plaintiff for lack of standing.  (Dkt. No. 6-1 at 17.)  Plaintiffs respond that because Defendant made identical misrepresentation concerning all Elderberry Products, they have standing under the prevailing view in the Ninth Circuit.  (Dkt. No. 12 at 25-27.)

The prevailing view in the Ninth Circuit is to allow class action plaintiffs to bring claims for products they did not purchase "as long as the products and alleged

misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co*., 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (noting that the rulings of majority of the courts have carefully analyzed the question).  There must be substantial similarity between the products at issue or the alleged misrepresentations must be similar across product lines. *Id.*  "[T]he critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.,* No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012); *see Anderson v. Jamba Juice Co*., 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) ("If there is a sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage.").

In *Anderson v. Jamba Juice Co.,* the district court held that the plaintiff, who purchased several flavors of at-home smoothie kits labeled "All Natural," had standing to bring claims on behalf of purchasers of other flavors because the products were sufficiently similar and because the "same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor."  888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).  In contrast, in *Miller,* the court dismissed claims on the four products the plaintiff did not purchase because not only were the products different, baking chips, three drink powders, and wafers but the labeling of the products was also different.  *Miller*, 912 F. Supp. 2d at 870-71.

Here, the Products, at issue, are similar to the extent they all contain elderberry but the products come in different forms either in syrup, gummies, capsules, tablets, lozenges, powder, and drops.   (Dkt. No. 1, Compl. ¶ 1.)  Because Plaintiffs allege uniformity in the representation on the packaging as well as marketing, (Dkt. No. 1, Comp. ¶¶ 9, 21, 40), at this stage of the proceedings, the Court DENIES Defendant's motion to dismiss the claims on the Products Plaintiffs did not purchase.[5]

_____

[5] In the same vein, Defendant also argues that the claims on products Plaintiffs never saw are subject to dismissal.  (Dkt. No. 6-1 at 17.)  However, it appears that this is a variation of the argument for

1 / / /

2 / / /

3 **E.**     **Motion to Dismiss and Motion to Strike Nationwide Class Allegation**

4          Defendant, relying on *Mazza v. American Honda Motor Co*., 666 F.3d 581 (9th

5 Cir. 2012), moves to dismiss and moves to strike the nationwide class claims.[6]  (Dkt. No.

6 6-1 at 18-21.)  Plaintiffs respond that to rule on this issue at the motion to dismiss stage is

7 premature because the parties have not conducted discovery to develop the facts of the

8 case and identify differences in various state laws.  (Dkt. No. 12 at 30.)  Further, with

9 discovery, Plaintiff could narrow or define the class at the class certification stage "in

10 such a way that it makes any purported state law differences immaterial."  (*Id.*)

11          In this case, the complaint seeks to certify a nationwide class, (Dkt. No. 1, Compl.

12 ¶ 100), and alleges a violation of the UCL as well of breach of express warranty and

13 breach of implied warranty on behalf of the nationwide class.  (Dkt. No. 1, Compl. ¶¶

14 112, 176, 186.)

15          In *Mazza*, the Ninth Circuit held that the district court "abused its discretion in

16 certifying a class under California law that contained class members who purchased or

17 leased their car in different jurisdictions with materially different consumer protection

18 laws."  *Mazza*, 666 F.3d at 590.  After conducting California's three-step governmental

19 interest test, *id.*, it held that under "the facts and circumstance of this case," each "class

20 member's consumer protection claim should be governed by the consumer protection

21 laws of the jurisdiction in which the transaction took place."  *Id.* at 594.

22

23

24 _____

25 dismissal based on Products never bought by Plaintiffs.  Thus, for the same reasons, the Court DENIES
Defendant's motion to dismiss the claims for product Plaintiffs never saw.

26 [6] On this issue, while Defendant presents several arguments, that is, that non-resident class members

27 cannot pursue a claim under the California UCL, court should strike the nationwide class allegations,
plaintiffs fail to establish the requisite elements for class certification and certification is not appropriate

28 when disparate laws of multiple state must be applied, all arguments relate to dismissal of the
nationwide class allegations.

Since *Mazza*, district courts are divided on whether dismissal of a nationwide class is appropriate at the motion to dismiss stage.  *Compare In re Clorox Consumer Litigation,* 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs claims"); *Forcellati v. Hyland's, Inc.,* 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ("[I]t would be premature to speculate about whether the difference in various states' consumer protection laws are material in this case."); *Zapata Fonseca v. Goya Foods Inc.,* Case No. 16-CV-02559-LHK, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016) (denying dismissal of nationwide class because *Mazza*, which was decided at the class certification stage and not on a motion to dismiss, depended heavily on a detailed choice-of-law analysis that compared how various states' consumer protection laws applied to the facts of the plaintiffs' claims and the defendant failed to conduct such an analysis in its motion to dismiss); *Sonner v. Schwabe N. Am., Inc.*, No. EDCV 15-01358-VAP (SPx), 2015 WL 13307076, at *8 (C.D. Cal. Nov. 18, 2015) ("A detailed choice-of-law analysis would be inappropriate" on a motion to strike); *Valencia v. Volkswagen Grp. of America Inc*., Case No. 15–cv–00887–HSG, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) ("Whether California law differs from the laws of other states in a way that is material *to this litigation* is not a proper inquiry at the pleading stage.") (emphasis in original) *with Glenn v. Hyundai Motor Am*., SACV 15-2052 DOC (KESx), 2016 WL 3621280, at *5 (C.D. Cal. June 24, 2016) ("The Court notes that while *Mazza* was decided at the class certification stage, the decision 'applies generally and is instructive when addressing a motion to dismiss.'") (quoting *Frezza v. Google, Inc*., CV 5:12-237 RMW, 2013 WL 1736788, at *6 (N.D. Cal. Apr. 22, 2013)); *Davison v. Kia Motors America, Inc.,* No. 15-cv-0239-CJC (RNBx), 2015 WL 3970502, at *2 (C.D. Cal. 2015) (conducting choice of law analysis at motion to dismiss).  "*Mazza* did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws." *Forcellati,* 876 F. Supp. 2d at 1159.

While the *Mazza* analysis may ultimately apply to the analysis in this case as it involved a defendant in California and concerned the applicability of California's consumer fraud statutes to plaintiffs who lived outside the state, Plaintiffs should be given an opportunity through discovery to demonstrate that a nationwide class is viable at the class certification stage.  Moreover, Defendant has failed to provide a sufficient choice of law analysis on California's consumer fraud statutes and breaches of express and implied warranty claims.  Accordingly, the Court DENIES Defendant's motion to strike and motion to dismiss the nationwide class allegation.

## F.   Leave to Amend

In the event the Court dismisses any cause of action, Plaintiffs seek leave to amend.  (Dkt. No. 12 at 20.)   Where a motion to dismiss is granted, leave to amend should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto,* 957 F.2d at 658 (quoting S*chreiber Distrib. Co.*, 806 F.2d at 1401).  That is, where leave to amend would be futile, the Court may deny leave to amend.  *See Desoto,* 957 F.2d at 658*; Schreiber,* 806 F.2d at 1401.  In this case, because Plaintiff can cure the deficiencies in the complaint, the Court GRANTS Plaintiff leave to file a first amended complaint.  *See De Soto*, 957 F.2d at 658.

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend.  The Court also DENIES Defendant's motion to strike.  Plaintiff shall file an amended complaint within 20 days of the filed date of this order.

IT IS SO ORDERED.

Dated:  June 17, 2021

Hon. Gonzalo P. Curiel
United States District Judge