1

2

SEYFARTH SHAW LLP
Lawrence E. Butler (SBN 111043)
lbutler@seyarth.com
Giovanna A. Ferrari (SBN 229871)
gferrari@seyfarth.com
Sara Rogers (SBN 292316)
srogers@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile:   (415) 397-8549

3

4

5

6

7

8

SEYFARTH SHAW LLP
Joseph J. Orzano (SBN 262040)
jorzano@seyfarth.com
Seaport East, Suite 300
Two Seaport Lane
Boston, MA  02210
Telephone:  (617) 946-4800
Facsimile:   (617) 946-4801

9

10

11

12

SEYFARTH SHAW LLP
Aaron Belzer (SBN 238901)
abelzer@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, CA  90067-3201
Telephone:  (310) 277-7200
Facsimile:  (310) 201-5219

13

14

15

16

Attorneys for Defendant
PHARMACARE U.S., INC.

17

18

UNITED STATES DISTRICT COURT

19

SOUTHERN DISTRICT OF CALIFORNIA

20

21

22

23

24

25

26

27

28

MONTIQUENO CORBETT, DAMARIS LUCIANO, and ROB DOBBS individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PHARMACARE U.S., INC., a Delaware Corporation,

Defendant.

Case No. 3:21-cv-00137-GPC-AGS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PHARMACARE U.S., INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Jud. Officer:    Hon. Gonzalo P. Curiel
Courtroom Number:            2D
Date of Hearing:      October 15, 2021
Time of Hearing:            1:30 p.m.

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     ALLEGATIONS OF THE FAC. ............................................................2

III.    ARGUMENT.........................................................................................4

     A.   Plaintiffs Lack Statutory Standing To Pursue Their "Illegal Products" Theory of Liability. ......................................................4

     B.   The FDCA Preempts Plaintiffs' "Illegal Products" Theory. .........................6

          1.   The FDCA Impliedly Preempts Plaintiffs' "Illegal Products" Theory of Liability.................................................................8

          2.   The FDCA Expressly Preempts Plaintiffs' "Illegal Products" Theory Based on Purported Implied-Disease Claims. ....................................10

     C.   Plaintiffs' Theory of Deception Fails as a Matter of Law. ..........................13

     D.   Plaintiffs Have Not Satisfied Rule 9(b)'s Heighted Pleading Standard. ......16

     E.   Plaintiffs Have Not Stated A Claim for Breach of An Implied Warranty....18

          1.   The Food And Drug Exception Does Not Apply Because Plaintiffs Do Not Allege Injuries Resulting from Ingesting the Products. ..............18

          2.   Plaintiffs Fail To Allege Facts Establishing A Third-Party Beneficiary Exception to the Privity Requirement..................................................19

     F.   Plaintiffs Have Not Stated A Valid Claim for Breach of An Express Warranty. ..................................................................................20

     G.   The Claim For Damages Under The CLRA Fails For Improper Notice. ......22

     H.   The M.G.L. 93A Claim Fails for Lack of Pre-suit Notice..........................24

IV.     CONCLUSION...................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allen v. Similasan Corp.*,
  2013 WL 5436648 (S.D. Cal. Sept. 27, 2013)........................................................ 23, 24

*Andrade-Heymsfield v. Danone US, Inc.*,
  2019 WL 3817948 (S.D. Cal., Aug. 14, 2019)............................................................. 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................... 20

*Ball v. Wal-Mart, Inc.*,
  102 F. Supp. 2d 44 (D. Mass 2000)............................................................................. 24

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................... 20

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001)........................................................................................ 15

*Brazil v. Dole Food Company, Inc.*,
  2013 WL 5312418 (N.D.Cal. Sept. 23, 2013).............................................................. 5

*Bruton v. Gerber Prods. Co.*,
  2014 WL 7606633 (N.D. Cal. Dec. 18, 2014)............................................................. 13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001)................................................................................................ 7, 8, 9

*Chicanos Por La Causa, Inc. v. Napolitano*,
  558 F.3d 865 (9th Cir. 2009) ......................................................................................... 6

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ................................................................................ 18, 19

*Colgate v. JUUL Labs, Inc.*,
  345 F. Supp. 3d 1178 (N.D. Cal. 2018)....................................................................... 21

*DeLeon v. Wells Fargo Bank, N.A.*,
  2011 WL 311376 (N.D. Cal. Jan. 28, 2011)................................................................ 20

ii

*In re Ferrero Litigation*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011)........................................................20

*Figy v. Frito-Lay N. Am., Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014).......................................................13

*Flores v. OneWest Bank, F.S.B.*,
  886 F.3d 160 (1st Cir. 2018)....................................................................24

*Fraker v. KFC Corp.*,
  2007 WL 1296571 (S.D. Cal., Apr. 30, 2007) ..........................................10

*Franulovic v. Coca–Cola Co.*,
  390 Fed.Appx. 125 (3d Cir. 2010).............................................................15

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ......................................................................16

*Gallagher v. Bayer AG*,
  2015 WL 1056480 (N.D. Cal., Mar. 10, 2015) ...................................12, 14

*Garcia v. Wells Fargo Bank N.A.*,
  2014 WL 458208 (N.D. Cal., Jan. 31, 2014)...............................................17

*Glen Holly Entertainment, Inc. v. Tektronix Inc.*,
  343 F.3d 1000 (9th Cir. 2003) ..................................................................14

*In re GNC Corp.*,
  789 F.3d 505 (4th Cir. 2015) ....................................................................14

*Hammock v. Nutramarks, Inc.*,
  2016 WL 4761784 (S.D. Cal., Sept. 12, 2016)...........................................19

*HGCI, Inc. v. Luxx Lighting, Inc.*,
  2020 WL 5913851 (C.D. Cal., Sept. 10, 2020) ..........................................17

*Hirata Corp. v. J.B. Oxford & Co.*,
  193 F.R.D. 589 (S.D. Ind. 2000) ...............................................................17

*Hughes v. Ester C Co.*,
  930 F.Supp.2d 439 (E.D.N.Y. 2013) .........................................................14

*In re Hydroxycut Marketing and Sales Practices Litig.*,
  801 F.Supp.2d 993 (S.D. Cal. 2011).........................................................22

iii

*Janney v. Mills*,
944 F.Supp.2d 806 (N.D. Cal. 2013) ............................................................ 14

*Johannessohn v. Polaris Industries, Inc.*,
450 F.Supp.3d 931 (D.Minn. 2020) ................................................................ 4

*Kane v. Chobani, Inc.*,
2013 WL 5289253 (N.D.Cal. Sept. 19, 2013) .............................................. 6

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .............................................................. 17, 18

*Korolshteyn v. Costco*,
393 F.Supp.3d 1019 (S.D. Cal. 2019) .......................................................... 12

*Kroessler v. CVS Health Corporation*,
977 F.3d 803 (9th Cir. 2020) ........................................................................ 12

*Kwan v. SanMedica Int'l*,
854 F. 3d 1088 (9th Cir. 2016) ............................................................. 14, 16

*Lachance v. Am. Home Products Corp.*,
2006 WL 89850 (W.D. Mo. Jan. 13, 2006) .................................................... 5

*Loomis v. Slendertone Distribution, Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019) ........................................................ 19

*Maxwell v. Unilever United States, Inc.*,
2018 WL 1536761 (N.D. Cal., Mar. 29, 2018) ............................................ 13

*McCann v. Jupina, Court*,
2017 WL 1540719 (N.D. Cal. Apr. 28, 2017) .............................................. 17

*McCrary v. The Elations Co., LLC*,
2013 WL 6402217 (C.D. Cal. Apr. 24, 2013) .............................................. 16

*Mills v. Giant of Md., LLC*,
441 F. Supp. 2d 104 (D.D.C. 2006), aff'd, 508 F.3d 11(D.C. Cir. 2007) ..................... 7

*Moncada v. Allstate Ins. Co.*,
471 F. Supp. 2d 987 (N.D. Cal. 2006) .......................................................... 22

*In re Morning Song Bird Food Litigation*,
2016 WL 6948596 (S.D.Cal. Sept. 29, 2016) ................................................ 5

*Nabors v. Google, Inc.*,
    2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) ........................................................... 21

*Nadler v. Nature's Way Products, LLC*,
    2014 WL 12601567 (C.D. Cal., Mar. 27, 2014) ...................................................... 19

*In re NJOY, Inc. Consumer Class Action Litigation*,
    2015 WL 12732461 (C.D. Cal., May 27, 2015) ...................................................... 18

