Alex R. Straus, SBN 321366
**MILBERG COLEMAN BRYSON PHILLLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 91212
Telephone: (917) 471-1894
*Plaintiff's Attorneys*

*Additional attorneys on signature page*

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

MONTIQUENO CORBETT, DAMARIS LUCIANO, and ROB DOBBS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PHARMACARE U.S., INC., a Delaware Corporation,

Defendant.

CASE NO. 3:21-cv-00137-GPC-AGS

**PLAINTIFF'S RESPONSE IN OPPOSITION TO PHARMACARE U.S., INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Judge: Hon. Gonzalo P. Curiel
Courtroom: 2D
Date: October 15, 2021
Time: 1:30 p.m.

# TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 2

A. Plaintiffs Have Statutory Standing for their Illegal Products' Theories ..... 2

1. Plaintiffs have standing for their UCL, FAL, and CLRA claims ..... 3

2. Plaintiffs have standing for their MMPA and M.G.L. 93A claims ..... 9

B. Plaintiffs Have Statutory Standing for their Illegal Products' Theories ..... 10

1. The FDCA Does not Impliedly Preempt Plaintiffs' "Illegal Product" Theory ..... 11

2. The FDCA Does Not Expressly Preempt Plaintiffs' "Illegal Products" Theory Based on Purported Implied Disease Claims ..... 13

C. Plaintiffs' Theory of Deception Does Not Fail ..... 17

D. Plaintiffs Have Satisfied Rule 9(b)'s Heightened Pleading Standard ..... 18

E. Plaintiffs Have Properly Stated a Claim for Breach of Implied Warranty ..... 20

F. Plaintiffs' Express Warranty Claims Should Not Be Dismissed ..... 22

G. Plaintiff Provided Proper Notice under the CLRA and M.G.L. 93A ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Cases**

*Ashton v. J.M. Smucker Co.*,
2020 WL 8575140 (C.D. Cal. Dec. 16, 2020) ........................................ 21, 22

*Backus v. General Mills, Inc.*,
122 F. Supp. 3d 909 (N.D. Cal. 2015) .......................................................... 5, 6

*Ball v. Wal-Mart, Inc.*,
102F. Supp. 2d 44, 54 (D. Mass 2000) ...........................................................25

*Benavides v. Kellogg Co.*,
2011 WL 13269720 (C.D. Cal. Mar. 21, 2011) ........................................... 21

*Bland v. Sequel Nat. Ltd.,*
No. 18-CV-04767-RS, 2019 WL 4674337
(N.D. Cal. Aug. 2, 2019) ................................................................................ 21

*Borchenko v. L'Oreal USA, Inc.*,
389 F. Supp. 3d 769 (C.D. Cal 2019) ........................................................... 12

*Brazil v. Dole Food Co., Inc.*,
2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) ............................................... 8

*Brown v. Hain Celestial Grp., Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012) .......................................................... 23

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) .................................................................. 18

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001) ....................................................................................... 12

*Burr v. Sherwin Williams Co.*,
42 Cal.2d 682 (1954) .......................................................................................20

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ...................................................................... 20

*Debernardis v. IQ Formulations, L.L.C.*,
942 F.3d 1076 (11th Cir. 2019) ........................................ 7, 8

*Estrada v. Progressive Direct Ins. Co.*,
53 F. Supp. 3d 484 (D. Mass. 2014) ........................................ 9

*Franz v. Beiersdorf, Inc.*,
745 Fed. App'x. 47 (9th Cir. Dec. 11, 2018) ........................................ 7

*Figy v. Frito-Lay N. Am., Inc.*,
67 F. Supp. 3d 1075 (N.D. Cal. 2014) ........................................ 17

*Gallagher v. Bayer AG*,
2015 WL 1056480 (N.D. Cal. March 10, 2015) ........................................ 16, 17

*Goldsmith v. Allergan, Inc.*,
2011 WL 2909313, (C.D. Cal. 2011) ........................................ 19

*Gottsdanker v. Cutter Lab'ys*,
182 Cal. App. 2d 602, 6 Cal.Rptr. 320 (Ct. App. 1960) ........................................ 20

*Gustavson v. Wrigley Sales Co.*,
961 F. Supp. 2d 1100 (N.D. Cal. 2013) ........................................ 8, 13

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ........................................ 6, 7

*Hesano v. Iovate Health Sciences, Inc.*,
2014 WL 197719 (S.D. Cal. Jan. 15, 2014) ........................................ 12

*Hess v. Chase Manhattan Bank, USA, N.A.*,
220 S.W.3d 758 (Mo. 2007) ........................................ 9

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) ........................................ 4

*In re Pharm. Indus. Average Wholesale Price Litig.*,
582 F.3d 156 (1st Cir. 2009) ........................................ 9

*Jones v. Porsche Cars N. Am., Inc.*,
*No. CV 15-5766-GW*(SSX), 2015 WL 11995257 (C.D. Cal. Oct. 15, 2015) ..................... 24

*Kanfer v. Pharmacare US, Inc.*,
142 F. Supp. 3d 1091 (S.D. Cal. 2015) ..................... 11, 12, 13, 14, 16

*Kroessler v. CVS Health Corp.*,
977 F.3d 803 (9th Cir. 2020) ..................... 11, 15, 16

*Kwikset Corp. v. Superior Court,*
51 Cal. 4th 310, 120 Cal. Rptr. 3d 741, 246 P.3d 877 ..................... 4, 8

*Maxwell v. Unilever United States, Inc.*,
2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) ..................... 18

*Meyer v. Sprint Spectrum L.P.,*
45 Cal.4th 88, Cal.Rptr.3d 859, 200 P.3d 295 (2009) ..................... 3

*Mexicali Rose v. Superior Ct.*,
1 Cal. 4th 617, 621, 822 P.2d 1292 (1992) ..................... 20

*Miramontes v. Mills*,
2015 WL 13609449 (C.D. Cal. May 18, 2015) ..................... 2

