UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MONTIQUENO CORBETT, DAMARIS LUCIANO, and ROB DOBBS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PHARMACARE U.S., INC.,

Defendant.

Case No.: 21cv137-GPC(AGS)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**[Dkt. No. 35.]**

Before the Court is Defendant's motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 9(b), 12(b)(1) and 12(b)(6). (Dkt. No. 35.) Plaintiffs filed an opposition to which Defendant replied. (Dkt. Nos. 39, 41.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

## I.    FACTUAL BACKGROUND

On January 25, 2021, Plaintiffs Montiqueno Corbett ("Corbett"), Damaris Luciano ("Luciano") and Rob Dobbs ("Dobbs") (collectively "Plaintiffs") filed a putative class action complaint against Defendant PharmaCare U.S., Inc. ("Defendant" or

"PharmaCare") for violations of consumer fraud statutes for its sale of Sambucol, a dietary supplement that contains a proprietary extract of black elderberry. (Dkt. No. 1, Compl. ¶ 1, 22.)  Pursuant to the Court's order granting in part and denying in part Defendant's motion to dismiss the complaint, (Dkt. No. 29), Plaintiffs filed a first amended putative class action complaint ("FAC") on July 7, 2021.  (Dkt. No. 31, FAC.) The operative putative first amended action complaint alleges seven causes of action based on the alleged misleading labeling, advertising and sale of twelve dietary supplement products[1] ("Products") under the name Sambucol for violations of 1) California's Unfair Competition Law ("UCL") pursuant to California Business & Professions Code section 17200 *et seq.* on behalf of a national class and the California subclass; 2) California's False Advertising Law ("FAL") under California Business & Profession Code section 17500 *et seq.* on behalf of the California subclass; 3) California's Consumer Legal Remedies Act ("CLRA") under California Civil Code section 1750 *et seq.* on behalf of the California subclass; 4) violations of Massachusetts General Laws Chapter 93A, section 2, Mass. Gen. Laws. Ch. 93A, § 2 ("M.G.L. ch. 93A"), on behalf of the Massachusetts subclass; 5) Missouri Merchandising Practices Act ("MMPA") pursuant to Mo. Ann. Stat. section 407.010 *et seq.* on behalf of the Missouri subclass; 6) breach of express warranties on behalf of a national class and the subclasses; and 7) breach of the implied warranty of merchantability on behalf of a national class and the subclasses.  (Dkt. No. 31, FAC.)

Elderberry is derived from a flowering plant called Sambucus which has become a popular dietary supplement, and due to the popularity of "natural remedies", has recently

---

[1] The 12 Elderberry Products at issue are 1) Sambucol Black Elderberry Original Syrup, 2) Sambucol Black Elderberry Advanced Immune Syrup, 3) Sambucol Black Elderberry Sugar Free Syrup, 4) Sambucol Black Elderberry Syrup for Kids, 5) Sambucol Black Elderberry Gummies, 6) Sambucol Black Elderberry Gummies for Kids, 7) Sambucol Black Elderberry Advanced Immune Capsules, 8) Sambucol Black Elderberry Effervescent Tablets, 9) Sambucol Black Elderberry Chewable Tablets, 10) Sambucol Black Elderberry Pastilles (Throat Lozenges), 11) Sambucol Black Elderberry Daily Immune Drink Powder, and 12) Sambucol Black Elderberry Infant Drops.  (Dkt. No. 31, FAC ¶ 1.)

generated over $100 million in sales in the United States.  (*Id.* ¶¶ 2, 3.)  In March 2020, sales of the elderberry supplements increased by 415% over prior years as consumers sought to buy products that would offer "immune support" from the coronavirus.  (*Id.* ¶ 4.)  Defendant's Products contain a proprietary extract of black elderberry labeled as "Elderberry Extract."  (*Id.* ¶ 22.)

Plaintiffs allege two theories of consumer fraud: 1) an illegal products theory; and 2) false and misleading labels, packaging and advertising theory as well as omissions claims.  On the first theory, Plaintiffs claim that Defendant's Products are illegal to sell and are mislabeled as dietary supplements under the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 321(ff), and the Dietary Supplement Health and Education Act, ("DSHEA") which passed in 1994 and established a new framework to govern the "composition, safety, label, manufacturing and marketing of dietary supplements" as well as California's Sherman Law, California Health & Safety Code section 110095, which adopted the federal labeling regulation.  (*Id.* ¶¶ 23-27, 36.)

A dietary supplement is a "product (other than tobacco) intended to supplement the diet" and contain one or more of the following; 1) vitamins, 2) minerals, 3) herbs or other botanicals, 4) amino acid, 5) a supplement meant to increase total dietary intake, or 6) a concentrate, metabolite, constituent, extract or combination of any of the listed ingredients.  (*Id.* ¶ 26 (citing 21 U.S.C. § 321(ff)(1).)  Under the DSHEA, a "new" dietary ingredient (those not used in the United States before 1994), may be used in dietary supplements but must first be submitted to the FDA prior to sale unless the ingredient has been "present in the food supply as an article used for food without being chemically altered."  (*Id.* ¶¶ 28, 30 (quoting 21 U.S.C. § 350b(a)(1).)  A manufacturer or distributor must provide the FDA with information that demonstrates "history of use or other evidence of safety establishing that the dietary ingredient when used under the conditions recommended or suggested in the labeling of the dietary ingredient will reasonably be expected to be safe."  (*Id.* ¶ 31 quoting 21 U.S.C. § 350b(a)(2).)  After receiving information about the new dietary ingredient ("NDI"), the FDA may then

determine whether the manufacturer or distributor has provided an adequate basis to conclude that the NDI is reasonably expected to be safe.  (*Id.* ¶ 32.)  Dietary supplements that contain undisclosed NDIs are "adulterated" for purposes of the FDCA.  (*Id.* ¶ 34.)  Because the elderberry extract was not marketed as a dietary ingredient in the U.S. before 1994, and is an NDI, the FAC maintains that Defendant did not notify the FDA with the required NDI notification for its elderberry extract.  (*Id*. ¶¶ 29, 33.)  As such, Plaintiffs allege that Defendant's Products are illegal to sell because the elderberry extract is adulterated and misbranded under the FDCA and California's Sherman.  (*Id.* ¶ 36.)

On their illegal products theory, Plaintiffs allege three additional violations of the FDCA.  First, they contend that Defendant, by marketing the Products as "scientifically tested", "virologist developed", "developed by a world renowned virologist", as well as advertising that the Products "support[] immunity" or claim "immunity support", is making implied disease claims under 21 C.F.R. § 101.93(g)(2) and misbranded under 21 U.S.C. § 343(r)(6).  (*Id.* ¶¶ 38-42, 44, 50 (citing 21 U.S.C. § 343(r)(6).)  Under the FDCA, these phrases improperly promise that the Products have the ability to mitigate, treat, cure, or prevent diseases.  (*Id.* ¶ 38.)  Second, Plaintiffs allege the Products are misbranded under 21 U.S.C. § 352(f)(1) because the labeling fails to include adequate directions for use and violate 21 U.S.C. § 331(a) of the FDCA.  (*Id.* ¶¶ 57-60.)  Third, Plaintiffs claim that the Products are misbranded by stating the Products have "high antioxidant levels" and fail to comply with 21 C.F.R. § 101.54(g).  (*Id.* ¶¶ 61-69.)

Plaintiffs' second theory alleges that the claim that the Products have been "scientifically tested" is misleading and deceptive because no published studies that test the Products exist and those that do exist do not contain the same elderberry extract formulation used in published studies. (*Id*. ¶¶ 70-73.)  Also, "scientifically tested" improperly suggests that the products are effective in keeping consumers safe from diseases which is false.  (*Id.* ¶ 73.)

Plaintiff Corbet is a resident and citizen of San Diego, California, Plaintiff Luciano is a resident and citizen of Holyoke, Massachusetts, and Plaintiff Dobbs is a resident and

citizen of Florissant, Missouri.  (*Id.* ¶¶ 14-16.)  They all purchased certain of the Products at issue after being exposed to, saw and relied on Defendant's materially misleading representations on the either the Products' packaging and labeling, on advertisements on T.V. or on websites.  (*Id.* ¶¶ 80-102.)  When they purchased the Products, they believed they were legally sold supplements and they all claim they experienced no improvement in their health after using the Products.  (*Id.* ¶¶ 82, 83, 90, 91, 98, 99.)