*Perez v. Nidek*,
    711 F.3d 1109 (9th Cir. 2013) ........................................................................... 7, 8, 9

*POM Wonderful LLC v. Coca-Cola Co.*,
    574 U.S. 102 (2019) ............................................................................................... 7

*Pratt v. Whole Foods Mkt. Cal., Inc.*,
    2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ......................................................... 6

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Minn. 2009) ..................................................................... 7

*Rosales v. FitFlop USA, LLC*,
    882 F. Supp. 2d 1168 (S.D. Cal. 2012) ................................................................. 21

*Ruszecki v. Nelson Bach USA Ltd.*,
    2015 WL 6750980 (S.D. Cal. June 25, 2015) ....................................................... 24

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................. 22

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F. 3d 777 (9th Cir. 2012) .............................................................................. 15

*Seegert v. Recall Sundown, Inc.*,
    445 F.Supp.3d 1149 (S.D. Cal. 2020) ................................................................... 12

*Shaw v. BAC Home Loans Servicing, LP*,
    2013 WL 789195 (D. Mass. Mar. 1, 2013) .......................................................... 24

*Shay v. Apple Inc.*,
    __ F. Supp. 3d __, 2021 WL 75690 (S.D. Cal. 2021) ............................................ 20

*Somers v. Beiersdorf, Inc.*
    467 F.Supp.3d 934 (S.D.Cal. 2020) ........................................................................ 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

*Stanwood v. Mary Kay, Inc.*,
  941 F. Supp. 2d 1212 (C.D. Cal. 2012) ...................................................... 18

*Stearns v. Select Comfort Retail Corp.*,
  No. 08–2746 JF, 2008 WL 4542967 (N.D. Cal. Oct. 1, 2008) .................................. 22

*Stengel v. Medtronic Incorp.*,
  704 F.3d 1224 (9th Cir. 2013) ...................................................... 6, 9, 11

*Stuto v. Corning Glass Works*,
  1990 WL 105615 (D.Mass. 1990) ...................................................... 5

*Swearingen v. Pacific Foods of Oregon, Inc.*,
  2014 WL 3767052 (N.D. Cal. July 31, 2014) ...................................................... 6

*Tapia v. Davol, Inc.*,
  116 F. Supp. 3d 1149 (S.D. Cal. 2015) ...................................................... 21

*Telesaurus VPC, LLC v. Power*,
  623 F. 3d 998 (9th Cir. 2010) ...................................................... 20

*Turek v. General Mills, Inc.*,
  754 F.Supp.2d 956 (N.D. Ill. 2010) ...................................................... 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................... 14, 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*,
  959 F.3d 1201 (9th Cir. 2020) ...................................................... 7

*Von Grabe v. Sprint PCS*,
  312 F. Supp. 2d 1285 (S.D. Cal. 2003) ...................................................... 23

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) ...................................................... 16

*Williamson v. The Reinalt-Thomas Corp.*,
  2012 WL 1438812 (N.D. Cal. April 25, 2012) ...................................................... 4

*Young v. Wells Fargo Bank, N.A.*,
  828 F.3d 26 (1st Cir. 2016) ...................................................... 4

*Yourish v. Cal. Amplifier*,
  191 F. 3d 983 (9th Cir. 1999) ...................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

**California Cases**

*Cardinal Health 301, Inc. v. Tyco Electronics Corp.*,
   169 Cal. App. 4th 116 (2008) ........................................................................ 5

*Outboard Marine Corp. v. Super. Ct.*,
   52 Cal. App. 3d 30 (1975) .......................................................................... 23

*Peterson v. Lamb Rubber Co.*,
   54 Cal. 2d 339 (1960) ................................................................................. 19

*Williams v. Beechnut*,
   185 Cal. App. 3d 135 (1986) ........................................................................ 5

**Other State Cases**

*Aspinall v. Philip Morris Co., Inc.*,
   442 Mass. 381 (2004) ................................................................................... 4

*Casavant v. Norwegian Cruise Line, Ltd.*,
   460 Mass. 500, 952 N.E.2d 908 (2011) ...................................................... 24

*Land O'Lakes, Inc. v. Dairyamerica, Inc.*,
   2017 WL 495644 ......................................................................................... 20

*Trazo v. Nestle USA, Inc.*,
   2013 WL 4083218 ....................................................................................... 13

**Federal Statutes**

21 U.S.C.
   § 337(a) ................................................................................................. 7, 8
   § 343-1(a)(5) ........................................................................................ 7, 10
   § 343(r)(6)(A) .................................................................................. 10, 11, 12

**California Statutes**

Cal. Civ.Code
   § 1782(a) ................................................................................................... 22
   § 1782(a)(2) ............................................................................................... 23

Cal. Civ. Proc. Code
   §§ 1770 ................................................................................................. 22, 23
   § 1782(a)(1) ............................................................................................... 23

Uniform Commercial Code
  § 2-314 ...................................................................................................5

**Other State Statutes**

M.G.L. 93A
  § 2.........................................................................................................25
  § 9.........................................................................................................24
  § 9(3)................................................................................................24, 25

**Other Authorities**

21 C.F.R. § 100.1(c)(4) ...........................................................................11

21 C.F.R. § 101.93(f)-(g) .........................................................................11

21 C.F.R. § 101.93(g) ..............................................................................11

21 C.F.R. § 101.93(g)(2)(ii) .....................................................................11

58 Fed. Reg. 2462, 2462 (Jan. 6, 1993) ....................................................7

65 Fed. Reg. 1000 ......................................................................11, 12, 14

Fed. R. Civ. P. 8(a)(2) ........................................................................14, 20

Fed. R. Civ. P. 9(b) ...........................................................................14, 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

# I.    INTRODUCTION

In the First Amended Complaint ("FAC"), Plaintiffs fail to cure the deficiencies identified by the Court.  Despite the substantial shortcomings in the Original Complaint set forth in the Court's Order, Plaintiffs made only minor amendments.  The amendments are almost entirely devoted to making their "false advertising" theory slightly less general.  Plaintiffs' non-viable illegal products theory again comprises nearly the entire pleading and remains virtually unchanged.  Accordingly, set forth more fully below, Plaintiffs again fail to state any claim for relief.

<u>First</u>, Plaintiffs' illegal products theory has been routinely rejected by courts for lack of statutory standing.  Case law is clear that Plaintiffs cannot impose strict liability on Pharmacare under the state law claims they assert.  Each claim imposes standing requirements in the form of causation and/or reliance that Plaintiffs do not and cannot adequately allege under their illegal products theory.

<u>Second</u>, even if Plaintiffs have standing to assert their illegal products theory, the theory – as alleged – is impliedly preempted under the Federal Food, Drug, & Cosmetic Act ("FDCA").  Numerous courts have held that there is no private right of action to enforce the FDCA, as Plaintiffs attempt to do under their illegal products theory.

<u>Third</u>, Plaintiffs' claims based on "immune support," "supports the immune system," "helps you and your family stay healthy throughout the year," and "arms you with the best protection nature has to offer," are structure/function claims expressly permitted by the Food and Drug Administration ("FDA").  Plaintiffs' attempt to impose liability on Defendant for these statements necessarily seeks to impose requirements on Pharmacare that are different from/in addition to federal requirements, and are expressly preempted.

<u>Fourth</u>, courts have consistently rejected claims –like Plaintiffs' – that consumers are deceived into thinking products are salable, when they were not, due to violations of FDA regulations.  Alleged violations of FDA regulations are "insufficient to even raise a genuine factual issue as to whether [the] defendants' products labels were misleading."

<u>Fifth</u>, Plaintiffs' limited amendments fail to cure the deficiencies in their false

advertising theory.  Plaintiffs' allegations remain vague and incomplete, and run afoul of Rule 9(b).  Plaintiffs also do not: a) allege that any claim on which they relied was false; b) explain how any statements are misleading; c) allege when they visited the website or other media; d) specify the content of statements tied to various media on which they claim to have seen the statements; or  e) allege when they were exposed to any specific statement.

Sixth, Plaintiffs' claim for breach of implied warranty fails for lack of privity—a requirement to which Plaintiffs again fail to plead any applicable exception.  Plaintiffs do not allege physical injury from ingesting the products, such that the food and drug exception to the privity requirement would apply.  Nor do Plaintiffs allege any facts establishing the existence of a contract between Pharmacare and retailers in which Plaintiffs were third-party beneficiaries, a necessary privity requirement for the third-party beneficiary exception.