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020) ..................... 4

*Murphy v. Stonewall Kitchen, LLC*,
503 S.W.3d 308 (Mo. App. E.D. 2016) ..................... 9

*Outboard Marine Corp. v. Super. Ct.*,
52 Cal. App. 3d 30 (1975) ..................... 25

*Oxina v. Lands' End, Inc.*,
2015 WL 4272058 (S.D. Cal. June 19, 2015) ..................... 25

*Perez v. Nidek*,
711 F.3d 1109 (9th Cir. 2013) ..................... 12

*Roper v. Big Heart Pet Brands, Inc.*,
510 F.Supp.3d 903 (E.D. Cal. 2020) ........ 21

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg.*,
78 Cal. App. 4th 847 (Cal Ct. App. 2000) ........ 21

*Stanwood v. Mary Kay, Inc.*,
941 F. Supp. 2d 1212 (C.D. Cal. 2012)........ 19

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) ........ 22

*Trabakoolas v. Watts Water Techs., Inc.*,
2012 WL 2792441 (N.D. Cal. July 9, 2012) ........ 25

*Trazo v. Nestle USA, Inc.*,
2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ........ 18

*Vassigh v. Bai Brands, LLC,*
2015 WL 4238886 (N.D. Cal. July 13, 2015) ........ 12

*Vicuna v. Alexia Foods, Inc.*,
2012 WL 1497507 (N.D. Cal. Apr. 27, 2012) ........ 23

*Warnshuis v. Bausch Health U.S., LLC.*,
2020 WL 7239588 (E.D. Cal. Dec. 9, 2020)........ 20

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008)........ 17

**Statutes**

21 U.S.C. 342 ........ 7

21 U.S.C. § 321 ........ 23

21 U.S.C. § 331 ........ 9

21 U.S.C. § 343(r) .......... 9, 15, 16

21 U.S.C. §350b(a)(2).......... 6

21 U.S.C. § 350b(a)(1) .......... 6

M.G.L. 93A .......... 2, 9, 24, 25

M.G.L. 93A, § 9, .......... 25

**Rules**

Fed. R. Civ. P. 9(b) .......... 5, 18, 19, 20

**Other**

21 C.F.R. § 101.54 .......... 9

21 C.F.R. § 101.93 .......... 9, 15

65 Fed. Reg. 1000 .......... 17

vi

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT
3:21-CV-00137-GPC-AGS

**INTRODUCTION**

After the Court substantially denied PharmaCare's first motion to dismiss, PharmaCare, in this motion, essentially attempts a "do over" with most of its brief devoted to raising issues that it could have raised in its initial motion to dismiss, but did not, and resurrecting issues that this Court already addressed in its prior Order. PharmaCare offers no persuasive reason for this Court to revisit its prior Order, and its new arguments are either irrelevant to Plaintiffs' claims or have been soundly rejected by the Ninth Circuit and other courts.

Despite PharmaCare's effort to distract from the fundamental issue in this case through misdirection and mischaracterization of Plaintiffs' First Amended Complaint ("FAC"), the one fact at the core of this case remains unchallenged: PharmaCare is selling products containing a new dietary ingredient without providing the mandatory pre-market notification required by the Food, Drug, and Cosmetic Act ("FDCA") and the Dietary Supplement Health and Education Act ("DSHEA"). PharmaCare continues to dismiss this critical *statutory* requirement as a mere regulatory violation that should result in no consequences at all. This case does not involve a mere technicality or "no harm no foul." PharmaCare continues to sell a product that it is illegal for it to sell and that no consumer should be able to buy.[1]

[1] Since the allegations in Plaintiffs' FAC have not substantially changed from those of the original complaint, Plaintiffs have not duplicated the Statement of Facts contained in their opposition to PharmaCare's original Motion to Dismiss.

## ARGUMENT

### A. Plaintiffs Have Statutory Standing for their Illegal Products' Theories.

PharmaCare contends that Plaintiffs have failed to meet the state standing requirements of the UCL, FAL, CLRA, M.G.L. 93A, and MMPA, which, PharmaCare argues, each impose their own standing mandates, "requiring plaintiffs to plead and prove causation and/or actual reliance." Dkt. No. 35-1 at 4. Of course, "[at] the pleading stage, . . . plaintiffs are only required to plead facts, not produce admissible evidence." *Miramontes v. Mills*, 2015 WL 13609449, at *5 (C.D. Cal. May 18, 2015). In making this argument, PharmaCare ignores the fact that this Court ruled in its order denying PharmaCare's first motion to dismiss that "Defendant fail[ed] to conduct a legal analysis explaining what element of Article III standing *or statutory standing* is deficient and fails to explain why the allegations in the complaint do not support standing." *Corbett v. Pharmacare U.S., Inc.*, No. 21CV137-GPC(AGS), 2021 WL 2473950, at *4 (S.D. Cal. June 17, 2021) (emphasis added). The Court then "DENIE[D] Defendant's motion to dismiss the complaint for lack of standing as not legally or factually supported." *Id.*

PharmaCare offers no explanation for why it should now be allowed belatedly to make the arguments it failed to raise in its first motion to dismiss. In fact, PharmaCare appears to have simply cut-and-pasted its discussion from its prior motion to dismiss, citing verbatim the same cases and making the same arguments. *Compare* Dkt. No. 6-

1 at 6-7 *with* Dkt. No. 35-1 at 4-6. Plaintiffs already addressed those arguments and cases in their opposition to PharmaCare's first motion to dismiss. Dkt. No. 12 at 18-19. Although the Court need not revisit the issue of statutory standing, case law in addition to that already noted in the Court's prior Order establishes that Plaintiffs have statutory standing.