Plaintiffs seek to certify a national class defined as: "During the fullest period allowed by law, all persons in the United States who purchased the Products (the 'National Class') for personal use and not for resale."  (*Id.* ¶ 103.)  They also seek to certify a California, Massachusetts and Missouri subclass.  (*Id.*)

## II. JUDICIAL NOTICE AND LEGAL STANDARDS

### A.    Request for Judicial Notice

Defendant requests judicial notice of (1) a copy of one side of a package of Sambucol's 4 oz. Black Elderberry Syrup taken from the Sambucolusa.com website on August 2, 2012; (2) the FDA's Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed. Reg. 1000 (Jan. 6, 2000); (3) a copy of a webpage from Sambucolusa.com website on August 2, 2012; and (4) Plaintiffs' December 30, 2020 demand letter from Whitfield Bryson LLP.  (Dkt. No. 35-2, D's RJN.)  Plaintiffs did not file an opposition.

Under Federal Rule of Evidence 201, courts can take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or can be readily determined by reference to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201.  "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

First, courts addressing motions to dismiss product-labeling claims take judicial notice of images of the product packaging if they are referenced or the images are in the complaint.  *See Lam v. General Mills, Inc.,* 859 F. Supp. 2d 1097, 1100 (N.D. Cal. 2012) ("The Court takes judicial notice of the packaging of Fruit Roll–Ups and Fruit by the Foot, examples of which were filed with the Court by General Mills."); *Rooney v. Cumberland Packing Corp*., No. 12–CV–0033–H (DHB), 2012 WL 1512106, at *2 (S.D. Cal. Apr. 16, 2012) (taking notice of reproductions of the panels of two boxes of Sugar in the Raw because Plaintiff based her claim on them and included the same reproductions in her complaint).  Here, Plaintiffs do not oppose, and the FAC references the label and website, as well as includes the images of the label in the FAC.  Accordingly, the Court GRANTS Defendant's request for judicial notice of the copy of Defendant's product packaging and copy of a webpage from Sambucolusa.com website.

Second, the contents of the Federal Register are noticeable as a matter of law.  *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed . . . ."); *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 702 n. 5 (9th Cir. 2004) (granting request for judicial notice of a proposed rulemaking published in the Federal Register).  Therefore, the Court GRANTS Defendant's request for judicial notice of the FDA publication from the Federal Register.

Finally, Defendant requests judicial notice of the pre-notice demand letter sent by Plaintiffs' counsel on December 30, 2020.  Plaintiffs do not oppose notice of the letter and in fact rely on it in their opposition and attaches it as an exhibit.  Because the letter is incorporated by reference in the FAC in paragraphs 147, 161, the Court GRANTS Defendant's request for judicial notice of the demand letter.  *See Asghari v. Volkswagen Group of America, Inc*., 42 F. Supp. 3d 1306, 1318 n 33 (C.D. Cal. 2013) (citing *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C–12–06355 JCS, 2013 WL 1632697, *2 n. 2 (N.D. Cal. Apr. 16, 2013) (considering a CLRA  notice letter incorporated into the complaint by reference); and *Tellabs, Inc. v. Makor Issues & Rights,* Ltd., 551 U.S. 308,

322 (2007) (holding that courts may examine "documents incorporated into the complaint by reference")).

**B.    Legal Standard on Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  The Court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack.  *Id.*  Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction.  *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Defendant does not specify what arguments are raised under Rule 12(b)(1)[2] but appears to bring a Rule 12(b)(1) challenge based on preemption.  *See McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) ("Preemption is a matter of

---

[2] Defendant's motion is also devoid of the legal standards to apply for its Rule 12 motion.  (*See* Dkt. No. 35-1.)

subject matter jurisdiction . . . .").  To the extent Defendant raises a Rule 12(b)(1) challenge to statutory standing, the Court construes it as motion to dismiss under Rule 12(b)(6).  *See Vaughn v. Bay Env't Mgmt., Inc*., 567 F.3d 1021, 1024 (9th Cir. 2009) ("a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction"); *Smith v. Sprint Sols., Inc.,* No. C08-5119 TEH, 2010 WL 1263189, *4 (N.D. Cal. Mar. 30, 2010) (construing a Rule 12(b)(1) motion to dismiss for lack of standing under the UCL as a Rule 12(b)(6) motion).  Furthermore, Defendant does not expressly state but appears to make a facial challenge to subject matter jurisdiction relying on the allegations in the complaint.  Therefore, the Court will determine whether the allegations in the FAC, taken as true and drawing all inferences in Plaintiffs' favor, sufficiently support the Court's subject matter jurisdiction

## C.   Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "In sum, for a

complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  *al Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

**D.     Legal Standard on Federal Rule of Civil Procedure 9**

Where a claim alleges fraud or is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*  A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).

Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct).  In addition, the complaint must state "what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*), *superseded by statute on other grounds, Private Sec. Litig. Reform Act of 1995*, 15 U.S.C. § 78u–4(b)(1), *as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

/ / /

/ / /

/ / /

/ / /

# III. LEGAL DISCUSSION

**A.   Statutory Standing**

   **1. California UCL, FAL and CLRA**

   "In 2004 . . . the voters of California passed Proposition 64, which restricts standing for individuals alleging UCL and FAL claims to persons who have suffered injury in fact and have lost money or property as a result of the unfair competition." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (quotations omitted).  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation."  *Kwikset Corp. v. Superior Ct*., 51 Cal. 4th 310, 326 (2011) (citations omitted).  Therefore, on a fraud based claim involving false advertising and misrepresentation to consumers, a plaintiff must show that he or she "actual[ly] reli[ed]" on the "allegedly deceptive or misleading statement" and that it "was an immediate cause" of her injury.  *Id*. at 326-27.  Therefore, actual reliance is a required element for standing to bring suit under the UCL, FAL as well as the CLRA. *Id.; Cohen v. DIRECTV, Inc*., 178 Cal. App. 4th 966, 973 (2009) ("plaintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions."); *Hinojos*, 718 F.3d at 1108 ("[A]ny plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, a fortiori, have suffered 'any damage' for purposes of establishing CLRA standing.").  "A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging . . . that he or she would not have bought the product but for the misrepresentation." *Kwikset*, 51 Cal. 4th at 330.

   In the instant case, Defendant argues that all state law claims based on Plaintiffs' illegal products theory fail for lack of statutory standing because they do not allege facts establishing that the misrepresentations they relied on were false or misleading.  (Dkt.

No. 35-1 at 14.[3])  According to Defendant, statutory standing requirements are not met by the claim that "Pharmacare's alleged violations of the FDCA made it unlawful for them to legally sell the Products, [and thus] Pharmacare's representations induced them to purchase 'illegal' products.'" (*Id.*)  Plaintiffs respond they have established statutory standing by alleging material misrepresentations on the Products' labels, reliance on these misrepresentations and that they would not have purchased the Products absent those misrepresentations.  (Dkt. No. 39 at 11.)

On a motion to dismiss, "actual reliance . . . is inferred from the misrepresentation of a material fact" because "whether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage." *Moore v. Mars Petcare U.S., Inc*. 966 F.3d 1007, 1021 (9th Cir. 2020) (quoting *Friedman v. AARP, Inc*., 855 F.3d 1047, 1055 (9th Cir. 2017) (quoting *Chapman v. Skype Inc*., 220 Cal. App. 4th 217 (2013)).  The California Supreme Court has emphasized that a "misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (internal citation and quotation marks omitted).  In *Moore*, the Ninth Circuit explained that the "misrepresentation of prescription pet food as medicine or FDA-controlled can be a material fact for a reasonable consumer—particularly for a pet owner who is dealing with possibly a sick or unhealthy pet." *Moore*, 966 F.3d at 1021.

In the instant case, Defendant misunderstands or misinterprets Plaintiffs' allegations concerning the illegal products theory by arguing that under Plaintiffs' illegal products theory, any consumer would have standing to bring a class action lawsuit for any purported regulatory violations regardless of any injury.  (Dkt. No. 35-1 at 14 n.2.)

---

[3] Page numbers are based on the CM/ECF pagination.

However, in this case, all three Plaintiffs allege that they viewed the alleged misrepresentations on the Products' label, on Defendant's website, third party websites, on T.V. advertisements and in stores, relied on these representations when purchasing the Products and suffered economic injury because the representations were false based on violations of the FDA.  (Dkt. No. 31, FAC ¶¶ 80-102.)  They do not merely allege a regulatory violation but base their claims on misrepresentations arising from regulatory violations.  On a motion to dismiss, these allegations are sufficient to establish standing under the UCL, FAL and CLRA.  *See Moore*, 966 F.3d at 1020 (allegation sufficient to survive motion to dismiss where the plaintiffs did not provide much detail in their individual allegations, but they collectively allege that "[a]s a result of the false and fraudulent prescription requirement, each Plaintiff paid more for Prescription Pet Food than each Plaintiff would have paid in the absence of the requirement, or would never have purchased Prescription Pet Food."); *see Backus v. General Mills, Inc*., 122 F. Supp. 3d 909, 921 (N.D. Cal. 2015) ("The purchase of such an allegedly unsafe and illegal product is sufficient to confer standing for an economic injury under Article III and the UCL.").