Seventh, Plaintiffs do not identify any specific representations that they contend create an "express warranty" that Pharmacare breached.  Plaintiffs also fail to allege the "exact terms" of the express warranty to which the Products failed to conform.  Also, Plaintiffs have not alleged any facts demonstrating reasonable reliance on, or Pharmacare's breach of, any purported express warranty concerning the Products' legality.

Eighth, Plaintiffs' claim for damages under the CLRA, and Plaintiff Luciano's claims under the Mass. Gen. Law ("M.G.L.") 93A fail for lack of the required pre-suit notice/specificity.

Plaintiffs' Amended Complaint should be dismissed, in its entirety, with prejudice.

## II.   ALLEGATIONS OF THE FAC.

Plaintiffs' FAC is largely unchanged.  Nearly the entire 199-paragraph amended pleading is again devoted to on an illegal products theory rather than a theory of deception.  Under the former theory, Plaintiffs allege that the Products violate various provisions of the FDCA and FDA implementing regulations, and seek to recover for those alleged violations because they purportedly would not have purchased the Products had they known about the violations.  Yet Plaintiffs do not allege that they relied on *any* representation under their illegal products theory, that the Products were unsafe, or the Products did not work as advertised.  To

the contrary, Plaintiffs *admit* that they used the Products for months or years without complaint before their illegal products theory was set forth in the Original Complaint.

The allegations underlying that theory remain unchanged in the Amended Complaint. Plaintiffs allege: <u>First</u>, that Pharmacare failed to submit a new dietary ingredient notification to the FDA for elderberry extract. (FAC ¶¶ 31-33). <u>Second</u>, that Pharmacare makes implied disease claims about the Products that are not authorized for dietary supplements. (FAC ¶¶ 38-56). <u>Third</u>, that Pharmacare failed to label the Products as drugs and include "adequate directions for use." (FAC ¶¶ 57-60). <u>Fourth</u>, that Pharmacare makes a "high antioxidant" claim not permitted by FDA nutrient-content regulations. (FAC ¶¶ 64-68). Plaintiffs conclude that as a result of these alleged violations, the Products are deemed to be adulterated, misbranded, and are "illegal to sell" under the FDCA. (FAC ¶¶ 8, 36). These allegations continue to be unsustainable.

Plaintiffs make a limited attempt to cure their "false advertising" theory with slightly less generality. Corbett and Dobbs now allege that they relied on purported representations that Pharmacare's elderberry extract: (1) was developed by a virologist; (2) supports immunity; (3) supports the immune system; (4) is scientifically tested; (5) has been used in clinical studies; (6) has high antioxidant levels; (7) helps you and your family stay healthy throughout the year; and (8) arms you with the best protection nature has to offer. (FAC ¶¶ 81, 97). Luciano alleges that she relied on the same claims except that she *did not* rely on claims that Pharmacare's elderberry extract was: (1) developed by a virologist; (2) helps you and your family stay healthy throughout the year; and (3) arms you with the best protection nature has to offer. (FAC ¶ 89).

**Plaintiffs never allege that any of the claims on which they purportedly relied are false or that the Products did not work as advertised.** Instead, Plaintiffs again vaguely allege only that they "experienced no improvement in health as a result of using" the Products. (FAC ¶¶ 83, 91, 99). Plaintiffs also provide limited additional details about when and where they purchased the Products, and when and where they saw the foregoing representations.

However, **Plaintiffs still do not specifically identify the time and place of their purchases and fail to identify which statements appeared on which specific media at what time.**

Despite the foregoing, Plaintiffs assert the same claims for relief on behalf of the same classes as set forth in the Original Complaint. Plaintiffs again fail to state any claim for relief, and the Amended Complaint should be dismissed as a result.

## III.   ARGUMENT

### A.   Plaintiffs Lack Statutory Standing To Pursue Their "Illegal Products" Theory of Liability.

Notwithstanding Article III requirements,[1] the UCL, FAL, CLRA, M.G.L. 93A, and MMPA each impose their own standing mandates, requiring plaintiffs to plead and prove causation and/or actual reliance.  *See, e.g., Williamson v. The Reinalt-Thomas Corp.*, 2012 WL 1438812, *8 (N.D. Cal. April 25, 2012) (to sue under the California UCL, FAL, and CLRA plaintiffs must plausibly allege that they "personally lost money or property because of h[er] own actual and reasonable reliance on the allegedly untrue or misleading statements."); *Aspinall v. Philip Morris Co., Inc.*, 442 Mass. 381, 401 (2004) ("causation is a required element of a successful [M.G.L.] 93A claim."); *Young v. Wells Fargo Bank, N.A.*, 828 F.3d 26, 35 (1st Cir. 2016) ("the [Massachusetts] Supreme Judicial Court has clarified that 'the violation of the legal right that has created the unfair or deceptive act or practice [under M.G.L. 93A] must cause the consumer some kind of separate, identifiable harm arising from the violation itself." (emphasis added)); *Johannessohn v. Polaris Industries, Inc.*, 450 F.Supp.3d 931, 958 (D.Minn. 2020) (the MMPA requires a causal connection between an ascertainable loss of money or property suffered by the plaintiff and the deceptive merchandising practice);

---

[1] Pharmacare disputes that Plaintiffs have Article III standing to recover based on the regulatory violations alleged in the Amended Complaint, particularly where Plaintiffs do not even allege that the Products failed to work as advertised (much less that the Products are unsafe).  *See infra* Sections III., B and C.  However, Pharmacare understands the Court's prior order as deciding Article III standing for purposes of the pleading stage. Pharmacare reserves the right to challenge Plaintiffs' Article III standing to recover based on Plaintiffs' illegal products theory at a future time.

*In re Morning Song Bird Food Litigation*, 2016 WL 6948596, at *11 (S.D.Cal. Sept. 29, 2016) (the MMPA "require[s] a causal nexus between a defendant's wrongful conduct and the plaintiff's injuries" and dismissing MMPA claim for failure to allege causation).

Plaintiffs' warranty claims impose similar causation and reliance requirements. *See, e.g., Williams v. Beechnut*, 185 Cal. App. 3d 135, 142 (1986) (reasonable reliance required for breach of express warranty claim under California law); *Stuto v. Corning Glass Works*, 1990 WL 105615, *5 (D.Mass. 1990) (reliance required for breach of express warranty claim under Massachusetts law); *Lachance v. Am. Home Products Corp.*, 2006 WL 89850, at *3 (W.D. Mo. Jan. 13, 2006) (reliance is required for breach of express warranty claim under Missouri law); Rodrick J. Mortimer, 11 Causes of Action 531 (October 2015) (plaintiff must plead and prove that a breach of the implied warranty of merchantability under Uniform Commercial Code § 2-314 was the proximate cause of the loss); *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 147 (2008) (causation required for implied warranty claim under California law).

Plaintiffs have not and cannot plead their statutory standing to pursue their "Illegal Products" theory of liability. In support of their state law claims, Plaintiffs allege that they detrimentally relied on certain representations made by Pharmacare regarding the Products. Plaintiffs, however, do not allege any facts establishing that the representations on which they purportedly relied were false or misleading. Rather, they allege that because Pharmacare's alleged violations of the FDCA made it unlawful for them to legally sell the Products, Pharmacare's representations induced them to purchase "illegal" products. Such allegations are insufficient to confer statutory standing.[2] Indeed, Plaintiff's "Illegal Products" theory is indistinguishable from those rejected by numerous courts for lack of statutory standing. *See, e.g., Brazil v. Dole Food Company, Inc.*, 2013 WL 5312418, at *8 (N.D.Cal. Sept. 23, 2013)

---

[2] Statutory standing requirements are intended to preclude claims by unaffected consumers. Yet, under Plaintiffs' "illegal products" theory, any consumer would have statutory standing to bring a class action lawsuit against a business for any purported regulatory violations his or her lawyer can uncover, regardless of whether the alleged regulatory violation actually caused any injury to the consumer.

("Brazil's 'illegal product' theory is inconsistent with the enhanced standing requirements for UCL claims imposed by Proposition 64 and the California Supreme Court's decision in *Kwikset [Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011)].*"); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *9 (N.D.Cal. Sept. 19, 2013) (holding that plaintiffs' "illegal product" theory would "eviscerate" the standing requirements of the UCL, FAL and CLRA); *Swearingen v. Pacific Foods of Oregon, Inc.*, 2014 WL 3767052 (N.D. Cal. July 31, 2014) (stating that "[o]ur district has repeatedly rejected this [illegal products] argument" and recognizing that the illegal products theory was based on an impermissible strict liability theory for labeling violations); *Pratt v. Whole Foods Mkt. Cal., Inc.*, 2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ("Plaintiff cannot circumvent the reliance requirement [of the UCL] by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance.").