**1. Plaintiffs have standing for their UCL, FAL, and CLRA claims.**

To establish statutory standing under the UCL and FAL, a plaintiff must allege that she "lost money or property as a result of the unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013) (quoting Cal. Bus. & Prof. Code §§ 17204 (UCL), 17535 (FAL)). In a case involving deceptive advertising, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of the UCL by alleging … that he or she would not have bought the product but for the misrepresentation." *Id.* Likewise, to have standing to bring a CLRA claim, a plaintiff need only allege that she suffered "any damage" as a result of a defendant's deceptive conduct; the "requirement is a capacious one that includes any pecuniary damage as well as 'opportunity costs and transaction costs that result when a consumer is misled by deceptive marketing practices.'" *Id.* at 1108 (citing *Meyer v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 646, 88 Cal.Rptr.3d 859, 200 P.3d 295, 299, 302–03 (2009) (concluding that any plaintiff who has satisfied standing under the

UCL and FAL's "lost money or property requirement" will have suffered "any damage" for CLRA standing)).

For UCL, FAL, and CLRA claims, Plaintiffs must also show reliance on the allegedly untrue statements. *See Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 326-27, 120 Cal. Rptr. 3d 741, 246 P.3d 877, 887-88 (2011). However, actual reliance is presumed, or at least inferred, when the misrepresentation or omission is material. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020-21 (9th Cir. 2020). Whether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage. *Id*. At this stage, Plaintiffs need only allege that PharmaCare made material misrepresentations on the Product labels, that Plaintiffs relied on those misrepresentations, and that Plaintiffs would not have purchased the Products absent those misrepresentations, which Plaintiffs have done here. *See Hinojos,* 718 F.3d at 1104, 1108-9, n.7; Dkt. No. 31 at ¶¶ 80-102.[2]

PharmaCare argues that Plaintiffs lack standing because they failed to show they relied on any false or misleading statements and that, under Plaintiffs' "illegal products"

---

[2] Each Plaintiff specifically alleges that they were (1) "exposed to, saw, and relied on" Defendant's previously alleged materially misleading representations on the Products' packaging and labeling, and in other marketing, (2) that their "decision to buy the Elderberry Products was directly impacted and caused by the[se] materially misleading representations," (3) "had [they] known that the Elderberry Products were not legally sold supplements and had [they] known the truth about Defendant's materially misleading representations and omissions, [they] would not have purchased the Elderberry Products, and (4) [b]y purchasing Defendant's illegally sold and falsely advertised Products, Plaintiff[s] [] suffered injury in fact and lost money." Dkt. No. 31 at ¶¶ 80-102. These allegations are sufficient to prove statutory standing.

theory, any consumer would have standing to bring a lawsuit against a business for any purported regulatory violations. This argument mischaracterizes Plaintiffs' allegations and misstates the law, as the Court recognized in addressing PharmaCare's Rule 9(b) argument in its prior Order. *See Corbett*, 2021 WL 2473950, at *5-7.

Courts routinely allow unfair trade practices claims to proceed based on the sale of unsafe and/or illegal products because the sale of the unlawful product is, in and of itself, *the unfair business practice*, as *Backus v. General Mills, Inc.*, 122 F. Supp. 3d 909, 921 (N.D. Cal. 2015), which this Court relied upon in its prior Order, *Corbett*, 2021 WL 2473950, at *5, exemplifies. In *Backus*, a class action involving the unlawful presence of trans fat in baking mixes, the plaintiff "allege[d] that the sale of the baking mixes is actually illegal, and that he would not have even been able to spend money on them if General Mills had complied with California law." *Id.* The court found "[t]he purchase of such an allegedly unsafe and illegal product is sufficient to confer standing for an economic injury under Article III *and* the UCL." *Id*. (emphasis added).

The court specifically acknowledged that the plaintiff had standing to bring his claims based solely on his illegal products theory (rejecting the same argument PharmaCare makes here):

> General Mills also argues that Backus has not met the UCL's standing requirement because he has not alleged that General Mills made any misleading statements or violated any labeling regulations. . . . However, this is simply not a misrepresentation case; the allegedly unfair business conduct here was the distribution of baking mixes with trans fats. . . . Because Backus is not arguing that General Mills violated any labeling

> regulations, but instead is arguing that the distribution of the mixes was by itself an unfair business practice, it is beside the point that Backus did not include misrepresentation allegations in his Complaint. As discussed below, Backus has plausibly stated claims for relief under the UCL even though he does not allege any misrepresentation.

*Id.* at 925. The court also clarified that the UCL does not have a heightened standing requirement, and that courts "need not torture the language of the UCL ... to conclude that harm in fact will meet the 'as a result of' requirement." *Id.* at *925 (citation omitted). "Allegations that a consumer was actually harmed by a business dealing with a defendant are therefore generally sufficient in cases not involving fraud or misrepresentation." *Id.*; *see also Hawkins v. Kroger Co.*, 906 F.3d 763, 772 (9th Cir. 2018) (in class action involving illegal use of trans fat in food products in violation of FDA label regulations, finding plaintiff had statutory standing because "she would not have otherwise bought [the product] if she had known the product was harmful.")

Here, there is no dispute that PharmaCare's Elderberry Products are dietary supplements that contain a new dietary ingredient ("NDI") in the form of an "Elderberry Extract," which was required to go through the FDA's Premarket Notification process before it could be lawfully sold as or in a dietary supplement (*i.e.* the Elderberry Product).[3] There is also no dispute that, although required to do so, PharmaCare did not