Defendant relies on district court cases that are distinguishable from the present case and selectively quotes language in those cases to support its argument that district courts have repeatedly rejected Plaintiff's "Illegal Products" theory.  For example, in *Brazil,* the district court held that because the plaintiff had not viewed the defendant's misleading health claims on its website, he did not have standing under the UCL, FAL and CLRA.  *Brazil v. Dole Food Co., Inc.,* Case No.: 12–CV–01831–LHK, 2013 WL 5312418 at *8-9 (N.D. Cal. Sept. 23, 2013).  In this case, Plaintiffs allege they saw and relied on the Defendant's misleading representations.  Notably, in *Brazil,* the defendants did not challenge the plaintiff's numerous other labeling claims that violated provisions of the FDCA that he viewed, such as nutrient content claims, fresh claims, all natural claims, sugar free claims and antioxidant claims.  *Id.* at *2-4.  In *Kane*, another case cited by Defendant, the district court held that the plaintiffs did not have standing because they

did not sufficiently plead reliance because they had never viewed the defendant's website that contained the "no sugar added" claim. *Kane v. Chobani, Inc.*, Case No.: 12–CV–02425–LHK, 2013 WL 5289253, at *8 (N.D. Cal. Sept. 19, 2013).  Further, in *Pratt v. Whole Foods Market Cal., Inc*., Case No. 5:12–CV–05652–EJD, 2014 WL 1324288, at *8 (N.D. Cal. Mar. 31, 2014), the plaintiff argued that he did not have to show reliance because his claims were not based on misrepresentations but on the illegality of the products based on violations of the Sherman Law.  The *Pratt* court held that the plaintiff failed to demonstrate standing.  *Id.*  In contrast to these cases cited by Defendant, Plaintiffs all allege they viewed Defendant's representations on its website, on third-party websites, on T.V. advertisements and in stores.  Accordingly, Plaintiffs have sufficiently alleged standing under the UCL, FAL and CLRA.

### 2. Missouri Merchandise Law

"To prevail on a claim under the MMPA, a plaintiff must plead and prove he or she (1) purchased merchandise (which includes services) from defendants; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the Merchandising Practices Act." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. Ct. App. 2016); *see* Mo. Rev. Stat. § 407.025.1.  "[T]he plain language of the MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice." *Owen v. Gen. Motors Corp*., 533 F.3d 913, 922 (8th Cir. 2008) (citing Mo. Rev. Stat. § 407.025.1).  However, reliance is not an element under the MMPA.  *Hess v. Chase Manhattan Bank, USA, N.A*., 220 S.W.3d 758, 774 (Mo. 2007); *Plubell v. Merck & Co.*, 289 S.W.3d 707, 713 (Mo. Ct. App. 2009) (The MMPA "eliminat[ed] the need to prove an intent to defraud or reliance.").

### 3. Massachusetts UCL

Next, Massachusetts General Law, Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a).  To allege a violation of the

Massachusetts Consumer Protection Act . . . a plaintiff must show that the defendant engaged in trade or business and committed an unfair or deceptive practice, causing economic injury to the plaintiff.  *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 552 F.3d 47, 69 (1st Cir. 2009) (citing Mass. Gen. Laws c. 93A § 2).  "[C]ausation is a required element of a successful [Chapter] 93A claim."  *Aspinall v. Philip Morris Cos., Inc.*, 813 N.E. 2d 476, 491 (Mass. 2004).  To establish causation, a plaintiff must "prove that the defendant's unfair or deceptive act caused an adverse consequence or loss."  *Rhodes v. A.I.G. Domestic Claims, Inc.,* 961 N.E.2d 1067, 1076 (Mass. 2012).

Because the Court concludes that Plaintiffs have sufficiently alleged reliance and causation under the California consumer fraud statutes, the Court also concludes that the FAC sufficiently alleges causation under the Massachusetts and Missouri's consumer fraud provisions and standing has been sufficiently alleged.

### 4. Express and Implied Warranties

As to the breach of express and implied warranty claims, Defendant summarily argues, in a string citation, that such claims under California, Massachusetts and Missouri also require causation and reliance.  (Dkt. No. 35-1 at 14.)  First of all, for California, Defendant relies on a pre-UCC[4] law express warranty case, *Williams v. Beechnut*, 185 Cal. App. 3d 135, 142 (1986), to argue that reliance is a required element but courts have held that reliance is no longer required under the California Commercial Code.  *See Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (noting pre-UCC law required purchasers to prove reliance but "breach of express warranty arises in the context of contract formation in which reliance plays no role" relying on Cal. Com. Code § 2313(1)(a)–(b)); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984-85 & n. 198 (N.D. Cal. 2015) (agreeing with the well-reasoned analysis of the California Court of Appeal in *Weinstat* that, under California Commercial Code § 2313, reliance is not a required

---

[4] Uniform Commercial Code

element of a plaintiff's prima facie case for breach of express warranty).  Defendant's argument that reliance is required under breach of express warranty under California law is not supported.  However, to the extent that reliance and causation may be required under California, Missouri or Massachusetts law for the other breach of express or implied warranty claims, Plaintiffs have sufficiently alleged reliance and causation based on the Court's analysis under the UCL, FAL, and CLRA.

In conclusion, the Court holds that Plaintiffs have alleged standing under California, Massachusetts and Missouri's consumer fraud statutes as well as the breach of express and breach of implied warranty claims; thus, the Court DENIES Defendant's motion to dismiss all state law claims for lack of statutory standing.

**B.    NLEA Preemption**

"Federal preemption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'"  *Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta*, 458 U.S. 141, 152-53 (1982) (quoting *Jones v. Rath Packing Co*., 430 U.S. 519, 525 (1977)).  "Express preemption exists when a statute explicitly addresses preemption."  *Kroessler v. CVS Health Corp*., 977 F.3d 803, 808 (9th Cir. 2020) (citation omitted).  A presumption against preemption exists because the "historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress."  *United States v. Locke*, 529 U.S. 89, 107 (2000) (internal quotation marks omitted).  "This presumption against preemption is heightened in the areas of state regulation concerning issues of health and safety."  *Chacanaca v. Quaker Oats Co*., 14, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co*., 514 U.S. 645, 655 (1995)); *see also Hillsborough County v. Automated Med. Labs., Inc*., 471 U.S. 707, 718 (1985) ("Given the presumption that state and local regulation related to matters of health and safety can normally coexist with federal regulations, we will seldom infer, solely from the comprehensiveness of federal regulations, an intent to pre-empt in its entirety a field

related to health and safety.").  In the area of proper marketing and labeling of food products, the presumption against preemption is strong.  *Gustavson v. Wrigley Sales Co*., 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2017) (citing *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders.").

Under implied preemption, there are two types: field preemption and conflict preemption.  *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).  Under field preemption, the scheme of federal regulation is "'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'"  *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947).  Conflict preemption is where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress", *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  *See English v. General Elec. Co*., 496 U.S. 72, 79 (1990).

The Food, Drug and Cosmetic Act ("FCDA"), 21 U.S.C. § 301 *et seq*., as amended by the Nutrition Labeling and Education Act ("NLEA"), 21 U.S.C. § 343 *et seq*. govern the labeling of food, including dietary supplements.  In 1994, Congress further amended the FDCA with the Dietary Supplement Health and Education Act ("DSHEA"), Pub. L. No. 103-417, 108 Stat. 4325.3.  "The NLEA and DSHEA together established a new category of food products—specifically, dietary supplements—that have unique safety, labeling, manufacturing, and other related standards." *Kroessler*, 977 F.3d at 808.

Because all proceedings "for the enforcement, or to restrain violations, of" the FDCA must "be by and in the name of the United States", 21 U.S.C. § 337(a), private plaintiffs may not seek to enforce violations of the FDCA.  *Id.*  Private plaintiffs may, instead, "bring analogous state law claims as long as the FDCA does not preempt those claims." *Id.* (citing *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008)).

"Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." *Chacanaca v. Quaker Oats Co*., 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010).