Because Plaintiffs fail to allege facts sufficient to plausibly allege their own standing under the state law claims they assert, all of Plaintiffs' claims based on the following should be dismissed because they are untethered to any other theory of deception:  (1) alleged use of a new dietary ingredient without submitting notification; (2) alleged failure to label the Products as drugs with "adequate directions for use;" and (3) alleged "high antioxidant" claims not in compliance with regulations limiting nutrient content claims to those nutrients with established reference daily intakes.  Additionally, Plaintiffs' claims based on the following should be dismissed to the extent they are based on the illegal products theory: (1) alleged implied disease claims; and (2) alleged scientifically tested claims to the extent they are based on the illegal products theory.

## B.     The FDCA Preempts Plaintiffs' "Illegal Products" Theory.

Federal preemption can be express or implied.  *See, e.g., Stengel v. Medtronic Incorp.*, 704 F.3d 1224, 1230 (9th Cir. 2013).  Express preemption exists when a statute explicitly addresses preemption.  *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 865, 863 (9th Cir. 2009).  Implied preemption, on the other hand, is found where Congress' intent in enacting a statute was to occupy the "field" of regulating the subject matter or where state

law "conflicts" with the federal regulatory scheme, and compliance with both is impossible or raises an obstacle to the regulatory objective of congress. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*, 959 F.3d 1201, 1212 (9th Cir. 2020).

The FDCA expressly preempts any state law that does not impose food labeling requirements identical to those contained in the FDCA.[3] 21 U.S.C. § 343-1(a)(5).  If the conduct is not prohibited by the FDCA, then a state law claim, if successful, would have the effect of imposing requirements different from or in addition to the requirements imposed by the FDCA and would be expressly preempted. *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 776 (D. Minn. 2009).

Even if not expressly preempted, a state law claim may also be impliedly preempted. Because enforcing the FDCA is exclusively the province of the federal government, there is no private right of action under the FDCA.  21 U.S.C. § 337(a) (All proceeding "for the enforcement, or to restrain violations of" the FDCA must "be by and in the name of the United States").  Thus, a private litigant cannot sue a defendant for violating the FDCA. *See POM Wonderful LLC v. Coca-Cola Co.*, 574 U.S. 102, 109 (2019) (citing 21 U.S.C. § 337(a)).  Similarly, a private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA—that is, when the state claim would not exist if the FDCA did not exist. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-353 (2001).

Only limited claims can survive the dual effects of express and implied preemption under the FDCA. *See Perez v. Nidek*, 711 F.3d 1109, 1120 (9th Cir. 2013).  There is a "'narrow gap' through which a state-law claim must fit to escape preemption by the FDCA.  'The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly

---

[3] This preemption clause is "much broader than" those in other federal statutes, *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006), aff'd, 508 F.3d 11(D.C. Cir. 2007), and imposes a ceiling—not just a floor—on state regulation. See 58 Fed. Reg. 2462, 2462 (Jan. 6, 1993) ("stringent State laws will be preempted by less restrictive Federal regulations").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

preempted … ), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted . . .)[emphasis added].'" *Ibid.* (citations omitted). Plaintiffs' claims are well outside this narrow gap.

### 1. The FDCA Impliedly Preempts Plaintiffs' "Illegal Products" Theory of Liability.

Having devoted nearly their entire 199-paragraph Amended Complaint to their "Illegal Products" theory, Plaintiffs plainly base their state-law claims on Pharmacare's purported violations of the FDCA. While styled as violations of state consumer protection statutes based on representations made by Pharmacare, Plaintiffs are suing *because* Pharmacare's conduct purportedly violates the FDCA, and their claims would not exist if the FDCA did not exist. The FDCA, thus, impliedly preempts Plaintiffs' claims based on an "Illegal Products" theory of liability. *See Buckman Co.*, 531 U.S. at 352-353; *Perez*, 711 F.3d at 1120.

Courts faced with similar claims have held that where alleged violations of the FDCA are a critical element of a state-law claim, the FDCA impliedly preempts such claim. In *Buckman*, for example, the Supreme Court held that plaintiff's state law fraud claims arising from the alleged violation of the Medical Device Act conflicted with the enforcement scheme of the FDCA and were therefore impliedly preempted by federal law. *Buckman*, 531 U.S. at 348.

> As a practical matter, complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes will dramatically increase the burdens facing potential applicants-burdens not contemplated by Congress in enacting the FDCA and the MDA.

*Id.* at 350. Further, noting the comprehensiveness of the regulatory scheme, the Supreme Court affirmed that such claims could only be brought by the Federal Government under 21 U.S.C. § 337(a) "rather than private litigants . . . ." *Id.* at 350.

Similarly, in *Perez*, the Ninth Circuit affirmed a district court's dismissal of a putative class action alleging defendants misled patients by not disclosing that a medical device lacked a required FDA approval as impliedly preempted. Notwithstanding that the plaintiff in *Perez* styled his claims as common law fraud, the Ninth Circuit found that because his claims

"exist[ed] solely by virtue of the FDCA disclosure requirements" and that "the existence of these federal [FDCA] enactments is a critical element in their case," Plaintiff was seeking privately to enforce FDCA statutes and regulations  *Perez*, 711 F.3d at 1119.  The Ninth Circuit, thus, concluded that Plaintiff was suing *because* the defendant's conduct violated the FDCA and, thus, impliedly preempted.  *Id.* at 1120.

The Ninth Circuit subsequently applied this preemption doctrine in *Stengel v. Medtronic Inc.*, when it confirmed that the FDCA impliedly preempts any state-law claim that is based on the premarket FDA approval process, because this "wholly federal" process "originates from, is governed by, and terminates according to federal law."  *Stengel*, 704 F.3d at 1230.  The Ninth Circuit further explained: "Central to the Court's reasoning in *Buckman* was that the state law claim asserted there 'exist[ed] solely by virtue' of the federal enactments because state law traditionally had no role to play in policing 'the relationship between a federal agency and the entity it regulates[.]'"  *Id.* (citations omitted).

District courts in the Ninth Circuit have also found claims similar to Plaintiffs' illegal products theory preempted.  In *Borchenko v. L'Oreal*, the court found UCL claims impliedly preempted where the plaintiffs alleged that the defendant's sale of skin care creams "c[ould not] be marketed as skin structure altering drugs without pre-approval from the FDA through the New Drug Application ('NDA') process unless they conform[ed] to a 'monograph' for a particular drug category."  389 F.Supp.3d 769, 773-74 (C.D. Cal. 2020).  The court held that, "[t]he fact that Plaintiff's claim is technically brought under the UCL . . . does not override the fact that Plaintiff explicitly requests relief which 'lies squarely within the province of the FDA.'"  *Id.*  "There can be no state law cause of action if a plaintiff's true goal is to privately enforce alleged violations of the FDCA."  *Id.*; *see also, Somers v. Beiersdorf, Inc.* 467 F.Supp.3d 934, 939-40 (S.D.Cal. 2020).

Like the state law claims in *Buckman, Perez,* and *Stengel*, Plaintiffs' illegal products theory is preempted because it is dependent on the FDCA and related FDA regulations.  Indeed, "the existence of these federal enactments is a critical element in their case."  *Perez*, 711 F.3d at 1120.  Plaintiffs' Amended Complaint makes copious reference to FDCA

provisions and FDA regulations as the basis for their illegal products theory. To allow a private person to prosecute a state law private right of action based on a violation of the FDCA (as Plaintiffs attempt to do here) would directly interfere with the governmental prosecutorial discretion and federal government oversight that is built into the FDCA, and would conflict with the clear congressional intent to provide for a comprehensive and exclusive governmental interpretive and enforcement scheme. As such, Plaintiffs' claims based on an illegal products theory should be dismissed. *See e.g. Fraker v. KFC Corp.*, 2007 WL 1296571, at *4 (S.D. Cal., Apr. 30, 2007) ("the FDCA presents a comprehensive regulatory scheme of branding and labeling of food products. To overlay the state law tort system over the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties. Accordingly, to the extent Plaintiff contends that alleged violations of the FDCA and Sherman Law give rise to viable state law claims, such claims are impliedly preempted by the FDCA.")