[3] The FDA regulates finished dietary supplements and dietary ingredients under the DSHEA, which was an amendment to the FDCA that established a framework to govern the composition, safety, labeling, manufacturing, and marketing of dietary supplements. Dkt. No. 31 at ¶ 27. Under the DSHEA, dietary ingredients that were marketed in the United States before 1994 may be used in dietary supplements without first notifying the FDA. *Id.* ¶ 29. However, a dietary supplement that contains an NDI– an ingredient not marketed in the United States before 1994– shall be deemed

go through the Premarket Notification process for the Elderberry Products and, instead, brought the Products directly to market. Thus, there can be no reasonable dispute that the Elderberry Products are "adulterated" for purposes of the FDCA and parallel state statutes and are unlawful for sale to consumers. *Id.* ¶¶ 26-35; 21 U.S.C. 342(f). That PharmaCare skipped this Premarket Notification process and put illegal and potentially unsafe products on the market is sufficient to confer statutory standing on Plaintiffs under California's consumer protection statutes. Therefore, Plaintiffs have adequately alleged that PharmaCare's conduct of selling illegal products caused Plaintiffs to suffer injuries in the form of purchasing products that should not have been available for purchase in the first instance, which is sufficient to confer both statutory and Article III standing. *See also Debernardis v. IQ Formulations, L.L.C.*, 942 F.3d 1076, 1086 (11th Cir. 2019) (holding with respect to identical claims that plaintiffs had standing for their deceptive trade practices claims "because they allegedly experienced an economic loss when they purchased a product that the [Food, Drug & Cosmetic Act] banned from sale because it was unsafe"); *Franz v. Beiersdorf, Inc.*, 745 Fed. App'x. 47, 48 (9th Cir. Dec. 11, 2018) (concluding that plaintiff alleged statutory standing where she alleged that

adulterated unless it meets one of two requirements: (1) the dietary supplement contains only dietary ingredients that have been present in the food supply as an article used for food in a form that has not been chemically altered (*Id.* ¶¶ 28-30, quoting 21 U.S.C. § 350b(a)(1)), or (2) at least 75 days before being introduced into interstate commerce, the manufacturer or distributor of the dietary supplement that contains a NDI provides the FDA with information that demonstrates that the "history of use or other evidence of safety establish that the NDI when used under the conditions recommended or suggested in the labeling of the NDI will reasonably be expected to be safe." (*Id.* ¶ 31, quoting 21 U.S.C. §350b(a)(2)) ("Premarket Notification Process").

she had spent money on a product—Nivea CoQ10 body lotion—that should not have been on the market because the defendant "was not legally allowed to sell [the product] in the form being offered").

In addition, in *Gustavson v. Wrigley Sales Co.,* 961 F. Supp. 2d 1100, 1128-29 (N.D. Cal. 2013), the plaintiff alleged that she purchased gum and candy that were misbranded due to unlawful and unauthorized health claims (including unlawful antioxidant claims, among others), in violation of the FDCA and California's Sherman Law. The court found that plaintiff had statutory standing for her UCL, CLRA, and FAL claims based on her allegations that she purchased products that were "legally worthless" due to violations of federal labeling regulations and that she "would have foregone purchasing Defendant's [*sic*] products and bought other products readily available at a lower price" had she known they were misbranded." *Id.* at *1129-30 (citing *Kwikset,* 51 Cal.4th at 322, 120 Cal. Rpt. 3d at 750-51, 246 P.3d at 885); *see also Brazil v. Dole Food Co., Inc.,* 2013 WL 5312418, at *9-10, 12 (N.D. Cal. Sept. 23, 2013) (cited by PharmaCare but concluding that plaintiff could proceed with respect to UCL, FAL, and CLRA claims based on label representations that violated FDA regulations). Plaintiffs' allegations regarding PharmaCare's similarly unlawful and unauthorized health claims[4] and the economic harm they suffered as a result of their

---

[4] In addition to unlawfully selling the Elderberry Products as dietary supplements, Plaintiffs allege three additional violations of the FDCA: (1) unlawful implied disease claims in violation of 21 C.F.R. § 101.93(g)(2), 21 U.S.C. § 343(r)(6) (Dkt. No. 31 at ¶¶ 38-42, 44, 50); (2) inadequate directions for

reliance on those claims is equally sufficient to establish standing. PharmaCare has identified no new cases suggesting that this Court should revisit its original ruling denying PharmaCare's motion to dismiss for lack of statutory standing.

***2.* Plaintiffs have standing for their MMPA and M.G.L. 93A claims.**

PharmaCare argues that Plaintiffs lack standing for their Missouri and Massachusetts statutory claims through a series of string cites but fails to address what is actually required at the pleading stage (or in what way Plaintiffs' FAC is deficient). PharmaCare also misstates the reliance requirements of each statute. There is no actual reliance requirement under the MMPA. *See Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. E.D. 2016) ("A consumer's reliance on an unlawful practice is not required under the MMPA")); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. 2007) ("MMPA claim expressly does not [require proof of reliance]."). Nor is there an actual reliance requirement under M.G.L. 93A. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 185 (1st Cir. 2009) (holding that for claims under 93A, "plaintiff need not necessarily prove actual reliance on a misrepresentation."); *Estrada v. Progressive Direct Ins. Co.*, 53 F. Supp. 3d 484, 499 (D. Mass. 2014) (same).

---

use in violation of 21 U.S.C. § 331(a) (Dkt. No. 31 at ¶¶ 56-59); and (3) antioxidant misbranding claims in violation of 21 C.F.R. § 101.54(g) (Dkt. No. 31 at ¶¶ 60-68).

In both its first motion to dismiss and in this second motion, PharmaCare has failed to point to any deficiency that would warrant dismissal of Plaintiffs' MMPA and 93A claims. PharmaCare has also failed to allege any factual or legal support for its contention that Plaintiffs lack standing for these claims. Thus, the court should allow Plaintiffs' Missouri and Massachusetts claims to proceed.