"The FDA has limited authority under the Federal Food, Drug, and Cosmetic Act (FDCA) to regulate dietary supplements, which include vitamin, botanical, enzyme, and amino acid products." *Greenberg v. Target Corp*., 985 F.3d 650, 654 (9th Cir. 2021). "Unlike with drugs, the FDA does not pre-approve product labels for dietary supplements.  It, however, requires that the labels be truthful and not misleading, 21 U.S.C. § 343(r)(6)(B), and authorizes several categories of statements that can be made on the product if certain requirements are met." *Id.*

### 1.    Express Preemption

In order to establish a national uniform labeling standard and avoid a patchwork of different state standards, *In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1091 n. 12, the NLEA expressly preempts any state law that establishes "any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title."  21 U.S.C. § 343-1(a)(5).  The phrase "not identical to" means "that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the applicable [federal regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable [federal regulation]."  21 C.F.R. § 100.1(c)(4).  In other words, the NLEA "preempts state or local governments from imposing any requirement on nutrient content claims made by a food purveyor 'in the label or labeling of food that is not identical to the requirement of section 343(r).'"  *Chacanaca*, 752 F. Supp. 2d at 1118.

In this case, Defendant challenges Plaintiffs' implied disease claims arguing they are preempted by the FDCA because they are proper structure/function claims under §

343(r).[5]  Specifically, Defendant argues its use of the phrase "supports the immune system" is an acceptable structure/function claim.  (Dkt. No. 35-1 at 19.)  Plaintiffs oppose maintaining that their implied disease claim is not limited to solely the phrase "supports the immune system" but a number of phrases, considered collectively, that promise that the Products have the ability to mitigate, treat, cure, or prevent disease.  (Dkt. No. 39 at 20-23.)

For dietary supplements, the FDCA permits a manufacturer to make "structure/function" claims but not "disease claims."  *See* 21 U.S.C. § 343(r)(6).  "The FDCA's preemption provision covers structure/function claims because its requirements appear in section 343(r)(6), which falls under the preemption provision's umbrella."  *Geenberg*, 985 F.3d at 655.  A structure/function is a statement that, *inter alia, "*describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a nutrient or dietary ingredient."  21 U.S.C. § 343(r)(6)(A).  A disease claim "claims to diagnose, mitigate, treat, cure, or prevent disease," either explicitly or implicitly.  21 C.F.R. § 101.93(g).  "Implied disease claims do not mention the name of a specific disease, but refer to identifiable characteristics of a disease from which the disease itself may be inferred."  65 Fed. Reg. at 1012.  A disease claim requires FDA pre-approval.  21 C.F.R. § 101.93(f).  Relying on FDA regulations, the Ninth Circuit explained that district courts may consider extra-label materials when determining whether certain advertising is an implied disease claim.  *Kroessler,* 977 F.3d at 815 (citing 21 C.F.R. § 101.93(g)(2)) ("A supplement label's objective representations are not

---

[5] Defendant does not articulate which state law causes of action the FDCA preempts.  Implicitly, it appears that Defendant is arguing that all state law claims are preempted.  However, Defendant fails to address preemption as it relates to the Missouri and Massachusetts consumer fraud claims and the breach of express and implied warranty claims.  Accordingly, these state law claims have not been considered in the preemption analysis.

the only factors the FDA will consider when determining 'the context in which the claim is presented' for purposes of identifying implied disease claims."); *see also* 65 Fed. Reg. at 1006 ("[I]n appropriate circumstances, [the] FDA may find that a dietary supplement for which only structure/function claims are made in labeling may nevertheless [claim to treat disease] if there is other evidence of intended use to prevent or treat disease.").

Structure/function claims must meet three requirements:

1.The manufacturer must have substantiation that the statement is truthful and not misleading;
2. The statement must contain a prominent disclaimer that the FDA has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and
3. The statement itself may not "claim to diagnose, mitigate, treat, cure, or prevent" disease.

*Greenberg*, 985 F.3d at 654 (citing 21 U.S.C. § 343(r)(6)(B)–(C)).

In 2000, the FDA promulgated final Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body which established guidance and criteria for determining when a dietary supplement claim is an acceptable structure/function claim or a prohibited disease claim. 65 Fed. Reg. 1000 (Jan. 6, 2000); 21 C.F.R. § 101.93. The FDA warned that the rule is not "intended establish whether any particular structure/function claim is appropriate for any specific product," and that "an otherwise acceptable structure/function claim might nevertheless be false or misleading for other reasons." 65 Fed. Reg. 1000 at 1002. Disease claims include, "supports the body's antiviral capabilities" or "supports the body's ability to resist infection."[6] *Id.* at 1028. An appropriate structure/function claim

---

[6] The FDA explained, "[a]n intact immune system has several functions. In addition to their role in the defense against pathogens, certain components of the immune system, namely white blood cells, have other important functions. For example, white blood cells play an essential role in the phagocytosis and disposal of aging red blood cells or otherwise damaged cells. A statement of support for the immune system, by itself, conveys no specific reference to disease treatment or prevention. The claim that vitamin A is necessary to maintaining a healthy immune response does not imply that a specific disease

includes, "supports the immune system", because this phrase is "[a] more general reference to an effect on a body system that did not imply prevention or treatment of a disease state . . . " *Id.* The FDA explained that the distinction "is one of specificity." *Id.* at 1029. Therefore, if a structure/function claim meets the FDCA's requirements, then a state law claim seeking to impose additional requirements are preempted by the FDCA. *See Greenberg*, 985 F.3d at 657 (structure/function claim preempted because labeling complied with FDCA's requirements and the plaintiff essentially seeks to impose an additional requirement that dietary supplement labels can make structure/function claims only if consumers are likely to benefit from the product).

Here, Defendant argues that its labeling claims of "supports the immune system" "helps you . . . stay healthy" and "arms you with the best protection nature has to offer" are acceptable structure/function claim because they describe a "general well-being from consumption of a dietary ingredient." By themselves, the Court agrees with Defendant. However, Plaintiffs' allegations of the implied disease claim rely on a number of advertising statements on the Products' labels and extra-label statements on Defendant's website. *Cf. Kroessler*, 977 F.3d at 816 ("The current state of FDCA law, as clarified by the FDA's guidance and various courts' rulings, both cited above, allows courts examining implied disease claims to consider extra-label evidence.")

The FAC specifically alleges that when the claims on the packaging are "viewed in their totality, they are either explicitly or implicitly claiming to mitigate or prevent disease." (Dkt. No. 31, FAC ¶ 39.) By advertising the Products as "scientifically tested", "[v]irologist [d]eveloped", contain "the most extensively researched" extract "in the world" and "[d]eveloped by a world renowned Virologist," they necessarily imply the Products are preventing disease because a virologist is an expert that deals with viruses

---

or class of diseases will be prevented. In contrast, a claim that a product 'supports the body's antiviral capabilities' represents a claim of treatment or prevention of a specific class of diseases, those caused by viruses (e.g., colds, hepatitis, or HIV infection)." 65 Fed. Reg. 1000, 1029 (Jan. 6, 2000).

and the disease they cause.  (*Id.* ¶¶ 40-42.)  Moreover, the FAC alleges that the labels implicitly suggest that the Products will prevent a cold or flu by claiming that it "provides strong immune system support to help you and your family stay healthy throughout the year" and "arms you with some of the best protection nature has to offer", (*id.* ¶ 43), and the website promises that "elderberries can help empower your immune system by fighting free radicals that damage it", (*id.* ¶ 46), and the Products will help them "stay healthy through the toughest season", (*id.* ¶ 50).  Also, on its website, in response to the FAQ, "What are the traditional uses of black elderberry?", the response answers that black elderberry is "used in traditional remedies for colds, coughs, and upper respiratory infections."  (*Id.* ¶ 52.)  Additionally, the website states that Sambucol is a "pharmacist Recommended Brand" implying that the Products are drugs or meant to treat diseases. (*Id.* ¶ 54.)  Finally, the homepage of Defendant's website states, "Get that NOT WORRIED ABOUT A 5 HOUR FLIGHT IN THE MIDDLE SEAT kinda feeling", a reasonable consumer would understand this statement as protecting them from the COVID virus or other transmissible diseases.  (*Id.* ¶ 55.)  Specific reference to respiratory infections, colds, and implicitly referencing the COVID virus present an implied disease claim.  The Court concludes that Defendant's claims, collectively, imply that the Products can treat, cure, or prevent disease, and are thus not expressly preempted.