### 2. The FDCA Expressly Preempts Plaintiffs' "Illegal Products" Theory Based on Purported Implied-Disease Claims.

To the extent Plaintiffs base their "Illegal Products" theory of liability on Pharmacare's purported implied disease claims, the FDCA expressly preempts such claims. As set forth above, the FDCA expressly preempts state law labeling requirements that are different from FDA requirements. 21 U.S.C. § 343-1(a)(5); *see also Turek v. General Mills, Inc.*, 754 F.Supp.2d 956, 958-59 (N.D. Ill. 2010) (state law requirements that may not differ from FDCA requirements include "statutes and regulations, as well as common-law duties and judge-made rules") (citing *Bates v. Dow Agrosciences LLC* , 544 U.S. 431, 433 (2005)). The FDCA expressly allows manufacturers to make certain health claims for dietary supplements without FDA approval, including (1) statements asserting a benefit related to a classical nutrient deficiency disease; (2) claims about the role of a nutrient or dietary ingredient with respect to the structure or function of the human body ("structure/function claims"); and (3) declarations of general well-being from consumption of a nutrient or other dietary ingredient. See 21 U.S.C. § 343(r)(6)(A). To that end, the FDCA distinguishes between "disease claims" and

"structure/function claims," applying different regulatory standards to each. A permissible structure function claim, among other things, "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a nutrient or dietary ingredient." 21 U.S.C. § 343(r)(6)(A). A structure function claim, however, "may not claim to diagnose, mitigate, treat, cure, or prevent disease." 21 C.F.R. § 101.93(g)(2)(ii); *see also* 21 U.S.C. § 343(r)(6)(A).

The FDA has promulgated "uniform" and "objective" rules to guide manufacturers in crafting permissible structure/function claims. 21 C.F.R. § 101.93(f)-(g) ("FDA's Final Rule"); *See* Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure Function of the Body, 65 Fed. Red. 1000[4] ("The final rule creates uniform, enforceable requirements for structure/function claims."). Along with these rules, FDA also provide specific guidance to clarify the types of claims, including examples, that would qualify as appropriate structure/function claims. *See* 65 Fed. Reg. at 1030-31; *see also* 21 C.F.R. § 101.93(g) (criteria for distinguishing structure/function claims). Whether the FDCA *expressly* preempts Plaintiff's "illegal products" theory based on Pharmacare's purported use of implied disease claims, therefore, depends on whether Plaintiffs, through their state law claims, are seeking to impose a different standard for structure/function claims than those set forth under the FDCA and the FDA's Final Rule. *See* 21 C.F.R. § 100.1(c)(4) (A state requirement is different than federal requirements if it "directly or indirectly" imposes obligations that are "not imposed by or contained in the applicable [federal] provisions (including any implementing regulation).") *Stengel*, 704 F.3d at 1232.

Here, the FDA specifically recognizes that claims that a product or nutrient "supports the immune system" is an acceptable structure/function claim that does not imply prevention of disease. 65 Fed. Reg. 1000 at 1028-1029 (providing "supports the immune system," as an

---

[4] *See* Request For Judicial Notice In Support of PharmaCare U.S., Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint ("RJN"), Ex. B (65 Fed. Reg. 1000).

example of an acceptable structure/function claim, and emphasizing that claims such as, "'supportive of the immune system' are not specific enough to imply prevention of a disease"). The FDCA, thus, expressly preempts Plaintiffs' challenges to Pharmacare's claims that its Products "support[] immunity" and "support[] the immune system"—the FDA expressly recognizes that such claims are permissible structure/function claims, and Plaintiffs cannot, through their "illegal products" theory, seek hold Pharmacare to a different standard. *See Gallagher v. Bayer AG,* 2015 WL 1056480, at *7–8 (N.D. Cal., Mar. 10, 2015) (claims that dietary supplement "supports immunity" preempted by FDCA). Similarly, statements that a dietary supplement "helps you . . . stay healthy" and "arms you with the best protection nature has to offer" cannot be construed as anything other than describing a "general well-being from consumption of a dietary ingredient" –a classic structure/function claim. 21 U.S.C.§343(r)(6)(A).[5] *See e.g. Kroessler v. CVS Health Corporation*, 977 F.3d 803, 816 (9th Cir. 2020) ("The district court correctly concluded . . . that CVS's glucosamine-based supplements do not present implied disease claims on the face of the label alone. None of the words on the labels fit within the FDA's guidance on telltale implied disease claims. On the contrary, most of the labels' representations perfectly match the FDA's examples of proper structure/function claims."); *Seegert v. Recall Sundown, Inc.*, 445 F.Supp.3d 1149 (S.D. Cal. 2020) (finding implied disease claims theory expressly preempted by FDA's structure/function claims guidance); *Korolshteyn v. Costco*, 393 F.Supp.3d 1019 (S.D. Cal. 2019) (same). These representations set forth statements of a general well being acquired from the dietary ingredient which the FDA recognizes as a permissible structure function claim. 65 Fed. Reg. at 1028-1029.

In sum, Plaintiffs' "Illegal Products" theory based on alleged implied disease claims seeks to impose a requirement different from, or in addition to, the federal requirement.

---

[5] The remaining statements on which Plaintiffs rely (that the products were "developed by a virologist," "scientifically tested," "used in clinical studies," or has high antioxidant levels), cannot plausibly imply treatment or preventions of any *specific* disease or class of diseases. Consequently, these statements could only be actionable, if at all, under a theory of deception, which is addressed below.

1
2
Therefore, Plaintiffs' "Illegal Products" theory is expressly preempted to the extent it challenges Pharmacare's alleged labeling and advertising claims as implied disease claims.

### C.  Plaintiffs' Theory of Deception Fails as a Matter of Law.

Plaintiffs' theory of deception fares no better than its "Illegal Products" theory. According to Plaintiffs, Pharmacare violated various laws and regulations, which rendered the Products unsalable or mislabeled as a dietary supplement.  In support of their consumer fraud claims, they contend that because Pharmacare nonetheless marketed and sold these Products, it deceived consumers into thinking that the Products were being lawfully sold and not otherwise mislabeled. (FAC ¶¶ 123, 133) (alleging that "Defendant has fraudulently labeled its Products as legal dietary supplements when in fact they are illegal to sell" and that Defendants' labeling and advertising of the Products "misled consumers acting reasonably regarding the ingredients and that the Products were legally labeled dietary supplements when in fact they were and are illegal")).  Courts, however, have consistently rejected such theories of deception as the basis for consumer fraud claims.  *See e.g. Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) ("[D]eception claims must be predicated on more than simple regulatory violations.").[6]

To the extent Plaintiffs predicate their theory of deception on the purported falsity of the representations on which they claim to have relied, Plaintiffs fail to plead facts sufficient to support such a theory, or are barred from pursing such claims as a matter of law.  For instance:

• "Supports Immunity," "Immunity Support," "helps you . . . stay healthy" and

_____

[6] *See also Maxwell v. Unilever United States, Inc.*, 2018 WL 1536761, at *6 (N.D. Cal., Mar. 29, 2018) (rejecting claim that consumers deceived into thinking products were salable, when they were not, due to regulatory violations); *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *10 ("[w]hile regulatory violations might suggest that these statements might be misleading to a reasonable consumer, that alone is not enough to plead a claim under the FAL, CLRA, or the misleading/false advertising prongs of the UCL"); *Bruton v. Gerber Prods. Co.*, 2014 WL 7606633 (N.D. Cal. Dec. 18, 2014) (finding alleged violations of FDA regulations "insufficient to even raise a genuine factual issue as to whether [the] defendants' products labels were misleading").

13

"arms you with the best protection nature has to offer"- These are proper structure/function claims and Plaintiffs' claims are preempted by federal law. 65 Fed. Reg. 1000 at 1029; *Gallagher,* 2015 WL 1056480, at *7–8. Even if not preempted, Plaintiffs' claim still would fail as challenges to substantiation are not permissible under California law, (Dkt. 29 at pp. 14:7-15:28), nor do Plaintiffs allege, let alone establish, by citation to "testing, scientific literature, or anecdotal evidence," the falsity of this representation. *Kwan v. SanMedica Int'l,* 854 F. 3d 1088, 1091 (9th Cir. 2016). Also, the latter two statements are non-actionable puffery—that is, generalized, vague and highly subjective assertions on which no reasonable consumer could rely. *See Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) ("generalized, vague and unspecific assertions constitut[e] mere 'puffery' upon which a reasonable consumer [cannot] rely");.

- "High Antioxidant levels" - Other than alleging a violation of regulations, Plaintiffs do not allege any facts establishing the falsity of this representation. (*See generally* FAC). Plaintiffs fail to allege that the products do not contain antioxidant nutrients at a level a reasonable consumer would consider to be "high." *See* Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (under Rule 9(b), a plaintiff "must set forth what is false or misleading about a statement, and why it is false"); *Janney v. Mills*, 944 F.Supp.2d 806, 818 (N.D. Cal. 2013) ("Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials … and explain how such materials were false or misleading").