**B. The FDCA Does Not Preempt Plaintiffs' "Illegal Products" Theory.**

Although difficult to decipher, it appears PharmaCare is arguing that (1) Plaintiffs' illegal products theory is impliedly preempted because Plaintiffs allegedly base their state-law claims on PharmaCare's violations of the FDCA and that (2) Plaintiffs' implied disease claims based on "immune support," "supports the immune system," "helps you and your family stay healthy throughout the year," and "arms you with the best protection nature has to offer," are structure/function claims expressly permitted by the FDA and, therefore, plaintiffs' claims are expressly preempted as seeking to impose requirements different from those of the FDA.[5]

To begin, PharmaCare's preemption argument should be rejected as Defendant failed to argue preemption in its initial motion to dismiss. Further, as discussed below, PharmaCare's arguments ignore the long line of cases rejecting implied preemption in

[5] Except for a vague footnote (Doc. 35-1 at n.5), PharmaCare does not address the "scientifically tested," "virologist developed," or "developed by a world renowned virologist" claims in its preemption section and therefore Plaintiffs read PharmaCare's brief as not independently challenging those claims here.

similar circumstances. In addition, in arguing that Plaintiffs' immune-based claims are preempted structure/function claims, PharmaCare distorts Plaintiffs' allegations.

**1. The FDCA Does not Impliedly Preempt Plaintiffs' "Illegal Product" Theory.**

PharmaCare's argument regarding implied preemption appears to rest on the contention that the FDCA leaves no room for private action and that Plaintiffs' state law claims are solely reliant on the FDCA and are thus preempted. PharmaCare is mistaken. Here, Plaintiffs merely seek to hold Defendant to standards set out in the FDCA, through parallel state law, which is permissible under the FDCA.

In *Kroessler v. CVS Health Corp*., 977 F.3d 803, 808 (9th Cir. 2020), the Ninth Circuit recently examined FDCA preemption in detail, and expressly found that in actions involving dietary supplements, a private plaintiff may bring state law claims that impose requirements identical to those contained in the FDCA. There, the plaintiff brought claims for violations of California's UCL, CLRA, and breach of express warranty based on CVS's sale of glucosamine-based supplements with false and misleading labels in violation of the FDCA and California's Sherman Law.

In addressing preemption under the FDCA, the Ninth Circuit found that "so long as California laws impose requirements identical to the FDCA, the FDCA will not preempt [] state law causes of action," *id.* at 809, and then reiterated "the FDCA's stated purpose of promoting public policy by retaining parallel avenues for private and public enforcement actions against false or misleading statements." *Id.* at 814.; *see also Kanfer*

*v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1102 (S.D. Cal. 2015) (holding that "district courts have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling claims and related claims under the Sherman Law are impliedly preempted under § 337(a) and *Buckman"*) (citing *Vassigh v. Bai Brands, LLC,* 2015 WL 4238886, at *4–5 (N.D. Cal. July 13, 2015) (collecting cases)); *Hesano v. Iovate Health Sciences, Inc.,* 2014 WL 197719, at *7 (S.D. Cal. Jan. 15, 2014) ("The FDCA ... does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws."). Here, Plaintiffs bring state law claims that are identical to the FDCA, which the case law, including controlling Ninth Circuit authority, establishes are not preempted. While private litigants may not sue to enforce compliance with the FDCA, that is not what Plaintiffs are seeking to do here.  Plaintiffs are suing for conduct that violates the FDCA in violation of the Sherman Law and parallel state statutes, which claims are not preempted, as PharmaCare must admit,

Finally, PharmaCare's citation to *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769 (C.D. Cal 2019) is inapposite. There, the plaintiff sought an injunction requiring the defendant to comply with FDA regulations – relief that was squarely within the province of the FDA. Similarly, the medical device cases that PharmaCare cites, including *Perez v. Nidek*, 711 F.3d 1109, 1120 (9th Cir. 2013) and *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-353 (2001), have no bearing here as cases involving medical devices, which are analyzed under the FDA's Medical Device Act,

are unrelated to FDCA violations. *See*, *e.g.*, *Gustavson*, 961 F. Supp. 2d at 1118 (in action involving FDCA violation, stating "*Buckman* is distinguishable from the present case, and the Court is not persuaded that its logic can be stretched to dismiss [] claims under the doctrine of implied preemption"). Notably, in *Kanfer*, PharmaCare itself unsuccessfully made the same arguments, which the court outright rejected as "inapposite." 142 F. Supp. 3d at 1102.

**2. The FDCA Does Not Expressly Preempt Plaintiffs' "Illegal Products" Theory Based on Purported Implied Disease Claims.**

PharmaCare appears to limit its express preemption argument to Plaintiffs' immunity-based claims and, in doing so, completely distorts Plaintiffs' allegations and the law. Plaintiffs allege that PharmaCare's claims, including their claims related to "immunity," seek to convince consumers that the Elderberry Products can "guarantee consistent immune supporting properties" and also treat viruses:

> On the labels of its Elderberry Products, as well as on its website and in other marketing directed at consumers, Defendant states: "*Developed by a world renowned virologist*, Sambucol is the unique black elderberry extract that has been used in scientific studies. **By using a proprietary method of extraction, *only Sambucol can guarantee* consistent, immune supporting properties in every serving." (Emphasis added.).** Additionally, Defendant promises consumers on its packaging: "Sambucol® Black Elderberry extract conveniently arms you with some of the best protection nature has to offer." **Defendant also represents that the Elderberry Products help to protect consumers from catching a virus or other illness, or to fight off a virus or other illness: "Stress can wreak havoc on our immune system. This leaves us open to the possibility of more frequently catching a virus or other illness.** Sambucol Black Elderberry helps to support a healthy immune system so

> even on my most hectic days, I am giving my body the immune support it needs."

Dkt. No. 31 at ¶ 6 (emphasis added). Each of the Products promises that it "Supports Immunity," provides "Immunity Support," or "maximizes the naturally occurring immunity benefits of the black elderberry (sambucus nigra)." *Id.* ¶¶ 44-45. As the FAC alleges, such "statement[s] do not just allege support for the immune system, but rather suggest to reasonable consumers that the Products can provide 'immunity' to disease, which given Defendant's other marketing would suggest immunity to colds and the flu." *Id.* ¶ 44.