The case of *Hughes v. Ester C Co.*, 99 F. Supp. 3d 278, 284-87 (E.D. N.Y. 2015) is instructive.  In denying a defendant's motion for summary judgment, the district court rejected defendant's attempt to artificially narrow the plaintiff's claims to ones involving Ester-C's "Immune Support" statements.  The court found that Ester–C's "immune support" statements, in combination with the disease prevention/treatment statements, such as "Ester C provides your body with the immune and antioxidant support it needs to help keep you healthy and strong during times of seasonal change and the stresses of daily living", were health or disease claims that required FDA pre-approval and were not preempted by federal law.  *Id.* at 286-87.  Similarly in this case, Defendant artificially limits Plaintiffs' allegations to the "supports immunity" labels, where the FAC includes a

number of other claims made by Defendant that imply the Products can mitigate, treat, or prevent disease of a cold or even the COVID virus.

For the first time in its reply, Defendant presents the argument that Plaintiffs cannot avoid express preemption by implied disease claims that are based on representations that Plaintiffs never saw or relied on, (Dkt. No. 41 at 11-12).  Defendant does not offer any caselaw to support this newly raised argument in support of express preemption.  More significantly, the FAC contains allegations regarding the Plaintiffs' review and reliance on representations regarding the multiple health benefits associated with the Products.  (Dkt. No. 31, FAC ¶¶ 81, 89, 97.)

On a Rule 12(b)(1) motion, in accepting as true all facts in the FAC and drawing all reasonable inferences in favor of Plaintiffs, *al Kidd*, 580 F.3d at 956, the Court concludes that the state law claims are not expressly preempted by the FDCA.

### 2. Implied Preemption

Again, without much explanation or relevant legal support, Defendant also argues that the FDCA impliedly preempts[7] Plaintiffs' illegal products theory of liability because Plaintiffs are, in essence, bringing suit because Defendant's conduct purportedly violates the FDCA and seeks to enforce the FDCA.  (Dkt. No. 35-1 at 17-19.)  Plaintiffs argue that they merely seek to hold Defendant to standards provided in the FDCA through parallel state law.  (Dkt. No. 38 at 17-18.)

"The party contending that a claim is preempted bears the burden of establishing preemption."  *Dorsett v. Sandoz, Inc.*, 699 F. Supp. 2d 1142, 1155 (C.D. Cal. 2010).  Here, Defendant fails to assert which theory of implied preemption it relies on, field or conflict preemption.  To the extent it appears to rely on conflict preemption, Defendant fails to articulate how the provisions of the NLEA conflict with the state law claims alleged in the FAC.  *See English*, 496 U.S. at 79 (conflict preemption is where

---

[7]Again, Defendant does not articulate which state law claims are impliedly preemption.

"compliance with both federal and state regulations is a physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

In support, Defendant solely relies on *Buckman Co., v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001) and *Perez v. Nidek Co., Ltd.,* 711 F.3d 1109, 1119-20 (9th Cir. 2013)[8], where both cases held that "fraud on the FDA" claims were impliedly preempted by the FDCA as amended by the MDA, but they both involved implied preemption under the Medical Device Amendment ("MDA") which is distinct from the NLEA and inapposite. *See Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 798 n.6 (N.D. Cal. 2015) ("In contrast to the NLEA, the express preemption provision included in the Medical Device Amendments to the FDCA contains more expansive language."). Defendant has not cited any case where the court has held that state law claims concerning food-labeling were impliedly preempted by the NLEA.

In fact, "[d]istrict courts have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling claims and related claims under the Sherman Law are impliedly preempted under § 337(a) and *Buckman*." *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 995 (S.D. Cal. 2015) (citing *Vassigh v. Bai Brands, LLC*, Case No. 14–cv–05127–HSG, 2015 WL 4238886, at *4–5 (N.D. Cal. July 13, 2015) (collecting cases); *Hesano v. Iovate Health Sciences, Inc.,* No. 13cv1960–WQH–JMA, 2014 WL 197719, at *7 (S.D. Cal. Jan. 15, 2014) ("The FDCA . . . does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws."); *Trazo v. Nestle USA, Inc.*, Case No.: 5:12–CV–2272 PSG, 2013 WL 4083218, at *7 (N.D. Cal. Aug. 9, 2013) ("While state law tort actions cannot be used to improperly intrude on the FDA's exclusive jurisdiction, Plaintiffs here sue under state law—namely,

---

[8] Defendant also rely on *Borchenko v. L'Oreal* but the case is not persuasive because the case concerned a "drug" claim under the FDCA, not a dietary supplement claim, and the district court relied on *Buckman* and *Perez* to supports its ruling on preemption. 389 F. Supp. 3d 769, 773-74 (C.D. Cal. 2020).

the Sherman Law, UCL, FAL, and CLRA—and so their claims are not impliedly preempted.")).  Because Defendant relies on cases that are inapposite for its argument, and fails to articulate specifically how conflict preemption applies in this case, the Court DENIES Defendant's motion to dismiss the state law claims based on implied preemption as unsupported.

**C.     Plaintiffs' Theory of Deception**

Defendant summarily argues that Plaintiffs' theory of deception fails as a matter of law because it is solely predicated on simple regulatory violations.  (Dkt. No. 35-1 at 22-25.)  In response, Plaintiffs note that Defendant fails to analyze any element of the consumer protection claims, and as such, does not seek to dismiss any specific cause of action; nonetheless, they argue Defendant's argument is without merit because Plaintiffs allege that Defendant made unlawful claims on the Products' labeling, that Plaintiffs viewed and relied upon these misrepresentations and Defendant failed to disclose material information.  (Dkt. No. 39 at 24.)  In response to Plaintiffs' observation concerning Defendant's failure to dismiss a specific cause of action, Defendant, without providing any legal analysis, summarily replies that the Court must dismiss the causes of action for violations of the UCL, FAL, CLRA, M.G.L. ch. 93A and the MMPA.  (Dkt. No. 41 at 13.)

The Court agrees with Plaintiffs that Defendant, in its moving brief, fails to tether its deception argument to a specific cause of action.  It fails to specifically explain what element of each of the consumer fraud statute requires deception and why they fail under each cause of action.  On a motion to dismiss, it is the defendant's burden to demonstrate that plaintiff has failed to state a claim.  *See Avalanche Funding, LLC v. Five Dot Cattle Co.*, No. 2:16-cv-02555-TLN-KJN, 2017 WL 6040293, at *3 (E.D. Cal. Dec. 6, 2017) ("In the context of a motion to dismiss, the burden is on the defendant to prove that the plaintiff failed to state a claim."); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (on a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented."); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006)

("district court erroneously placed the burden on Plaintiffs to demonstrate that they stated a claim for relief" and "[b]ecause . . . Defendants failed to meet their burden of proof, . . .the district court should have dismissed Defendants' motion.").

Here, Defendant, in reply, simply lumps all consumer fraud causes of action, including California, Massachusetts and Missouri law, into its argument that Plaintiffs' theory of deception fails.[9]  Because Defendant provides summary arguments and analyses seeking dismissal of all causes of action without addressing how its argument apply to each cause of action, Defendant failed to meet its burden under Rule 12(b)(6), and the Court DENIES the motion to dismiss based on the "theory of deception."

**D.    Rule 9(b)**

Defendant next avers that the consumer protection claims grounded in fraud fails to sufficiently plead particularity as required under Rule 9(b) because Plaintiffs do not allege facts to establish the falsity of the statements or explain why they are misleading, and the "how, when, where, what and who" of the alleged misrepresentations. (Dkt. No. 35-1 at 25-27.)  Plaintiffs disagree arguing they have addressed the deficiencies the Court noted in its prior order.  (Dkt. No. 39 at 25-27.)

In its prior order, the Court granted dismissal of the fraud based state law claims because Plaintiffs did not comply with the specificity requirement under Rule 9(b) and granted Plaintiffs leave to amend.  (Dkt. No. 29 at 11-14.)  In that order, the Court concluded that Plaintiffs failed to sufficiently alleged the "what, when and where" of the alleged misrepresentations.  The Court directed that Plaintiffs must identify a time period "when" they saw the false advertisements, "where" they saw each of the alleged false misrepresentations and provide a full list of "what" misrepresentations they relied on.

---

[9] Moreover, in this section concerning theory of deception, Defendant confusingly throws in various arguments, some of which were already raised in the motion, such as failure to comply with Rule 9(b) and preemption, that do not relate to deception and fails to provide sufficient and proper analysis on a number of these arguments.  (Dkt. No. 35-1 at 22-24.)  The Court declines to decipher Defendant's hodgepodge of unrelated arguments.

(*Id.* at 13-14.)  The Court concludes that Plaintiffs have addressed the deficiencies noted in the Court's prior order.