- "Virologist developed," "Developed by a world renowned Virologist" - Plaintiffs do not allege any facts demonstrating this claim to be false; indeed, this claim is literally true and Plaintiffs do not allege otherwise (*See generally* FAC).

- "Scientifically Tested" and/or "Clinically Tested": While Plaintiffs have abandoned their challenges to the "scientifically and clinically tested" representations under their UCL, FAL, and CLRA claims, Plaintiffs' allegations that these statements are unsubstantiated or unsupported, standing alone, also do not support their claims under the MMPA or the M.G.L. 93A; under Rule 8 and 9(b), to state a claim of false advertising or fraud on a theory that claims are unsubstantiated or proven false, a plaintiff must allege sufficient facts from which the Court can infer falsity or deception, which Plaintiffs have not done. *See e.g. Hughes v. Ester C Co.*, 930 F.Supp.2d 439, 458-460 (E.D.N.Y. 2013) (false advertising claim under MMPA cannot be based on lack of substantiation); *In re GNC Corp.*, 789 F.3d 505, 516 (4th Cir. 2015);

*Franulovic v. Coca–Cola Co.*, 390 Fed.Appx. 125, 126-127 (3d Cir. 2010); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 (7th Cir. 2001).

- "<u>Contain the most extensively researched extract in the world</u>" - No Plaintiff alleges having relied on, or having been misled by, this representation (FAC ¶¶ 81, 84, 89, 92, 97, 100).  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F. 3d 777, 793 (9th Cir. 2012) ("Because the plaintiffs' UCL claim sounds in fraud, they are required to prove 'actual reliance on the allegedly deceptive or misleading statements…').  Nor do Plaintiffs allege any facts demonstrating the falsity of this representation (e.g., by identifying an elderberry extract that has been subject to more research than Sambucol).  Quite the opposite, this representation appears to be a variant of Plaintiffs' challenge to the "scientifically tested" claims that this Court has already dismissed, and that Plaintiffs acknowledge "do[es] not apply to the UCL, FLA [sic] and CLRA causes of action herein."  (FAC at p. 22, fn. 14).

- "<u>[U]sed in traditional remedies for colds, coughs, and upper respiratory infections</u>" - Again, no Plaintiff alleges having relied on, or having been misled, by this representation.  (FAC ¶¶ 81, 84, 89, 92, 97, 100).  Nor have Plaintiffs alleged any facts establishing that this claim is false. (*See generally* FAC).

- "<u>#1 Pharmacist Recommended Brand</u>" - None of the Plaintiffs allege having relied on or having been misled by this representation.  (FAC ¶¶ 81, 84, 89, 92, 97, 100).  Nor have Plaintiffs alleged any facts establishing that this claim is false, inaccurate. (*See generally* FAC).  Importantly, Plaintiffs omit critical context to this representation—that the *Pharmacy Times,* in collaboration with *U.S. News and World Report,* recognized Sambucol as the #1 pharmacists recommended brand in the "Homeopathic Cough Products" category for 2020-2021. See RJN, Exhibit C showing the website page cited by Plaintiffs containing this representation references a homeopathic product, *nowhere* mentioned in the FAC (FAC ¶1), and which is not a Product in this lawsuit. (FAC ¶ 54, fn 12).

Finally, although Plaintiffs appear to suggest that the statements on Pharmacare's products and advertising may have misled consumers into believing that its "Products are akin to drugs capable of preventing or mitigating disease"[7] (FAC ¶ 10), Plaintiffs do not predicate

---

[7] Only one Plaintiff (Luciano) alleges to have relied on an implied representation that the Products "would help prevent her from getting sick."  (FAC ¶ 89).  No other Plaintiff claims to have relied on any express or implied claim that the Products would prevent, cure or mitigate a disease.  (*See* FAC ¶¶ 84, 97).

their consumer fraud claims on this allegation.  (*See* FAC ¶¶ 123, 133).  Any such claim would be futile as both the Product labeling and advertising clearly and conspicuously state: "This product is not intended to diagnose, treat, cure or prevent any disease."[8]  In light of such *explicit* disclaimer, no reasonable consumer likely would be deceived by an *implied* representation that the Products may prevent or cure some unspecified disease.  *See e.g.*, *McCrary v. The Elations Co., LLC*, 2013 WL 6402217, at *4 (C.D. Cal. Apr. 24, 2013) (because the "packaging directly contradicts any supposed reference or inference to osteoarthritis by disclaiming that it treats any disease," plaintiff's claims based on the defendant's alleged implied message about the positive effects of taking glucosamine and chondroitin to relieve symptoms could not advance).[9]  Not only does Pharmacare make no express claim that it can prevent or mitigate a disease, even if it had, Plaintiffs would still need to prove its claims are false by (again) citing to "testing, scientific literature, or anecdotal evidence," demonstrating that the Product is not effective in preventing or mitigating **any** disease—which Plaintiffs fail to do.  *See Kwan*, 854 F. 3d at 1091.

### D.    Plaintiffs Have Not Satisfied Rule 9(b)'s Heighted Pleading Standard.

Plaintiffs' consumer protection claims, grounded in a theory of deception, also fail to satisfy the heightened pleadings standards under Rule 9(b).  Rule 9(b) requires that Plaintiffs allege with particularity that the statements on which they relied in making their purchasing decisions were false or misleading (i.e., they must explain how and why the statements on which they relied were false or misleading).  *Yourish v. Cal. Amplifier*, 191 F. 3d 983, 993 (9th Cir. 1999) (under Rule 9(b), complaint must "set forth what is false or misleading about

---

[8] In their own act of deception, Plaintiffs omit this disclaimer, which appears on the Products' labeling, by cropping it out of the photo they attach to their FAC.  (*Compare* cropped label in FAC ¶ 66 with full label of same product attached as Ex. A to RJN.)

[9] *See also Williams v. Gerber Products Co.*, 552 F.3d 934, 939  (9th Cir. 2008) (dismissal is appropriate where "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived"); *Freeman v. Time, Inc.*, 68 F.3d 285, 288–89 (9th Cir. 1995) (affirming dismissal of a challenge to a mailer suggesting the plaintiff won a sweepstakes where the mailer explicitly stated that the plaintiff would only win the prize if he had the winning sweepstakes number).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

a statement, and why it is false").  Because, as set forth above, Plaintiffs have not alleged with particularity any facts establishing the falsity of these statements, or explained why such statements are misleading, Plaintiffs' consumer protection claims based on a theory of deception necessarily fail.  *See e.g. HGCI, Inc. v. Luxx Lighting, Inc.*, 2020 WL 5913851, at *7 (C.D. Cal., Sept. 10, 2020) (dismissing Lanham Act false advertising claim for failure to "specify what is false or misleading about the alleged conduct and why it is false."); *Garcia v. Wells Fargo Bank N.A.*, 2014 WL 458208, at *5  (N.D. Cal., Jan. 31, 2014) (dismissing claims ground in fraud for failure to plead falsity with particularity, "including an explanation of why the disputed statement was untrue or misleading at the time it was made").

Plaintiffs' theory of deception also fails to allege with sufficient particularity the "how, when, where, what and who" of the alleged misrepresentations on which they purportedly relied.  *Vess*, 317 F.3d at 1106 (to satisfy Rule 9(b), a complaint must plead "the who, what, when, where, and how of the misconduct charged").  While Plaintiffs generally allege that they were exposed to or saw the representations of which they complain over a long period of time—over three years for Corbett; over one year for Luciano; and over nine months for Dobbs (FAC ¶¶ 81, 88, 97)—this is not sufficient to satisfy Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (allegations that members of putative class exposed to alleged misrepresentations through televised marketing campaign and sales materials over a period of time not pled with particularity); *McCann v. Jupina, Court*, 2017 WL 1540719, at *2 (N.D. Cal. Apr. 28, 2017) (nine month time range when misrepresentations occurred fail to satisfy Rule 9(b)); *Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 598 (S.D. Ind. 2000) ("[Plaintiff] cannot expect simply to rest on its broad assertion that the fraud occurred over a period of six months.")