In addition, Plaintiffs allege that "Defendant's portrayal of its Products as being the focus of scientists throughout the world (including a world-renowned virologist) who have extensively tested, researched, and studied them further conveys Defendant's intended impression that its Products are akin to drugs capable of preventing or mitigating disease." *Id.* at ¶ 10. "As is obvious from the name, a virologist is an expert in the branch of science that deals with viruses and the diseases that they cause." *Id.* at ¶ 41.

These representations, independently and collectively, are implied disease claims under 21 C.F.R. § 101.93(g)(2), which promise that the Products have the ability to mitigate, treat, cure, or prevent diseases, and which are barred by the FDCA. 21 U.S.C. § 343(r)(6). Dkt. No. 31 at ¶¶ 38-42, 44, 50.

PharmaCare's immunity/immune system-based claims cannot be viewed in isolation, but rather must be viewed in their totality. As the Ninth Circuit stated in *Kroessler*, the FDA looks at the context in which the claim is presented on the label in determining the propriety of a structure/function claim, and the mere presence of a structure/function claim does not cause the FDCA to preempt California causes of action. *Kroessler*, 977 F.3d at 816. The Ninth Circuit also noted that "[i]mplied disease claims need not consist of words alone; "images of people suffering from the disease" are another way to imply a disease claim. , , , The FDA admits that "[t]he distinction between implied and express disease claims is thus, in many cases, a semantic one…." *Id.* at 815. Further, the court found that:

> A supplement label's objective representations are not the only factors the FDA will consider when determining "the context in which the claim is presented" for purposes of identifying implied disease claims. 21 C.F.R. § 101.93(g)(2). "[I]n appropriate circumstances, [the] FDA may find that a dietary supplement for which only structure/function claims are made in labeling may nevertheless [claim to treat disease] if there is *other evidence of intended use* to prevent or treat disease." 65 Fed. Reg. at 1006 (emphasis added). We need not delineate what types of evidence courts may consider when evaluating implied disease claims. It is sufficient to state that many other courts have considered extra-label material when identifying implied disease claims and that those considerations are best made by district courts on a case-by-case basis.

*Id.*

As stated in *Kroessler*, here, PharmaCare's immunity-based claims cannot be looked at in isolation. Rather, as a whole, PharmaCare seeks to "unlawfully convey to consumers that its Elderberry Products will protect consumers and their children from

diseases such as viruses." Dkt. No. 31 at ¶ 9. These are exactly the type of label and extra-label type representations that the Ninth Circuit found may not be preempted by the FDCA.

Notably, PharmaCare lost nearly identical preemption arguments in *Kanfer,* 142 F. Supp. 3d at 1100, where the plaintiff brought claims against PharmaCare for violation of the UCL, FAL, and CLRA, and also for breach of express and implied warranties, relating to IntenseX, a product that promised to treat impotence. As it does once more in the current action, PharmaCare argued that the plaintiff's claims were preempted by the FDCA including 21 U.S.C. §343(r)(6)(A), but the court found that PharmaCare's statements implied the product could treat impotence in violation of FDA regulations, the Sherman Law, and the UCL, and plaintiff's claims were not preempted.

Here, as in *Kanfer*, Defendant makes multiple label and extra label representations that would indicate to a reasonable consumer that the Elderberry Products can fight off and treat viruses and other illnesses – claims that are not lawful structure/function claims. Thus, PharmaCare does not simply market the Elderberry Products as "supportive of the immune system," as the plaintiffs did in *Gallagher v. Bayer AG,* 2015 WL 1056480 (N.D. Cal. March 10, 2015). Given the multitude of representations implying the Elderberry Products can protect consumers from viruses and other illnesses, Plaintiffs' claims fall well outside of the structure/function claims addressed by the FDA in 65 Fed. Reg. 1000 at 1028-1029.

**C. Plaintiffs' Theory of Deception Does Not Fail.**

While PharmaCare characterizes its argument as an attack on "plaintiffs' theory of deception," it fails to actually analyze any elements of the consumer protection claims. In fact, PharmaCare fails to specifically ask the Court to dismiss any of these claims at all. PharmaCare seems to be arguing: (1) that Plaintiffs have not alleged deception beyond a simple regulatory violation; (2) that Plaintiffs have failed to plead facts sufficient to support falsity of the representations or are barred from doing so as a matter of law; and (3) PharmaCare has an explicit disclaimer that the "product is not intended to diagnose, treat, cure or prevent any disease."[6]

First, this case does not involve a "simple regulatory violation," as in *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014). In *Figy,* the plaintiffs failed to allege that they viewed or relied upon any of the challenged labeling statements, which the court found insufficient to support their consumer protection claims. Here, in contrast, Plaintiffs allege that PharmaCare made unlawful and unauthorized claims on the Elderberry Products labeling and in its marketing that each Plaintiff viewed and relied upon and that PharmaCare also failed to disclose material information. Plaintiffs further allege that they would not have purchased the Products

[6] The disclaimer that PharmaCare cites is required by the FDA and does not insulate PharmaCare from liability. *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (holding that ingredient list mandated by FDA was not a "shield for liability for the deception" elsewhere on packaging).

had they known the truth about the materially misleading representations and omissions. Dkt. No. 31 at ¶¶ 80-102.

The other cases cited by PharmaCare are equally irrelevant to the allegations in the FAC. *See Maxwell v. Unilever United States, Inc.*, 2018 WL 1536761, at *6 (N.D. Cal. Mar. 29, 2018) (holding that reasonable consumer would not be deceived by labels that had no affirmative misrepresentation); *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013) (holding as to some claims that plaintiffs did not "connect the dots showing how the alleged misbranding [regulatory violations] misled plaintiffs," but allowing other claims based on regulatory violations to proceed): *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 471 (9th Cir. 2017) (on appeal from decision cited by PharmaCare, affirming summary judgment in part because labels were not in fact deceptive but reversing grant of summary judgment based on claims that labels were unlawful under the UCL). Accordingly, while not specifically requested by PharmaCare, the Court should not dismiss Plaintiffs' consumer fraud claims.