The FAC alleges that Plaintiff Corbett purchased the Sambucol Black Elderberry Capsules, Sambucol Black Elderberry Syrup Original, and Sambucol Black Elderberry Gummies from November 2017 through January 2020 on Amazon and at CVS Pharmacy.  (Dkt. No. 31, FAC ¶ 80.)  Prior to purchasing these products, Corbett relied on Defendant's materially misleading representations on the Products' packaging and labeling, the Sambucol website, Amazon's website, and Google advertisements that the elderberry ingredient was developed by a virologist, supports immunity and the immune system, has been clinically and scientifically tested, has been used in clinical studies, has high antioxidant levels, helps you and your family stay healthy throughout the year, and arms you with the best protection nature has to offer.  (*Id.* at ¶ 81.)  He also believed they were legally sold supplements.  (*Id.* ¶ 82.)  Corbett's decision to purchase Defendant's Products was based on these materially misleading representations.  (*Id.* ¶ 84.)  If he had known that the Products were not legally sold supplements and knew about the materially misleading misrepresentations and omissions, he would not have purchased the Products.  (*Id.* ¶ 85.)

Plaintiff Luciano purchased Sambucol Black Elderberry Gummies at Walgreens in Holyoke, Massachusetts starting in late 2018 to early 2019 and continuing through February 2020.  (*Id.* ¶ 88.)  A couple of months prior to purchasing them, Luciano started seeing commercials on a major network, most likely NBC, which indicated that Sambucol would help prevent her from getting sick.  (*Id.* ¶ 89.)  Before and at the time she purchased the Product, she was exposed to, saw and relied on Defendant's materially misleading representations on the Products' packaging and labeling at Walgreens and on a website describing the Sambucol products which claims that the Products support immunity, support the immune system, have high antioxidant levels and have been clinically and scientifically tested.  (*Id.*)  When she purchased the Products, she believed they were legally sold supplements.  (*Id.* ¶ 90.)  Luciano's decision to purchase

Defendant's Products was caused by the materially misleading representations.  (*Id.* ¶ 92.)  She would not have purchased the Products had she known the truth about the materially misleading representations and omissions and that the Products were not legally sold supplements.  (*Id.* ¶ 93.)

Plaintiff Dobbs purchased Sambucol Black Elderberry Gummies from August 2019 to April 2020 through Amazon.  (*Id.* ¶ 96.)  Prior to purchasing the Sambucol products, Dobbs was exposed to, saw, and relied on Defendant's materially misleading representations on the Products' packaging and labeling, in television commercials on a major network, on the Sambucol website and on the Amazon website.  (*Id.* ¶ 97.)  He saw the commercial several times in the weeks prior to his first purchase in August 2019 and relied on the representations that the elderberry ingredient supports the immunity system.  (*Id.*)  He reviewed the marketing, advertising and labeling on the Amazon and Sambucol websites in the days prior to the initial purchase where he saw and relied on Defendant's claims that the elderberry ingredient was developed by a world renowned virologist and that it supports immunity and the immune system, has been scientifically tested, has been used in clinical studies, has high antioxidant levels, helps you and your family stay healthy throughout the year and arms you with the best protection nature has to offer.  (*Id.*)  When he purchased the Products, he believed they were legally sold supplements.  (*Id.* ¶ 98.)  Dobbs' decision to buy the Products was directly impacted by the misleading representations that the Elderberry Products.  (*Id.* ¶ 100.)  Had he known that the Products were not legally sold supplements and the truth about the misleading representations and omissions, he would not have purchased them.  (*Id.*)

In the FAC, Plaintiffs have narrowed the time period when they saw the false misrepresentations.  They state they first saw the misleading representations a couple of months or weeks before their first purchase.  (Dkt. No. 31, FAC ¶¶ 81, 89, 97.)  Then Plaintiffs continually saw those misrepresentations as they continued to purchase the Products. They also specify the specific misrepresentations they relied on and where they saw them.  Plaintiffs have satisfied the specificity requirements under Rule 9(b).

Accordingly, the Court DENIES Defendant's motion to dismiss under the specificity requirements of Rule 9(b).

**E.     Breach of the Implied Warranty of Merchantability**

Defendant next maintains that the breach of the implied warranty of merchantability claim fails for alleging the food and drug exception to privity and fails to allege facts establishing a third-party beneficiary exception to the privity requirement.[10] (Dkt. No. 35-1 at 27-29.)  Plaintiffs respond that the Products, "consumable nutritional supplements" fall within the category of products covered under the food and drugs exception to privity and additionally, they are the intended third-party beneficiaries of the manufacturer, another exception to privity.  (Dkt. No. 39 at 27-29.)

On the breach of implied warranty claim, the FAC alleges that privity is not required because the claim relates to food or other substances intended for human consumption.  (Dkt. No. 31, FAC ¶ 197.)  The FAC also alleges, "Plaintiffs and the Class Members purchased the Elderberry Products manufactured and marketed by Defendant by and through Defendant's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers when bought from a third party" and "Defendant entered into contracts with the authorized retailers from whom Plaintiffs and the Class Members purchased the Products, and Plaintiffs and Class Members were the intended third-party beneficiaries of those contracts, an exception to the privity requirement."  (*Id.* ¶¶ 193, 198.)  In the prior order, the Court held that Plaintiffs had failed to allege the third-party beneficiary exception to privity.  (Dkt. No. 29 at 19.)

The California Commercial Code "implies a warranty of merchantability that goods '[a]re fit for ordinary purposes for which such goods are used.'"  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting Cal. Com. Code § 2314(2)(c)).

---

[10] Again, Defendant only argues that the breach of implied warranty claim under California law fails to state a claim.

"Under California Commercial Code section 2314, . . . a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1023 (9th Cir. 2008); *All West Elecs., Inc. v. M–B–W, Inc.,* 64 Cal. App. 4th 717, 725 (1998) ("The general rule is that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale."); *Anthony v. Kelsey–Hayes Co*., 25 Cal. App. 3d 442, 448 (1972) ("It is settled law in California that privity between the parties is a necessary element to recovery on a breach of an implied warranty of [merchantability or] fitness for the buyer's use, with exceptions not applicable here.").  "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Clemens,* 534 F.3d at 1023.  An "end consumer" who "buys from a retailer is not in privity with a manufacturer." *Id.*

In *Clemens*, the Ninth Circuit identified a number of specific exceptions to the privity rule such as cases when a "plaintiff relies on written labels or advertisements of a manufacturer" and other "special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser."  *Id.* at 1023 (citing *Burr v. Sherwin Williams Co*., 42 Cal. 2d 682, 695-96 (1954); *Windham at Carmel Mountain Ranch Ass'n v. Superior Ct.,* 109 Cal. App. 4th 1162, 1169 (2003); *Fieldstone Co. v. Briggs Plumbing Prods., Inc.,* 54 Cal. App. 4th 357, 369 (1997); *Gottsdanker v. Cutter Labs*., 182 Cal. App. 2d 602, 608 (1960)).  A direct dealing exception to the privity requirement has also been recognized by the court of appeal in *U.S. Roofing, Inc. v. Credit Alliance Corp*. 228 Cal. App. 3d 1431, 1442 (1991).  *Cardinal Health 301, Inc. v. Tyco Electronics Corp*.,169 Cal. App. 4th 116, 138-39 (2008) (applying direct dealing exception).  The Ninth Circuit noted that California "has painstakingly established the scope of the privity requirement under [ ] section 2314, and a federal court sitting in diversity is not free to create new exceptions to it."  *Clemens,* 534 F.3d at 1024.

29

1    The FAC relies on the food and drug exception to privity to allege a breach of

2    implied warranty cause of action.  (Dkt. No. 31, FAC ¶ 197.)  Defendant argues that the

3    food and drug exception does not apply because Plaintiffs do not allege physical injuries

4    resulting from ingesting the Products.  (Dkt. No. 35-1 at 27-28.)  Plaintiffs disagree

5    arguing that physical injury is not required for the food and drug exception to apply.

6    (Dkt. No. 39 at 28.)

7    The California Supreme Court recognized an exception to the privity requirement

8    for breach of implied warranty "in cases involving foodstuffs, where it is held that an

9    implied warranty of fitness for human consumptions runs from the manufacturer to the

10    ultimate consumer."  *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954); *Mexicali*

11    *Rose v. Superior Ct.*, 1 Cal. 4th 617, 621 (1992) ("[A]cceptance of an implied warranty

12    rule against manufacturers in cases involving unfit foodstuffs was based on the rationale

13    that a manufacturer that sold food items could no longer hide behind the shield of privity

14    to absolve itself of liability.").  "[E]xceptions to the privity requirement have been found

15    in cases involving foodstuffs, drugs and pesticides, substances marketed with the

16    knowledge the purchaser may not be the ultimate consumer of the product."  *Jones v.*

17    *ConocoPhillips*, 198 Cal. App. 4th 1187, 1201 (2011); *see also Quatela v. Stryker Corp.*,

18    820 F. Supp. 2d 1045, 1047 (N.D. Cal. 2010).