Plaintiffs' general allegations that they were exposed to the representations of which they complain on the Product labeling, the Sambucol website, the Amazon website, on television, and in Google advertising, are similarly insufficient to satisfy Rule 9(b).  For example, while Plaintiffs allege they were exposed to certain representations on the Sambucol website, they do not plead with any specificity when they visited the website, where on the

website they saw the representations, or what specific statements they saw on the website as opposed to on the package or other media.  (FAC ¶¶ 81, 97). While Plaintiffs complain about representations appearing on the Amazon website, on television commercials, on an unspecified website, and in Google advertising, nowhere in the complaint do Plaintiffs allege the specific content of these advertisements or materials, nor allege with any particularity when they were exposed to them.  (FAC ¶¶ 81, 89, 97). *See Kearns*, 567 F.3d at 1125-1126 (dismissing a UCL claim alleging exposure to advertising but failing to allege specific advertisements plaintiff saw and relied on); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) (Rule 9(b) pleading standards not met when plaintiff failed to identify the "particular advertisements or promotional materials that she was personally exposed to"); *In re NJOY, Inc. Consumer Class Action Litigation*, 2015 WL 12732461, at *12-13 (C.D. Cal., May 27, 2015) (allegations regarding exposure to misrepresentations insufficient under Rule 9(b) where plaintiffs did not allege with particularity where and when saw the advertisement). Because Plaintiffs fail to plead with sufficient particularity the "how, when, where, what and who" of Pharmacare's alleged deceptive conduct, Plaintiffs' claims must be dismissed.

### E. Plaintiffs Have Not Stated A Claim for Breach of An Implied Warranty.

To state a claim for breach of an implied warranty, a plaintiff "must stand in vertical contractual privity with the defendant."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Plaintiffs admit a lack of privity with Pharmacare, pleading purchases directly from retailers.  (FAC ¶¶ 80, 88, 96).  They claim privity is not required because their claim "relates to food or other substances intended for human consumption," (FAC ¶ 197) and because they are "intended third-party beneficiaries" of unspecified contracts between Pharmacare and "authorized retailers from whom [they] purchased the Products." (FAC ¶ 198). Plaintiffs' attempts to circumvent privity fail.

#### 1. The Food And Drug Exception Does Not Apply Because Plaintiffs Do Not Allege Injuries Resulting from Ingesting the Products.

Although an exception to the privity requirement exists for claims involving food and drugs, the exception applies only where the food or drug caused "injuries resulting from

ingesting products that manufacturers warrant are suitable for human consumption." *Nadler v. Nature's Way Products, LLC*, 2014 WL 12601567, at *3 (C.D. Cal., Mar. 27, 2014); *see Andrade-Heymsfield v. Danone US, Inc.*, 2019 WL 3817948, at *9 (S.D. Cal., Aug. 14, 2019) ("no exception to the privity requirement applies here.  The Coconut milk must have 'physically injured' Plaintiffs in order for the 'exception to the privity requirement to apply,' which did not occur here."); *Hammock v. Nutramarks, Inc.*, 2016 WL 4761784, at *5–6 (S.D. Cal., Sept. 12, 2016); *see also Peterson v. Lamb Rubber Co.*, 54 Cal. 2d 339, 342 (1960) (collecting cases that concluded that privity is excused when "injuries result from the eating of unwholesome food.")

Here, Plaintiffs have not been injured from ingesting the Products.  Rather, they allege that the Products did not conform to promises made on the container or label, and that they are not fit for their ordinary purpose of providing the benefits promised. (FAC ¶ 196; *see also Id.* ¶¶ 83, 91, 99) (alleging that Plaintiffs "experienced no improvement in [their] health as a result of using Defendant's Products").  Plaintiffs do not allege that the Products were unfit for human consumption, or that the Products made them sick.  Under these facts, the food and drug exception to the privity requirement does not apply.

### 2. Plaintiffs Fail To Allege Facts Establishing A Third-Party Beneficiary Exception to the Privity Requirement.

Plaintiffs' further claim that they are exempt from the privity requirement as intended third-party beneficiaries of Pharmacare's contracts with authorized retailers is similarly unavailing.  While this Court recognized a split among district courts on the existence of this exception, it noted that "no published decision of a California court has applied this [exception] doctrine in the context of a consumer claim against a product manufacturer."  (Dkt. 29 at p. 18:12-20 (citations omitted)).  No reason exists for deviating from those decisions holding that there is no third-party beneficiary exception to the privity requirement.  *See Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1088 (S.D. Cal. 2019) ("the Court finds there is no third-party beneficiary exception to California's privity requirement…. carving out an additional exception would violate the *Clemens* court's finding that California courts 'have

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

1    painstakingly established the scope of the privity requirement.'")

2        This Court also noted that, "[w]hile courts are split on recognition of the third party

3    beneficiary exception to the privity requirement, cases recognizing it require a plaintiff **to**

4    **show** that he or she was a third-party beneficiary of a contract between the defendant and a

5    third-party." (Dkt. 29 at p 19:4-14 (citing cases) (emphasis added)). Plaintiffs' conclusory

6    allegation that they "were the intended third-party beneficiaries" of Pharmacare's "contracts

7    with the authorized retailers from whom Plaintiffs and the Class Members purchased products,"

8    (FAC ¶ 198), is insufficient to meet this pleading standard.[10] *Shay v. Apple Inc.*, __ F. Supp.

9    3d __, 2021 WL 75690, at *8 (S.D. Cal. 2021) (granting motion to dismiss implied warranty

10    claim where FAC failed to allege a contract between Defendant and retailer where Plaintiff

11    was the intended third beneficiary to the contract); *see also* Fed. R. Civ. P. 8(a)(2); *Ashcroft v.*

12    *Iqbal*, 556 U.S. 662, 680-681 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 551

13    (2007); *Telesaurus VPC, LLC v. Power*, 623 F. 3d 998, 1004-1005 (9th Cir. 2010).

14      **F.**      **Plaintiffs Have Not Stated A Valid Claim for Breach of An Express**

15            **Warranty.**

16        To state a claim for breach of express warranty, Plaintiffs must allege "the exact terms

17    of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which

18    proximately causes plaintiff injury." *In re Ferrero Litigation*, 794 F. Supp. 2d 1107, 1117

19    (S.D. Cal. 2011). The allegations in Plaintiffs' FAC are insufficient to state a claim.

20        Although Plaintiffs complain that Pharmacare "made affirmations of fact or promises,

---

[10] Plaintiffs do not adequately plead the existence of a contract between Pharmacare and any retailers from which Plaintiffs purchased the products, let alone facts sufficient to establish Plaintiffs' status under such contracts as an intended third-party beneficiary. *See Land O'Lakes, Inc. v. Dairyamerica, Inc.*, 2017 WL 495644, at *6 (E.D. Cal., Feb. 6, 2017 ("Rule 8 of the Federal Rules of Civil Procedure provides that, in alleging the existence of a contract, a plaintiff may set forth the contract verbatim, attach it as an exhibit, or plead it according to its legal effect"); *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, at *10 (N.D. Cal. Jan. 28, 2011) (to plead existence of a contract, plaintiff must allege sufficient facts "to allow the Court to draw a reasonable inference that [there was a] definite promise, supported by consideration, that would establish a binding and enforceable contract").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FAC

or description of goods" on its Product labels and in its advertising (FAC ¶ 180), Plaintiffs do not identify any specific representations which would create an "express warranty" that Pharmacare breached. *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1160 (S.D. Cal. 2015) ("[a]n express warranty is a contractual promise from the seller that the goods conform to the promise"). Nor do Plaintiffs allege the "exact terms" of the express warranty to which Plaintiffs contend the Products failed to conform. ; *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) ("Defendant is correct that a breach of express warranty claim must describe the exact terms of the warranty at issue"); *Nabors v. Google, Inc.*, 2011 WL 3861893, at *4 (N.D. Cal. Aug. 30, 2011) ("General assertions about representations or impressions given by [the defendant] ... are not equivalent to a recitation of the exact terms of the underlying warranty").

Also, Plaintiffs have not alleged any facts demonstrating their reasonable reliance on, or Pharmacare's breach of, any purported express warranty. Plaintiffs allege that they relied on Pharmacare's representations that Sambucol: (1) was developed by a virologist; (2) supports immunity/the immune system; (3) was scientifically tested or used in clinical studies; (4) has high antioxidant levels; (5) helps you and your family stay healthy throughout the year; and (6) arms you with the best protection nature has to offer. (FAC ¶¶ 81, 84, 89, 92, 97, 100). Underscoring the necessity of pleading the exact terms of an express warranty, however, Plaintiffs incongruously allege that Pharmacare "breached these express warranties by selling Products that are illegally labeled as dietary supplements," further claiming they "would not have purchased the Products had they known the Products are illegally labeled as dietary supplements." (FAC ¶¶ 182, 183).