**D. Plaintiffs Have Satisfied Rule 9(b)'s Heightened Pleading Standard.**

In its prior Order addressing PharmaCare's Rule 9(b) argument, the Court ordered that Plaintiffs "must identify a time period when they saw the false advertisements," "must specify where they saw each of the alleged false misrepresentations," and must identify all the misrepresentations that each Plaintiff relied upon. *Corbett*, 2021 WL 2473950, at *6-7. Plaintiffs' FAC addresses each of these issues.

In the FAC, each Plaintiff specifically alleges the time period when they saw PharmaCare's misrepresentations. Dkt. No. 31 at ¶¶ 81, 89, 97. In arguing that these allegations are not sufficient, PharmaCare twists the allegations to suggest that Plaintiffs are alleging a multi-year or multi-month time frame. Plaintiffs have specifically alleged when they first saw PharmaCare's misrepresentations. *See id.* Then, because, in contrast to the cases upon which PharmaCare relies, Plaintiffs continuously purchased the Elderberry Products over an extended period of time and because the misrepresentations were on the Products' packaging, Plaintiffs were, as they have alleged, exposed to the misrepresentations each time they purchased the Product. *See id.* These allegations comply with the pleading requirements set forth in the cases cited in this Court's prior order. *See* Dkt. No. 29 at *5-7.

Plaintiffs have also specified where they saw the misrepresentations and which misrepresentations they relied upon. Dkt. No. 31 at ¶¶ 81, 84, 89, 92, 97, 100. The case law cited by the Court in its prior Order emphasized that pointing to the websites, such as Amazon (like Plaintiff Corbett, Dkt. No. 21 at ¶ 97) or Sambucol's website (like Plaintiff Dobbs) satisfied the Rule 9(b) standard. *See* Dkt. No. 29 at 13 (citing *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1220 (C.D. Cal. 2012) and *Goldsmith v. Allergan, Inc.*, 2011 WL 2909313, (C.D. Cal. 2011)). Plaintiffs have also, contrary to PharmaCare's reiteration of arguments previously rejected by the Court, specifically alleged why the disputed claims are untrue or misleading. *See, e.g.*, Dkt. No. 31 at ¶¶

22-37, 70-76. Accordingly, Plaintiffs have satisfied the Rule 9(b) standard and PharmaCare's second bite at the apple regarding this argument should be denied.

**E. Plaintiffs Have Properly Stated a Claim for Breach of Implied Warranty.**

PharmaCare limits its implied warranty argument to Plaintiffs' claim for breach of implied warranty under California law and argues only that Plaintiffs have not sufficiently alleged an exception to the privity requirement. While privity is generally required for implied warranty claims, there are several exceptions to this rule. In *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695-96 (1954)), the Ninth Circuit identified specific exceptions to the California privity rule, including "an exception to the requirement of privity . . . in cases involving foodstuffs, where it is held that an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract." *See also Warnshuis v. Bausch Health U.S., LLC.*, 2020 WL 7239588, at *4 (E.D. Cal. Dec. 9, 2020) (concluding that deceptive labeling of nasal spray fell within exception to privity requirement for foodstuffs and "medicines"); *Mexicali Rose v. Superior Ct.*, 1 Cal. 4th 617, 621, 822 P.2d 1292, 1295 (1992) (holding that in implied warranty cases, "manufacturer that sold food items could no longer hide behind the shield of privity to absolve itself of liability"); *Gottsdanker v. Cutter Lab'ys*, 182 Cal. App. 2d 602, 6 Cal.Rptr. 320 (Ct. App. 1960) (holding that privity not required for implied warranty claim involving polio vaccine). The Products

at issue in this case—consumable "nutritional supplements"—fall within the same category of products as both food and drugs and, therefore, no privity requirement exists.

Contrary to PharmaCare's argument, courts have held that this exception applies even in the absence of physical injury. *See, e.g., Bland v. Sequel Nat. Ltd.*, 2019 WL 4674337, at *3 (N.D. Cal. Aug. 2, 2019) ("Several courts have found, however, that the foodstuffs exception applies to purely economic harms."); *Benavides v. Kellogg Co.*, 2011 WL 13269720, at *7 (C.D. Cal. Mar. 21, 2011) (denying motion to dismiss based on lack of privity because courts have not "explicitly stated that the privity exception rests solely on the presence of physical rather than economic injury"); *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg.*, 78 Cal. App. 4th 847, 871, 93 Cal. Rptr. 2d 364, 380 (Cal Ct. App. 2000) (holding that "[i]n the peculiar context of foodstuffs, the theory of breach of an implied warranty . . . allows recovery of damages, without regard to privity of contract, for personal injuries *as well as economic loss*." (emphasis added)).

In addition, California federal courts have relaxed the privity requirement when plaintiffs are the intended beneficiaries of a manufacturer's products and they have relied upon the manufacturer's written labels or advertisements. *See Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 923-924 (E.D. Cal. 2020) (denying motion to dismiss based on lack of privity in action based on deceptive labeling of dog food products); *Ashton v. J.M. Smucker Co.*, 2020 WL 8575140, at *12 (C.D. Cal. Dec. 16,

2020) ("As the consumers who purchased the products, Plaintiffs need not show vertical privity with Defendants, as they are the intended beneficiaries of the warranties.").

Lastly, with respect to the privity exception for third party beneficiaries, Plaintiffs have specifically alleged: "To the extent that Privity is required, Defendant entered into contracts with the authorized retailers from whom Plaintiffs and the Class Members purchased the Products, and Plaintiffs and the Class Members were the intended third-party beneficiaries of those contracts, an exception to the privity requirement." Dkt No. 31 at ¶ 198. To the extent that further details regarding those contracts are required, Plaintiffs should be allowed to conduct discovery to obtain those details.