19    Courts are divided on whether a plaintiff must allege a physical injury to state a

20    claim under this exception.  *Compare Shade Foods, Inc. v. Innovative Prods. Sales &*

21    *Mktg.*, 78 Cal. App. 4th 847, 871 (2000) ("In the peculiar context of foodstuffs, the

22    theory of breach of an implied warranty of merchantability has closer affinities to tort law

23    than to contract law because it allows recovery of damages, without regard to privity of

24    contract, for personal injuries as well as economic loss."); *Bitton v. Gencor Nutrientes,*

25    *Inc.*, 654 Fed. App'x 358, 363 (9th Cir. 2016) (citing *Jones v. ConocoPhillips,* 198 Cal.

26    App. 4th 1187, 1201 (2011) (district court improperly dismissed breach of warranty claim

27    noting the foodstuffs exception and that the plaintiffs had "allege[d] injury in the form of

28    the amount paid for each product" but claim was properly dismissed on other grounds));

21cv137-GPC(AGS)

*Musgrave v. Taylor Farms Pacific, Inc*., Case No. 18-cv-02841-JSW, 2019 WL 8230850, at *5 (N.D. Cal. Feb. 20, 2019) (denying motion to dismiss where the plaintiff, even though she got sick from E.coli, only sought economic damages*); Benavides v. Kellogg Co*., No. CV 10-2294-JST, 2011 WL 13269720, at *7 (C.D. Cal. Mar. 21, 2011) (declining to adopt a "narrow view" of the foodstuffs exception requiring physical injury) *with Nadler v. Nature's Way Prods., LLC*, ED CV 13-100 TJH (OPx), 2014 WL 12601567, at *3 (C.D. Cal. Mar. 27, 2014) (citing *Peterson v. Lamb Rubber Co*., 54 Cal. 2d 339, 342 (1960) (dismissing breach of implied warranty claim because policy behind the judicially created exception does not apply when the complaint does not allege a physical injury from ingesting the product); *Hammock v. Nutramarks, Inc*., Case No.: 15cv2056 BTM (NLS) 2016 WL 4761784, at *5-6 (S.D. Cal. Sept. 12, 2016) (citing *Klein v. Duchess Sandwich Co*., 14 Cal. 2d 272, 283 (1939) (dismissing breach of implied warranty of merchantability because the plaintiffs did not allege the products made them sick, only that they did not work as advertised.).  In *Peterson,* the court held that the requirement of privity is excused when an inherently dangerous instrumentality causes harm to the buyer's employee, and in discussion, it collected cases involving injuries from eating unwholesome food but did not address economic harm.  *Peterson*, 54 Cal. 2d at 342.  *Klein* addressed damages for injury the plaintiff suffered from eating a sandwich infected with "worms" or "maggots."  *Klein*, 14 Cal. 3d at 274.  Economic injuries were not before the California Supreme Court in *Petersen* and *Klein*,

The Court is not persuaded by cases relying on *Peterson* and *Klein* to hold that the foodstuff exception for breach of implied warranty should be limited to physical harm because the issue of economic harm was not before the court in *Peterson* or *Klein* and neither case foreclosed a plaintiff from seeking economic injury under the food and drug exception to privity.  Accordingly, the Court DENIES Defendant's motion to dismiss the breach of implied warranty of merchantability claim.  *See Benavides*, 2011 WL 13269720, at *7 (noting that case law does not limit exception to physical harm only).  Because the Court denies dismissal based on the food and drug exception, it declines to

address Plaintiffs' additional argument claiming an exception to privity under the third-party beneficiary theory, and for the first time in their opposition but not raised in the FAC, Plaintiffs rely on the exception for "written labels or advertisements of a manufacturer", *Clemens,* 534 F.3d at 1023, when an express warranty is extended by the manufacturer", citing *Roper v. Big Heart Pet Brands, Inc*., 510 F. Supp. 3d 903, 924 (E.D. Cal. 2020).

## F.   Breach of Express Warranty

Defendant, relying solely on California law,[11] contends that Plaintiffs have not stated a valid breach of express warranty claim because they fail to identify the "exact terms" of the express warranty or specific representations that would create an express warranty.  (Dkt. No. 35-1 at 29-30.)  It asserts that there is no express warranty on the labels that the Products are legal to sell.  (*Id.*)  Furthermore, it avers that Plaintiffs have not alleged facts showing their reasonable reliance on any purported express warranty and Defendant's breach of it.  (*Id.* at 30.)  Plaintiffs respond that they have alleged a breach of express warranty because by labeling products as a "dietary supplement", Defendant promises or expressly warrants that the Products are legal dietary supplements.  (Dkt. No. 39 at 30.)   Moreover, they have alleged the express warranty was a part of the benefit of the bargain when they purchased the Products, and they were harmed.  (*Id.* at 30-31.)

On a breach of express warranty claim, a plaintiff must allege that a seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Viggiano v. Hanse1n*

---

[11] Because Plaintiff noted that Defendant did not argue that the breach of express warranty claim under Massachusetts and Missouri law failed to state a claim, (Dkt. No. 39 at 31), in reply, Defendant cites to one case addressing Massachusetts law and one case addressing Missouri law.  (Dkt. No. 41 at 15.)  However, the Court declines to consider new issues raised in the reply and also to consider an argument raised merely by citing to a case.  Thus, the Court only considers Defendant's argument addressing breach of express warranty under California law.

21cv137-GPC(AGS)

*Natural Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013). "To constitute a warranty and be actionable, the statement must be 'specific and unequivocal.'" *Johnson v. Mitsubishi Digital Elecs. Am., Inc.,* 578 F. Supp. 2d 1229, 1236 (C.D. Cal. 2008). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313(1)(b); *see Viggiano,* 944 F. Supp. 2d at 893 ("A description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties.").

The FAC alleges that Defendant breached the express warranty by selling products that are illegally labeled as dietary supplements. (Dkt. No. 31, FAC ¶ 182.) Plaintiffs allege that they relied on this affirmation of fact when they purchased the Products. (*Id.* ¶¶ 180, 183.)

The Court disagrees with Defendant's argument that there is no label claiming that the Products are legal to sell and concludes that Plaintiffs have sufficiently alleged an express promise describing the Products as "dietary supplements", when in fact, they are not because Defendant allegedly failed to provide the FDCA with the required NDI notification. (*Id.* ¶¶ 30-34.) Advertising a product as a "dietary supplement" creates a reasonable impression to the consumer that it has been designated or has features of a supplement based on some criteria set by the FDA. Therefore, in drawing all reasonable inferences in favor of Plaintiffs, the Court DENIES Defendant's motion to dismiss the express warranty claim under California law.

## G.    Pre-Suit Notice Requirement under the CLRA and M.G.L. ch. 93A

First, Defendant argues that Plaintiffs failed to strictly comply with the pre-notice provisions of the CLRA and the claim must be dismissed. (Dkt. No. 35-1 at 31-34.) Specifically, Defendant claims that Plaintiffs did not deliver the pre-suit notice to its principal place of business in California and did not mention what provisions of section 1770 it has violated. (*Id.* at 32.) Plaintiffs maintain they provided adequate pre-suit notice under the CLRA, and if the Court disagrees, they seek leave to provide proper notice, and subsequently amend the complaint. (Dkt. No. 39 at 32.)

Prior to filing an action for damages, the CLRA requires a plaintiff to provide notice to a defendant of the CLRA violations by certified or registered mail 30 days or more before filing an action for damages. Cal. Civ. Code § 1782(a).[12] The notice must be sent to the place where the transaction occurred or to the person's principal place of business in California. *Id.* The notice must also specify the "particular alleged violations" of the CLRA and demand that the person "correct, repair, replace or otherwise rectify" the alleged violations. *Id.* "The purpose of the notice requirement of section 1782 is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements." *Outboard Marine Corp. v. Superior Ct.*, 52 Cal. App. 3d 30, 40 (1975). If the defendant corrects the alleged wrongs or indicates it will make corrections within a reasonable time, the plaintiff cannot file a suit seeking damages. Cal. Civ. Code § 1782(c). The notice is not required where a plaintiff seeks only injunctive relief. *Id.* § 1782(d). Section 1782(d) allows a plaintiff to file a complaint for injunctive relief under the CLRA without the notice requirement and permits the plaintiff to subsequently amend the complaint to include a request for damages. *Id.* Where a plaintiff fails to provide such notice, the damages "'claim must simply be dismissed until 30 days or more after the plaintiff complies'" with the dictates of section 1782. *Bitton v. Gencor Nutrientes, Inc.,* 654 F. App'x 358, 362 (9th Cir. 2016) (quoting *Morgan v. AT & T Wireless Servs., Inc*., 177 Cal. App. 4th 1235 (2009)).