None of the statements on which Plaintiffs claim to have relied reasonably can be construed as express "affirmations and promises…concerning the legality of the Products," as Plaintiffs appear to suggest. *See Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1194 (N.D. Cal. 2018) (when ruling on an express warranty claim, a court first determines whether the seller's statement amounts to an affirmation of fact or promise relating to the goods sold). Nor, in any event, do Plaintiffs identify, and allege their reliance on, any affirmation or promise

21

by Pharmacare regarding their regulatory compliance with respect to the labeling of their Products because there are none.[11]  Whether Plaintiffs believed that the Products "were legally sold supplements" or Pharmacare complied with applicable regulations, is irrelevant to whether Pharmacare **expressly** warranted its regulatory compliance, and Plaintiffs' reliance thereon to its detriment.

In the absence of any allegations of fact demonstrating that the representations on which they claim to have relied are "affirmations of fact, or promises" concerning the Products, to which the Products failed to conform (i.e., that Pharmacare's statements were inaccurate[12]), Plaintiffs fail to state a valid claim for breach of express warranty.

## G.    The Claim For Damages Under The CLRA Fails For Improper Notice.

In an action for damages under the CLRA, the consumer must "(1) [n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770 [and] (2) [d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770" at least thirty days prior to the commencement of the action. Cal.

---

[11] See *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988 (N.D. Cal. 2009) (dismissing an express warranty claim, where the only named plaintiff with standing to sue failed to allege reasonable reliance); *Stearns v. Select Comfort Retail Corp.*, No. 08–2746 JF, 2008 WL 4542967, *5 (N.D. Cal. Oct. 1, 2008) ("Stearns' claim for breach of express warranty fails because she does not allege reasonable reliance under the second element on the terms of the warranty"); *Moncada v. Allstate Ins. Co.*, 471 F. Supp. 2d 987, 997 (N.D. Cal. 2006) (dismissing a breach of express warranty claim where plaintiffs did not allege reliance on express warranties); *see also In re Hydroxycut Marketing and Sales Practices Litig.*, 801 F.Supp.2d 993, 1013 (S.D. Cal. 2011) ("Because the FAC fails to allege facts showing that ... the Retailer Defendants ... made ... representations regarding the Products that Plaintiffs relied on in purchasing the Products, the Court dismisses the ... express warranty claim ... as to the Retailer Defendants").

[12] Plaintiffs do not, for example, allege that Sambucol was **not** developed by a virologist, or that Sambucol has **not been** scientifically tested or used in clinical trials.  Plaintiffs allege only that the representations **imply** the Products can treat, cure or prevent diseases—which is not an **express** affirmation of fact or promise creating an express warranty—and that they "experienced no improvement in [their] health as a result of using Defendants' products."  (FAC ¶¶ 83, 91, 99).  Such allegations are insufficient.

1    Civ.Code § 1782(a) (emphasis added). The purpose of the CLRA's notice requirement is "to

2    provide and facilitate pre-complaint settlements of consumer actions wherever possible and to

3    establish a limited period during which such settlement may be accomplished." *Outboard*

4    *Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (1975). Courts require strict compliance

5    with the notice requirement in order to further this purpose. *Allen v. Similasan Corp.*, 2013

6    WL 5436648, at *2–3 (S.D. Cal. Sept. 27, 2013).

7           The Notice must be in writing and sent "by certified or registered mail, return receipt

8    requested, to the place where the transaction occurred or to the person's principal place of

9    business within California." Civ. Code, § 1782(a)(2).  A plaintiff must notify the defendant

10   of "the particular alleged violations of Section 1770." Cal. Civ. Proc. Code § 1782(a)(1).

11          Here, Plaintiffs haves not strictly complied with the CLRA's notice requirement.  As is

12   demonstrated on the face of the letter itself, Plaintiffs did not deliver any notice to

13   Pharmacare's principal place of business in California, Cal. Civ. Proc. Code § 1782(a)(2), or

14   identify any specific violation of the CLRA. (RJN, ¶4, Ex. D.) Nowhere in their letter do

15   Plaintiffs mention Section 1770 of the act, or identify any of the 24 specifically prohibited

16   practices thereunder.  *See* Cal. Civ. Proc. Code §§ 1770.  Because the notice was improperly

17   delivered and does not mention any specific code violation, the CLRA claim for damages fails.

18   *See Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (dismissing CLRA

19   claim where notice "was not timely, was not delivered in the proper fashion, and made no

20   mention of § 1770 or any specific violations thereof").

21          Also, with the exception of the "high" antioxidant level claim, Plaintiffs' letter does not

22   identify any of the specific representations of which they now complain to be false and

23   misleading.  In their letter, Plaintiffs assert only that, "[i]n connection with Plaintiffs'

24   purchases, Pharmacare falsely represented that the Sambucol Elderberry Products were (i)

25   legal dietary supplements; (ii) able to mitigate or prevent disease; (iii) labeled with adequate

26   directions for use; (iv) 'high' in antioxidant levels; and (v) scientifically tested and therefore

27

28

effective for preventing disease,"[13] concluding that "Pharmacare's conduct related to the Sambucol Elderberry Products violates various consumer protection statutes, including, but not limited to, the [CLRA], [FAL], [and UCL]," among others.  Accordingly, Plaintiffs' claim for damages under the CLRA must be dismissed regarding those representations not identified in the letter, but of which they now complain are false or misleading.  *See Similasan Corp.*, 2013 WL 5436648, at *3, (dismissing the plaintiffs' CLRA claims based on misrepresentations not specifically raised in the notice letter); *Ruszecki v. Nelson Bach USA Ltd.,* 2015 WL 6750980, *6 (S.D. Cal. June 25, 2015) (dismissing claims under CLRA challenging alleged misrepresentations omitted from CLRA letter).

### H.     The M.G.L. 93A Claim Fails for Lack of Pre-suit Notice.

M.G.L. 93A, § 9(3) requires that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." M.G.L. 93A, § 9(3).  Sending a demand letter is an "absolute prerequisite to an action asserted under M.G.L. 93A, § 9," and failing to satisfy the prerequisite entitles a defendant to judgment as a matter of law.  *Ball v. Wal-Mart, Inc.*, 102 F. Supp. 2d 44, 54 (D. Mass 2000) (granting summary judgment for defendant where plaintiff failed to send a demand letter).

"One function of the demand letter 'is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct.'" *Casavant v. Norwegian Cruise Line, Ltd.*, 460 Mass. 500, 952 N.E.2d 908, 913 (2011) (quoting *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 322 N.E.2d 768, 779 (1975)). Demand letters must therefore "set out specifically any activities ... as to which they seek relief. Separate relief on actions not so mentioned is foreclosed as a matter of law." *Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018) (quoting *Passatempo v. McMenimen*, 461 Mass. 279, 960 N.E.2d 275, 293 (2012)); *see also Shaw v. BAC Home Loans Servicing,*

---

[13] Plaintiffs have abandoned their challenges to the "scientifically tested" representations under the "UCL, FAL [sic] and CLRA causes of action."  (FAC at p. 22, fn. 14).

1  *LP*, 2013 WL 789195, at *5 (D. Mass. Mar. 1, 2013) (dismissing Chapter 93A claim where

2  plaintiff's demand letter alleged only that lender failed to follow federal loan modification

3  procedures but complaint added a predatory lending claim).

4        Here, Luciano, who seeks to recover for purported violations of M.G.L. 93A, § 2, failed

5  to send such a demand letter to Pharmacare 30 days prior to filing suit as required by M.G.L.

6  93A, § 9(3).  Luciano's counsel sent the letter on December 30, 2020.  *See* Exhibit D to RJN.

7  Luciano then filed the Complaint on January 25, 2021, less than 30 days after sending the

8  letter.  Further, for the reason set forth in the above section, Luciano failed to "set out

9  specifically any activities . . . as to which [she] seek[s] relief."  Accordingly, her M.G.L. 93A

10  claim must be dismissed.

11  **IV.   CONCLUSION**

12        For the foregoing reasons, Pharmacare respectfully requests that the Court grant its

13  motion to dismiss Plaintiffs' FAC in its entirety without leave to amend.

14

15  DATED: August 4, 2021              Respectfully submitted,

16                                    SEYFARTH SHAW LLP

17

18                                  By: s/ Aaron Belzer

19                                      Aaron Belzer

20                                  Attorneys for Defendant
                                PharmaCare U.S., Inc.

21  73698756v.3

22

23

24

25

26

27

28