**F. Plaintiffs' Express Warranty Claims Should Not Be Dismissed**

Plaintiffs have properly alleged a breach of express warranty, as PharmaCare implicitly acknowledged by failing to challenge the claim in its initial motion to dismiss. In order to allege breach of express warranty under California law (which is the only law PharmaCare cites), a buyer must allege that the seller: "(1) made an affirmation of fact or a promise, or otherwise described the goods; (2) the statement formed part of the basis of the bargain; (3) the express warranty was breached; (4) the plaintiff was harmed; and (5) the breach of warranty was a substantial factor causing the plaintiff's harm." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010).

Here, Plaintiffs' FAC (like its original complaint) alleges that PharmaCare "breached the express warranties by selling Products that are illegally labeled as dietary supplements." Dkt. No. 31 at ¶ 182. More specifically, the FAC alleges that PharmaCare "explicitly identifies [every Elderberry Product] as a 'Dietary Supplement' on the front of the packaging . . . ." Dkt. No. 31 at ¶ 24. This promise on the Elderberry Products' packaging constitutes an express warranty that the Products are a legal dietary supplement. *See, e.g., Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 899-90 (N.D. Cal. 2012) (holding that "Pure, Natural & Organic" label on cosmetic products was express warranty); *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (concluding "All Natural" label on potatoes was express warranty). PharmaCare breached that express warranty because the Elderberry Products are in fact not legal dietary supplements since the "Elderberry Extract" used in the Products does not meet the definition of a dietary ingredient pursuant to the FDCA, 21 U.S.C. § 321(ff). Dkt. No. 31 at ¶¶ 22-24, 182.

Plaintiffs further expressly allege that PharmaCare's warranty was part of the benefit of the bargain when they purchased PharmaCare's Elderberry Products by alleging that they believed the Products were legally sold supplements and that had they "known that the Elderberry Products were not legally sold supplements," they "would not have purchased the Elderberry Products." Dkt. No. 31 at ¶¶ 82, 85, 90, 93, 98, 100, 183. This Court has already held that Plaintiffs have sufficiently alleged harm because

the complaint "alleges the three named Plaintiffs suffered an economic injury in the amount of money spent on the Products due to the sale of illegally sold . . . Products." Dkt. No. 29 at 5; *see also* Dkt. 31 at ¶ 184.

PharmaCare does not address these allegations or why they are insufficient to state a claim for express warranty under California law. Nor does it make any argument at all that Plaintiffs have failed to properly allege an express warranty claim under Massachusetts or Missouri law.

**G. Plaintiff Provided Proper Notice under the CLRA and M.G.L. 93A.**

Contrary to PharmaCare's argument made for the first long after this case was filed, Plaintiffs provided adequate pre-suit notice under the CLRA, as Plaintiffs' Notice Letter shows (attached as Exhibit A). Courts have held that where pre-suit notice is sent to a defendant's headquarters outside of California, the pre-suit notice "substantially complies with the purposes of the notice requirement" and rejected the argument that plaintiffs' CLRA claim should be dismissed. *Jones v. Porsche Cars N. Am., Inc.*, 2015 WL 11995257, at *4 (C.D. Cal. Oct. 15, 2015). Since Plaintiffs provided pre-suit notice to PharmaCare by sending the pre-suit notice letter to PharmaCare's registered agent in Delaware, which had the legal obligation to forward the notice to the appropriate official at PharmaCare, Plaintiffs substantially complied with the purposes of the notice requirement. The letter itself expressly stated that PharmaCare violated the CLRA and included a brief summary of the facts sufficient to meet the purpose of the notice requirement "to provide and facilitate pre-complaint settlements of consumer

actions wherever possible and to establish a limited period during which such settlement may be accomplished." *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (1975).

However, if the Court believes that the pre-suit notice was inadequate, Plaintiffs should be allowed an opportunity to provide proper notice and subsequently amend the complaint because "[n]othing in the legislative history indicates that the 30–day notice period was intended to bar consumer actions or was not curable." *Trabakoolas v. Watts Water Techs., Inc.*, 2012 WL 2792441, at *8 (N.D. Cal. July 9, 2012); *see also Oxina v. Lands' End, Inc.*, 2015 WL 4272058, at *4 (S.D. Cal. June 19, 2015).

Plaintiffs also provided proper notice under M.G.L. 93A. Although PharmaCare asserts that "[s]ending a demand letter is an 'absolute prerequisite to an action asserted under M.G.L. 93A, § 9,' and failing to satisfy the prerequisite entitles a defendant to judgment as a matter of law," Dkt. No. 35-1 at 33, citing *Ball v. Wal-Mart, Inc.*, 102F. Supp. 2d 44, 54 (D. Mass 2000), in *Ball*, the plaintiff did not send any pre-suit notice at all. No basis exists for dismissing Plaintiffs' M.G.L. 93A claim given that Plaintiffs did provide pre-suit notification.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint be DENIED.

Dated: September 10, 2021

Respectfully Submitted,

By: */s/ Alex Straus*

Alex Straus (State Bar. No. 321366)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Suite PH
Beverly Hills, CA 90212
Tel: 865-247-0080
astraus@milberg.com

Rachel Soffin
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel: 865-247-0080
rsoffin@milberg.com

Martha A. Geer
Erin Ruben
Sarah Spangenburg
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035
mgeer@milberg.com
eruben@milberg.com
sspangenburg@milberg.com

Nick Suciu III
BARBAT, MANSOUR SUCIU & TOMINA PLLC
6905 Telegraph Rd., Suite 115

Bloomfield Hills, MI 48301
Tel: 313-303-3472
nicksuciu@bmslawyers.com

***Counsel for Plaintiffs and the Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2021, I caused the foregoing to be filed via the Court's electronic filing system which will notify all counsel of record of the same.

*/s/ Alex Straus*
Alex Straus

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT
3:21-CV-00137-GPC-AGS