In this case, the original complaint sought only injunctive relief and indicated that a letter under section 1782(a) had been sent notifying Defendant of the alleged CLRA

---

[12] "(a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
(1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
(2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.
The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California." Cal. Civ. Code § 1782(a).

21cv137-GPC(AGS)

violations.  (Dkt. No. 1, Compl. ¶¶ 144, 145.)  The complaint further alleged that if Defendant did not correct its business practices, Corbett would amend the complaint to add claims for monetary relief under the CLRA.  (*Id*.)

The FAC, filed on July 7, 2021, alleges that prior to filing of the complaint, Corbett provided notice of the alleged violations of the CLRA, demanded that Defendant correct the violations and provided it with an opportunity to correct its business practices which it did not.  (Dkt. No. 31, FAC ¶ 147; *see* Dkt. No. 35-6, D's RJN, Ex. D.) However, the notice letter does not identify what conduct under section 1770 is being violated as required by section 1782(a).  Section 1782(a) requires that the notice must "(1) [n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770."  Cal. Civ. Code § 1782(a).  Plaintiffs does not address this deficiency but argues that the letter states that Defendant violated the CLRA and provided a brief summary of the facts.  (Dkt. No. 39 at 31.)

Because Plaintiffs failed to assert what provision under section 1770 is being violated in the notice letter, the Court GRANTS Defendant's motion to dismiss the CLRA cause of action for damages for failing to comply with section 1782(a).  *See Munning v. Gap, Inc*., Case No. 16-cv-03804-TEH 2016 WL 6393550, at *4 (N.D. Cal. Oct. 28, 2016) (dismissing CLRA claim without prejudice because the plaintiff's letter alleged violations of several statutes but failed to "specifically identify which provisions of the cited statutes they violated.").

Moreover, Plaintiffs sent a certified letter on December 30, 2020 to Defendant's registered agent in Dover, Delaware and not its principal place of business in California as required by section 1782(a).  (Dkt. No. 35-6, Ex. D.)  The letter was eventually forwarded to Defendant's counsel in San Francisco, California.  (Dkt. No. 35-6, D's RJN, Ex D at 4.)  Defendant's principal place of business is alleged to be in San Diego, CA, (Dkt. No. 31, FAC ¶ 17); however, Plaintiffs failed to send the notice letter to Defendant in San Diego as required by section 1782(a) and provides another basis for dismissal of

the CLRA claim for damages.  The question becomes whether the dismissal should be with prejudice or without prejudice.

Prior to *Morgan v. AT & T Wireless Servs., Inc*., 177 Cal. App. 4th 1235 (2009), district courts in this district held that section 1782 notice requirements must be strictly construed and dismissed the CLRA claims for damages with prejudice; however, post-*Morgan*, some courts have adopted its reasoning and held that a plaintiff must be given an opportunity to properly comply with the notice requirements and dismissal should be without prejudice.  *See Oxina v. Lands' End*., Inc., No. 14–cv–2577–MMA (NLS), 2015 WL 4272058, at *3 (S.D. Cal. June 19, 2015) (dismissing without prejudice allowing the plaintiff to comply with the CLRA's notice provisions) (citing *Trabakoolas v. Watts Water Techs., Inc*., No. 12–CV–01172–YGR, 2012 WL 2792441, at *8 (N.D. Cal. July 9, 2012) ("Nothing in the legislative history indicates that the 30–day notice period was intended to bar consumer actions or was not curable."); *Herron v. Best Buy Stores, L.P*., No. 12–CV–02103–GEB–JEM, 2014 WL 465906, at *5 (E.D. Cal. Feb. 4, 2014) (noting that pre-*Morgan* cases "are unpersuasive, [and] were rendered before *Morgan* squarely addressed the issue").  The Court agrees with post-*Morgan* cases that Corbett should be given leave to amend to correct the errors in their pre-suit notice.

Accordingly, the Court GRANTS Defendant's motion to dismiss the claim for damages on the CLRA claim with leave to amend once Corbett complies with the notice requirement.

On the M.G.L. ch. 93A claim, Defendant argues Plaintiff Luciano failed to comply with the pre-notice provision because she filed her complaint less than thirty days after sending the letter on December 30, 2020, and failed to "set out specifically any activities . . ." as to which she seeks relief.  (Dkt. No. 35-1 at 34.)  Plaintiffs generally assert they provided proper notice.  (Dkt. No. 39 at 32.)

M.G.L. ch. 93A, § 9(3) requires

[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or

deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner.

M.G.L. ch. 93A, § 9(3).

A plaintiff alleging a claim under M.G.L. ch. 93A is required to provide a written demand for relief to the potential defendant no less than thirty days before filing suit. Mass. Gen. Laws ch. 93A, § 9(3). The demand requirement "is not merely a procedural nicety, but, rather, 'a prerequisite to suit'" and "must be alleged in the plaintiff's complaint." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E. 2d 202, 204 (Mass. 1975)). Further, dismissal for failure to comply with § 9(3) requirements should be without prejudice. *York v. Sullivan*, 338 N.E. 2d 341, 347 (1975).

Here, Luciano did not comply with the notice provision because she filed the complaint less than 30 days after the providing notice letter. *See* M.G.L. ch. 93A, § 9(3). Thus, the Court grants Defendant's motion to dismiss the M.G.L. ch. 93A claim without prejudice. *See Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993, at *7 (D. Mass. Mar. 22, 2016) (granting dismissal for failing to provide a demand letter to defendant).

As to Defendant's argument concerning the content of her letter, Plaintiff Luciano has complied with G.L. ch. 93A, § 9(3). "The demand letter required under G.L. c. 93A does not require claimants to set forth every specific statutory or regulatory violation alleged, so long as it fairly notifies the prospective respondent of the actions or practices of the respondent and the injury suffered by those actions." *Casavant v. Norwegian Cruise Line Ltd.*, 952 N.E. 2d 908, 913 (Mass. 2011). "Specificity is required to describe

the practices complained of, not the legal basis for the claim." *Id.* (citing *Cohen v. Liberty Mut. Ins. Co*., 673 N.E.2d 84 (Mass. App. Ct. 1996) (demand letter alleging unfair settlement practices sufficient even though violation of G.L. c. 176D, § 3[9] [f ], not specifically alleged). A demand letter under ch. 93A must make clear that the claim arises under that statute, either through:

> (1) any express reference to c. 93A; (2) any express reference to the consumer protection act; (3) any assertion that the rights of the claimants as consumers have been violated; (4) any assertion that the defendant has acted in an unfair or deceptive manner . . .; (5) any reference that the claimants anticipate a settlement offer within thirty days . . .; or (6) any assertion that the claimant will pursue multiple damages and legal expenses, should relief be denied.

*Costello v. Bank of America, N.A*., Civil Action No. 13–cv–11424–DJC, 2014 WL 293665, at *4 (D. Mass. Jan. 27, 2014) (quoting *Cassano v. Gogos*, 480 N.E. 2d 649, 651 (Mass. App. Ct. 1985)). A written demand letter complies with ch. 93A if it identifies the injury suffered and the relief sought and mentions at least one of the six factors enumerated above. *Cassano v. Gogos*, 480 N.E. 2d 649, 651 (Mass. App. Ct. 1985). In this case, the letter references M.G.L. ch. 93A as well as alleges her economic injury and the relief she seeks. (Dkt. No. 35-6, D's RJN, Ex. D.) Therefore, Plaintiff Luciano has sufficiently provided Defendant notice of the unfair or deceptive act or practice, the injury she suffered and the relief she seeks. However, because she failed to comply with the 30 days requirement before filing a complaint, the Court GRANTS Defendant's motion to dismiss the M.G.L. ch. 93A claim.

### IV. CONCLUSION

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss without prejudice. Specifically, the Court GRANTS dismissal of the CLRA claim for damages and the cause of action under Mass. Gen. Law ch. 93A without prejudice. Plaintiff may file its Second Amended Complaint within 45 days in order to address the Notice deficiencies identified in section III(G). The Defendant shall

1 | thereafter file an answer to the FAC within the time prescribed by the Federal Rules of

2 | Civil Procedure.

3 |       IT IS SO ORDERED.

4 | Dated:  October 19, 2021

Hon. Gonzalo P. Curiel
United States District Judge

21cv137-GPC(AGS)