Alex Straus (State Bar No. 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
208 S. Beverly Drive
Beverly Hills, CA 90212
Tel: 865-247-0080
astraus@milberg.com

*Attorneys for Plaintiffs and the Class*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTIQUENO CORBETT, DAMARIS LUCIANO, and ROB DOBBS individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>PHARMACARE U.S., INC., a Delaware Corporation,<br><br>            Defendant. | Civil Action No.:<br>3:21-cv-00137-GPC-AGS<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Montiqueno Corbett, Damaris Luciano, and Rob Dobbs (collectively "Plaintiffs"), through their undersigned attorneys, file this Second Amended Class Action Complaint against Defendant PharmaCare U.S., Inc. ("Defendant"), individually and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts

**SECOND AMENDED CLASS ACTION COMPLAINT**

and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## <u>NATURE OF THE ACTION</u>

1.     This is a civil class action brought individually by Plaintiffs on behalf of consumers who purchased Defendant PharmaCare's Sambucol Black Elderberry Original Syrup, Sambucol Black Elderberry Advanced Immune Syrup, Sambucol Black Elderberry Sugar Free Syrup, Sambucol Black Elderberry Syrup for Kids, Sambucol Black Elderberry Gummies, Sambucol Black Elderberry Gummies for Kids, Sambucol Black Elderberry Advanced Immune Capsules, Sambucol Black Elderberry Effervescent Tablets, Sambucol Black Elderberry Chewable Tablets, Sambucol Black Elderberry Pastilles (Throat Lozenges), Sambucol Black Elderberry Daily Immune Drink Powder, and Sambucol Black Elderberry Infant Drops (collectively the "Elderberry Products" or the "Products").

2.     Elderberry, which is derived from a flowering plant called *Sambucus*, has become a popular dietary supplement in recent years.

3.     The increased popularity of "natural remedies" drives sales of elderberry products. According to a report published by the American Botanical Council in 2019, sales of elderberry supplements more than doubled in the United States between 2017 and 2018 to a total of nearly $51 million. Between January and March of 2018, elderberry supplement sales were more than $100 million dollars in

2

**SECOND AMENDED CLASS ACTION COMPLAINT**

the US alone. Elderberry sales in the first half of 2020 grew by triple digits compared to sales during the same period in 2019, showing the greatest growth in the mainstream dietary supplement market, where it is currently the third top-selling herbal ingredient.   The mainstream dietary supplement market includes grocery stores, drug stores, and mass merchandisers such as club, dollar, and military stores.[1]

4.     According to IRI, a market research firm that tracks retail sales of supplements, in March 2020, sales of elderberry supplements increased by 415% over the prior year as consumers sought products that might offer protection from the novel coronavirus.[2]   The "immune support" dietary supplement market, including supplements containing elderberry, is thus an extraordinarily fast-growing segment of the dietary supplement market, in part due to the Coronavirus Pandemic.

5.     With hundreds of elderberry supplement options available for consumers to purchase, in order to stand out from the competition, Defendant promotes its Elderberry Products as "the most trusted brand sold worldwide" and prominently displays a badge on its website proclaiming that its Products are the "No. 1 Best Selling Black Elderberry in the US."[3]

---

[1] https://www.globenewswire.com/news-release/2020/08/31/2086400/0/en/US-Herbal-Supplement-Sales-Increase-by-8-6-in-2019-Record-Breaking-Sales-Predicted-for-2020.html.

[2] https://www.nytimes.com/2020/03/23/well/live/coronavirus-supplements-herbs-vitamins-colds-flu.html.

[3] https://sambucolusa.com/.

3

**SECOND AMENDED CLASS ACTION COMPLAINT**

6.    On the labels of its Elderberry Products, as well as on its website and in other marketing directed at consumers, Defendant states: "*Developed by a world renowned virologist*, Sambucol is the unique black elderberry extract that has been used in scientific studies.   By using a proprietary method of extraction, *only Sambucol can guarantee* consistent, immune supporting properties in every serving." (Emphasis added.).   Additionally, Defendant promises consumers on its packaging: "Sambucol® Black Elderberry extract conveniently arms you with some of the best protection nature has to offer."   Defendant also represents that the Elderberry Products help to protect consumers from catching a virus or other illness, or to fight off a virus or other illness: "Stress can wreak havoc on our immune system. This leaves us open to the possibility of more frequently catching a virus or other illness. Sambucol Black Elderberry helps to support a healthy immune system so even on my most hectic days; I am giving my body the immune support it needs."[4]

7.    Defendant warrants that all of the Products contain its proprietary elderberry extract and are legal for consumers to purchase for their personal use and not for resale.

8.    However, under the Dietary Supplement Health and Education Act (the "DSHEA"), Defendant's Products are illegal to sell.

---

[4] https://sambucolusa.com/blogs/news/womens-health-month?_pos=1&_sid=ed9b47f7b&_ss=r (last accessed December 17, 2020).

4

**SECOND AMENDED CLASS ACTION COMPLAINT**

9.      Moreover, Defendant's uniform representations on its packaging and in its marketing that its Elderberry Products (a) were developed by "a world renowned virologist," (b) "help you and your family stay healthy throughout the year," (c) "arm[] you with some of the best protection nature has to offer," and (d)  are the only elderberry supplements that "can guarantee consistent, immune supporting properties in every serving," unlawfully convey to consumers that its Elderberry Products will protect consumers and their children from diseases such as viruses.[5]



---

[5] https://sambucolusa.com/collections/shop-all/products/black-elderberry-large-original-syrup-7-8-ounces (last accessed December 17, 2020).

**SECOND AMENDED CLASS ACTION COMPLAINT**



6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21   10.   To further achieve a competitive advantage in this highly lucrative

22   market, Defendant asserts on its packaging, on its labels, and in its marketing

23   materials that the Elderberry Products are "Scientifically tested," that its proprietary

24   extract has been used in published studies, and that its extract is "the most

25

26   extensively researched Black Elderberry product in the world." These deceptive and

27   _____

28   7

**SECOND AMENDED CLASS ACTION COMPLAINT**

misleading statements are intended to and do falsely suggest to reasonable consumers that scientific research has conclusively established the effectiveness of Defendant's Elderberry Products.  In addition, Defendant's portrayal of its Products as being the focus of scientists throughout the world (including a world renowned virologist) who have extensively tested, researched, and studied them further conveys Defendant's intended impression that its Products are akin to drugs capable of preventing or mitigating disease.

11.    With knowledge of growing consumer demand for supplements containing elderberry, Defendant has intentionally marketed and sold its illegal Elderberry Products using false and misleading labeling and advertising.

12.    Defendant's prominent and systematic mislabeling of the Products and its false and deceptive advertising form a pattern of unlawful and unfair business practices that harms the public and, if unstopped, could lead to substantial societal harm.

13.    Plaintiffs bring this suit to halt Defendant's unlawful sales and marketing of its Elderberry Products and for damages they sustained as a result of the illegal sales and false and misleading marketing.  Declaratory and injunctive relief is of particular importance given the likely consequences of Defendant's actions.

**SECOND AMENDED CLASS ACTION COMPLAINT**

## PARTIES

14.     Plaintiff Montiqueno Corbett is a resident and citizen of San Diego, California in San Diego County, California.

15.     Plaintiff Damaris Luciano is a resident and citizen of Holyoke, Massachusetts in Hampden County, Massachusetts.

16.     Plaintiff Rob Dobbs is a resident and citizen of Florissant, Missouri in St. Louis County, Missouri.

17.     Defendant PharmaCare U.S., Inc. is a Delaware corporation with its principal place of business at 5030 Camino de la Siesta, Suite 200, San Diego, California 92108.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d).   The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, there are tens of thousands of Class members, and there are numerous Class members who are citizens of states other than Defendant's states of citizenship.

19.     This Court has personal jurisdiction over Defendant in this matter because Defendant is a resident of California, and acts and omissions giving rise to this action occurred in the state of California.

**SECOND AMENDED CLASS ACTION COMPLAINT**

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and because Defendant transacts business and/or has agents within this District and has intentionally availed itself of the laws and markets within this district.

## FACTUAL ALLEGATIONS

21.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner.  Defendant sells the Products in all 50 states on its website and through various distributors and retailers across the United States.

### *DEFENDANT'S ILLEGAL DIETARY SUPPLEMENTS*

22.     Defendant's Products contain a proprietary extract of black elderberry that it identifies on its label as "Elderberry Extract (berry)" ("Defendant's extract").

23.     Defendant's extract does not meet the definition of a dietary ingredient under section 201(ff) of the federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 321(ff).

24.     All of Defendant's Products contain the illegal dietary ingredient "Elderberry Extract (Berry)" and are, therefore, mislabeled as dietary supplements. Every Product explicitly identifies itself as a "Dietary Supplement" on the front of the packaging and also contains a "Supplement Facts" section on the back of the packaging that is reserved for use solely with dietary supplements.

**SECOND AMENDED CLASS ACTION COMPLAINT**

25.     As the manufacturer and distributor of the Products, Defendant has an affirmative duty to comply with the FDCA, 21 U.S.C. § 301, et seq., as well as any parallel state statute.

26.     Dietary supplements are defined by the FDCA as a "product (other than tobacco) intended to supplement the diet" that contains one or more of the following: (1) vitamins; (2) minerals; (3) herbs or other botanicals; (4) an amino acid; (5) a supplement meant to increase total dietary intake; or (6) a concentrate, metabolite, constituent, extract, or combination of any of the listed ingredients. 21 U.S.C. § 321(ff)(1).

27.     In 1994, the Dietary Supplement Health and Education Act (the "DSHEA") was passed into law, establishing a new framework to govern the composition, safety, labeling, manufacturing, and marketing of dietary supplements.

28.     Under the DSHEA, dietary ingredients that were marketed in the United States before 1994 may be used in dietary supplements without first notifying the FDA.

29.     Defendant's extract was not marketed as a dietary ingredient in the United States before 1994 and thus does not qualify for this exemption.

30.     Notice of "new" dietary ingredients (i.e., those not used in the United States before 1994) must be submitted to the FDA prior to sale unless the ingredient has been "present in the food supply as an article used for food without being

11

**SECOND AMENDED CLASS ACTION COMPLAINT**

chemically altered." 21 U.S.C. § 350b(a)(1).  As the FDA has explained further, "if the dietary ingredient has not been present in the food supply as an article used for food *in the same chemical form that you plan to use in your dietary supplement*," then notice prior to sale must be given to the FDA.[6]  (Emphasis added)

31.     For dietary ingredients not used in the United States prior to 1994, the manufacturer or distributor must, at least 75 days before the introduction of the new dietary ingredient ("NDI") into the market, provide the FDA with information that demonstrates that the "history of use or other evidence of safety establish that the NDI when used under the conditions recommended or suggested in the labeling of the NDI will reasonably be expected to be safe." 21 U.S.C. § 350b(a)(2).

32.     After receiving information regarding an NDI, the FDA may then determine that the manufacturer or distributor has not provided an adequate basis to conclude that the NDI is reasonably expected to be safe, which would prevent the marketing of the NDI.

33.     Although required to do so, Defendant did not provide the FDA with the required NDI notification for its extract.

---

[6] *New Dietary Ingredients in Dietary Supplements – Background for Industry*, https://www.fda.gov/food/new-dietary-ingredients-ndi-notification-process/new-dietary-ingredients-dietary-supplements-background-industry#what_is.

**SECOND AMENDED CLASS ACTION COMPLAINT**

34.     Dietary supplements that contain undisclosed NDIs are considered adulterated for purposes of the FDCA: "[I]f a notification is required for a product containing a new dietary ingredient and the product is marketed without the required notification, the product is adulterated as a matter of law."[7]

35.     Defendant was fully aware that its extract was an NDI and that its extract had not been used for food in the same chemical form as used in its Products, but nevertheless included it in its Products without notification to the FDA.

36.     Defendant's conduct is also deceptive, unfair, and unlawful in that it violates the prohibition against the sale of adulterated and misbranded products under California's Sherman Laws, which adopt the federal labeling regulations as the food and dietary supplement labeling requirements of the state. Cal. Health & Safety Code § 110095 ("All special dietary use regulations and any amendments to regulations adopted pursuant to the federal act, in effect on November 23, 1970, or adopted on or after that date, are the special dietary use regulations of this state."); *Id.* § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").

---

[7] *Id.*

13

**SECOND AMENDED CLASS ACTION COMPLAINT**

37.     The introduction of adulterated and misbranded food into interstate commerce is prohibited under the FDCA and the parallel state statutes cited in this Class Action Complaint.

### *IMPLIED DISEASE CLAIMS*

38.     A dietary supplement manufacturer such as Defendant may not explicitly or implicitly claim that a dietary ingredient can, among other things, mitigate or prevent a disease or class of diseases. 21 U.S.C. 343(r)(6).

39.     When Defendant's claims are viewed in their totality, they are either explicitly or implicitly claiming to mitigate or prevent disease.

40.     As part of its uniform marketing and advertising campaign, Defendant seeks to convince consumers that the Elderberry Products can mitigate or prevent a disease or a class of diseases by uniformly representing on the Elderberry Product packaging that the Products are "Scientifically tested," contain "the most extensively researched" extract "in the world," was "Virologist Developed," and was "Developed by a world renowned Virologist." Defendant also emphasizes that a virologist developed its Products on its website and in other marketing materials.

41.     As is obvious from the name, a virologist is an expert in the branch of science that deals with viruses and the diseases that they cause.[8]

---

[8] See https://www.merriam-webster.com/dictionary/virology#medicalDictionary (last accessed November 4, 2020).

**SECOND AMENDED CLASS ACTION COMPLAINT**

42.     Given Defendants' clear and intentional decision to represent to consumers that the Products were developed by a "Virologist," Plaintiffs and Class Members would reasonably believe that Products developed by a "Virologist" would have the ability to mitigate, treat, cure, or prevent a disease or diseases, specifically viruses.

43.     In addition, Defendant asserts on its Products' packaging that its extract "provides strong immune system support to help you and your family stay healthy throughout the year" and that the extract "arms you with some of the best protection nature has to offer."

44.     Each of the Products promises that it "Supports Immunity" or provides "Immunity Support." Some Products even reference immunity in their name including "Sambucol Black Elderberry Advanced Immune Syrup" and "Sambucol Black Elderberry Daily Immune Drink Powder." These statements do not just allege support for the immune system, but rather suggest to reasonable consumers that the Products can provide "immunity" to disease, which given Defendant's other marketing would suggest immunity to colds and the flu.

45.     On its Sambucol website, Defendant asserts that "[a] proprietary formulation and extraction process was developed which preserves and maximizes *the naturally occurring immunity benefits* of the black elderberry (sambucus nigra)." (Emphasis added)

**SECOND AMENDED CLASS ACTION COMPLAINT**

46.    The Sambucol website also proclaims "BEHOLD THE SUPER IMMUNITY BERRY" and promises that "elderberries can help empower your immune system by fighting free radicals that damage it."

47.    "Immunity" is defined as "a condition of being able to resist a particular disease…."[9]

48.    Plaintiffs, Class Members, and reasonable consumers would understand from Defendant's labels and marketing that the Products, through their claimed impact on the immune system, independently and in conjunction with the other marketing and labeling claims, protect them and their families from disease by either limiting or preventing diseases.

49.    Defendant's emphasis that its extract was developed by a world renowned virologist and has been extensively and scientifically tested, studied, and researched, when combined with Defendant's claims regarding its Products' impact on immune systems, would lead Plaintiffs, Class Members, and reasonable consumers to believe that the Products help prevent, mitigate or cure viruses such as colds and the flu.

50.    Defendant's marketing, including its own website, implicitly points to the Products providing protection from colds and the flu by urging consumers to

---

[9] See https://www.merriam-webster.com/dictionary/immunity (last accessed November 11, 2020).

**SECOND AMENDED CLASS ACTION COMPLAINT**

"use it during the winter season" and assuring them the Products would help them "stay healthy through the toughest season."  Defendant urges: "Falling temperatures and falling leaves, don't fall down on your immune support."  The "winter season" and "the toughest season" would be understood by reasonable consumers to be the "cold and flu season."

51.    On its website, Defendant also references an article from an alternative health expert who recommends the Elderberry Products for use during cold season.[10]

52.    On Defendant's website under the FAQ section asking, "What are the traditional uses of black elderberry," Defendant states that elderberry is "used in traditional remedies for colds, coughs, and upper respiratory infections."[11]

53.    Next, the name of Defendant, "PharmaCare," which is listed on the back of the Products' labels and packaging, also suggests that the Products are drugs to prevent or treat diseases because the name implies that the company is somehow a pharmaceutical company rather than a nutraceutical company.

---

[10] https://sambucolusa.com/blogs/news-1/is-your-medicine-cabinet-ready-for-winter?_pos=2&_sid=db728cfdc&_ss=r (last accessed December 17, 2020).

[11] https://sambucolusa.com/pages/faqs (last accessed January 11, 2021).

**SECOND AMENDED CLASS ACTION COMPLAINT**

54.     Further,  Defendant's  website  identifies  Sambucol  as  the  "#1 Pharmacist Recommended Brand," also implying that the Products are drugs or meant to treat diseases.[12]

55.     Currently,  the  opening  page  of  Defendant's  Sambucol  website proclaims: "Get that NOT WORRIED ABOUT A 5 HOUR FLIGHT IN THE MIDDLE SEAT kinda feeling."[13]  In the context of the COVID pandemic and the accompanying concerns about transmission of the COVID virus during flights, a reasonable consumer would understand this statement as indicating that Defendant's Elderberry Products will protect them from COVID or other transmissible diseases.

56.     The aforementioned claims are implied disease claims under 21 C.F.R. 101.93(g)(2), and therefore the Products are misbranded under 21 U.S.C. 343(r)(6).

## INADEQUATE DIRECTIONS FOR USE

57.     Defendant's  Products  are  also  misbranded  within  the  meaning  of section 502(f)(1) of the FDCA, 21 U.S.C. 352(f)(1), in that their labeling fails to include adequate directions for use.

58.     "Adequate directions for use" means directions that enable a layperson to use a drug safely and for the purposes for which it is intended. *See* 21 CFR 201.5.

---

[12] https://sambucolusa.com/pages/sambucol-pharmacist-recommended-brand?_pos=1&_sid=4387abf49&_ss=r (last accessed July 7, 2021).
[13] https://sambucolusa.com/ (last accessed July 7, 2021).

**SECOND AMENDED CLASS ACTION COMPLAINT**

The Products are offered for conditions that are not amenable to self-diagnosis and treatment by individuals who are not medical practitioners; therefore, adequate directions for use cannot be written so that a layperson can use these drugs safely for their intended purposes.

59.   FDA-approved prescription drugs that bear their FDA-approved labeling are exempt from the requirements that they bear adequate directions for use by a layperson. However, Defendant's Products are not exempt from the requirement that their labeling bear adequate directions for use, 21 CFR 201.100(c)(2) and 201.115, because no FDA-approved applications are in effect for Defendant's Products.

60.   The introduction or delivery for introduction into interstate commerce of these misbranded drugs violates section 301(a) of the FD&C Act, 21 U.S.C. 331(a).

### ANTIOXIDANT MISBRANDING CLAIMS

61.   Defendant claims that its Products have "high antioxidant levels."

62.   As shown for Black Elderberry Original Syrup, the "high antioxidant levels" claim appears on both the packaging and the label:

19

**SECOND AMENDED CLASS ACTION COMPLAINT**

63.   Characterizing the level of a nutrient in food labeling without complying with the specific requirements pertaining to nutrient content claims for that nutrient constitutes misbranding under 21 U.S.C. § 343(r)(1)(A).

64.   Nutrient content claims using the term "antioxidant" must comply with the requirements listed in 21 CFR 101.54(g).  Defendant's claim that its Products have "High antioxidant levels" is a nutrient content claim that must comply with 21 CFR 101.54(g).

65.   21 CFR 101.54(g)(1) requires as a precondition for "[a] nutrient content claim that characterizes the level of antioxidant nutrients present in a food" that "[a]n RDI has been established for each of the nutrients[.]"

20

**SECOND AMENDED CLASS ACTION COMPLAINT**

66.     As acknowledged on the Products' label, there is no established

Reference Daily Intakes ("RDI") for Defendant's Elderberry Extract (berry):

## Supplement Facts

Serving Size 2 teaspoons (10ml)
Serving Per Container 12

| Amount per Serving | % Daily Value |
|---|---|
| Calories | 30 | |
| Total Carbohydrate | 8g | 3%† |
| Sugars | 8g | ** |
| Elderberry Extract (berry) | 3.8g | ** |

† Percent Daily Values are based on a 2,000 calorie diet.
** Daily Value not established.

OTHER INGREDIENTS: GLUCOSE SYRUP, PURIFIED WATER, CITRIC ACID, POTASSIUM SORBATE (TO RETARD SPOILAGE)

67.     In addition, no established RDI exists for the anthocyanins that

Defendant claims on its website are responsible for the alleged antioxidant benefits

of Defendant's Extract.

68.     Because the nutrient and dietary ingredient have no RDI, Defendant has

misbranded its Products when claiming that they have "High antioxidant levels."

69.     Additionally, 21 CFR 101.54(g)(4) requires that "[t]he names of the

nutrients that are the subject of the [antioxidant] claim are included as part of the

claim (e.g., 'high in antioxidant vitamins C and E')." Because Defendant fails to list

any specific nutrients that are the basis of its claim of "High antioxidant levels," it

**SECOND AMENDED CLASS ACTION COMPLAINT**

violates 21 CFR 101.54(g)(4), and its Products are misbranded for that reason as well.

### *DEFENDANT'S "SCIENTIFICALLY TESTED" CLAIM IS MISLEADING*[14]

70.    To further boost its sales and separate itself from the competition, the labels on Defendant's Products misleadingly state that the Products are "Scientifically Tested."

71.    Defendant also claims on its packaging that Sambucol includes "the unique black elderberry extract that has been used in scientific studies.  No other elderberry brand can make the same claim." An image of this representation, which appears on the packaging for Sambucol Black Elderberry Pastilles, is reproduced below:

---

[14] Per the Order Granting in Part and Denying in Part Defendant's Motion to Dismiss (ECF No 29), Plaintiffs' challenges to the "Scientifically Tested" claim do not apply to the UCL, FAL and CLRA causes of action herein.

**SECOND AMENDED CLASS ACTION COMPLAINT**



72.    In fact, there are no published studies at all that test the Products.  The Products have not been scientifically tested.   Defendant's statements that the Products have in fact been "scientifically tested" are, therefore, deceptive and misleading.

73.    In addition, the formulation of the Sambucol elderberry extract used in the Products currently being sold is not the same elderberry extract formulation used in published studies.  Because the Products being sold are made with formulations that do not match the tested or studied formulations, Defendant's claims that its

23

Sambucol Elderberry Extract "has been used in published scientific studies" is, therefore, also deceptive and misleading.

74.     Further,    reasonable    consumers    will    interpret    Defendant's representations on the Product labels that its Products are "Scientifically Tested" and, unlike any other elderberry brand, have been used in scientific studies as meaning that scientists have determined that Defendant's Products are effective in keeping consumers and their families safe from diseases when this is not the case. These representations are deceptive and misleading for this reason as well.

75.     Defendant has included its reference to "Scientific testing" and the use of Defendant's extract in scientific studies specifically in order to lead consumers into believing scientists have concluded that its Products are effective in preventing or mitigating diseases.

76.     Contrary to these representations, clinical studies of formulations of Defendant's proprietary extract and of elderberry generally have not conclusively established that elderberry and Defendant's Products are in fact effective, which confirms that Defendants' "Scientifically Tested" representation is deceptive and misleading to reasonable consumers.

77.     Defendant intended for Plaintiffs and the Class members to be deceived or misled.

**SECOND AMENDED CLASS ACTION COMPLAINT**

78.     Defendant's deceptive and misleading practices proximately caused harm to the Plaintiffs and the Class members.

79.     Plaintiffs and the Class members would not have purchased the Products or would not have paid as much for the Products had they known the truth about the mislabeled and falsely advertised Products.

## **FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFFS**

### ***Plaintiff Montiqueno Corbett***

80.     Plaintiff Montiqueno Corbett purchased Sambucol Black Elderberry Capsules, Sambucol Black Elderberry Syrup Original, and Sambucol Black Elderberry Gummies over the period from approximately November 2017 through January 2020 on Amazon and at a CVS Pharmacy in San Diego, California.

81.     Beginning in September or October of 2017 and prior to and at the time of each purchase of the Sambucol products from approximately November 2017 through January 2020, Plaintiff Corbett was exposed to, saw, and relied upon Defendant's materially misleading representations on the Products' packaging and labelling (at the CVS Pharmacy), the Sambucol website, Amazon's website and in Google advertisements that its elderberry ingredient (a) was developed by a virologist, (b) supports immunity, (c) supports the immune system, (d) is scientifically tested, (e) has been used in clinical studies, (f) has high antioxidant

levels, (g) helps you and your family stay healthy throughout the year, and (h) arms you with the best protection nature has to offer.

82.     When Plaintiff Corbett purchased Defendant's Elderberry Products, he believed that they were legally sold supplements.

83.     Plaintiff Corbett experienced no improvement in his health as a result of using Defendant's Products.

84.     Plaintiff Corbett's decision to buy the Elderberry Products was directly impacted and caused by the materially misleading representations that Defendant made  that its elderberry ingredient (a) was developed by a virologist, (b) supports immunity, (c) supports the immune system, (d) is scientifically tested, (e) has been used in clinical studies, (f) has high antioxidant levels, (g) helps you and your family stay healthy throughout the year, and (h) arms you with the best protection nature has to offer.

85.     Had Plaintiff Corbett known that the Elderberry Products were not legally sold supplements and had he known the truth about Defendant's materially misleading representations and omissions, he would not have purchased the Elderberry Products.

86.     By purchasing Defendant's illegally sold and falsely advertised Products, Plaintiff Corbett suffered injury in fact and lost money.

**SECOND AMENDED CLASS ACTION COMPLAINT**

87.    Plaintiff Corbett would like to continue purchasing Defendant's Products if they were legally sold supplements and if Defendant's false and misleading statements were true. Plaintiff Corbett is, however, unable to rely on Defendant's representations in deciding whether to purchase Defendant's products in the future.

### *Plaintiff Damaris Luciano*

88.    Plaintiff Damaris Luciano purchased Sambucol Black Elderberry Gummies at Walgreens in Holyoke, Massachusetts, starting in approximately late 2018 to early 2019 and continuing through February 2020.

89.    A couple of months before she first purchased the Sambucol Black Elderberry Gummies, she started seeing commercials on a major network, most likely NBC, which indicated that Sambucol would help prevent her from getting sick.  Shortly prior to and at the time of each purchase of the Sambucol product, Plaintiff Luciano was exposed to, saw, and relied upon Defendant's materially misleading representations on the Products' packaging and labelling at Walgreens and on a website describing the Sambucol products, which claimed that Defendant's elderberry ingredient supports immunity, supports the immune system, has high antioxidant levels, and has been clinically and scientifically tested.

90.    When Plaintiff Luciano purchased the Elderberry Products, she believed that they were legally sold supplements.

**SECOND AMENDED CLASS ACTION COMPLAINT**

91.    Plaintiff Luciano experienced no improvement in her health as a result of using Defendant's Products.

92.    Plaintiff Luciano's decision to buy the Elderberry Products was directly impacted and caused by the materially misleading representations that Defendant made that its elderberry ingredient supports immunity, supports the immune system, has high antioxidant levels, and has been clinically and scientifically tested.

93.    Had Plaintiff Luciano known that the Elderberry Products were not legally sold supplements and had she known the truth about Defendant's materially misleading representations and omissions, she would not have purchased the Elderberry Products.

94.    By purchasing Defendant's illegally sold and falsely advertised Products, Plaintiff Luciano suffered injury in fact and lost money.

95.    Plaintiff Luciano would like to continue purchasing Defendant's Products if they were legally sold supplements and if Defendant's false and misleading statements were true. Plaintiff Luciano is, however, unable to rely on Defendant's representations in deciding whether to purchase Defendant's products in the future.

28

**SECOND AMENDED CLASS ACTION COMPLAINT**

*__Plaintiff Rob Dobbs__*

96.     Plaintiff Rob Dobbs purchased Sambucol Black Elderberry Gummies over the period from August 2019 through April 2020 through Amazon.

97.     Prior to and at the time of each purchase of the Sambucol Black Elderberry Gummies from August 2019 through April 2020, Plaintiff Dobbs was exposed to, saw, and relied upon Defendant's materially misleading representations on the Products' packaging and labelling, in television commercials on a major network, on the Sambucol website, and on the Amazon website.  Plaintiff Dobbs saw the commercials several times in the weeks before his first purchase in August 2019 and heard and relied on Defendant's representations that the elderberry ingredient supports the immunity system.  He reviewed the product marketing, advertising, and labeling on the Amazon and Sambucol websites in the days prior to his initial purchase, where he saw and relied on Defendant's claims that its elderberry ingredient (a) was developed by a world renowned virologist, (b) supports immunity and supports the immune system, (c) has been scientifically tested, (d) has been used in clinical studies, (e) has high antioxidant levels, (f) helps you and your family stay healthy throughout the year, and (g) arms you with the best protection nature has to offer.

98.     When Plaintiff Dobbs purchased the Elderberry Products, he believed that they were legally sold supplements.

29

**SECOND AMENDED CLASS ACTION COMPLAINT**

99.   Plaintiff Dobbs experienced no improvement in his health as a result of using Defendant's Products.

100.   Plaintiff Dobbs' decision to buy the Elderberry Products was directly impacted and caused by the materially misleading representations that Defendant made that its elderberry ingredient (a) was developed by a world renowned virologist, (b) supports immunity and supports the immune system, (c) has been scientifically tested, (d)  has been used in clinical studies, (e) has high antioxidant levels, (f) helps you and your family stay healthy throughout the year, and (g) arms you with the best protection nature has to offer. Had Plaintiff Dobbs known that the Elderberry Products were not legally sold supplements and had he known the truth about Defendant's materially misleading representations and omissions, he would not have purchased the Elderberry Products.

101.   By purchasing Defendant's illegally sold and falsely advertised Products, Plaintiff Dobbs suffered injury in fact and lost money.

102.   Plaintiff Dobbs would like to continue purchasing Defendant's Products if they were legally sold supplements and if Defendant's false and misleading statements were true. Plaintiff Dobbs is, however, unable to rely on Defendant's representations in deciding whether to purchase Defendant's products in the future.

**SECOND AMENDED CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

103.   Plaintiffs bring this action individually and as representatives of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

**National Class: During the fullest period allowed by law, all persons in the United States who purchased the Products (the "National Class") for personal use and not for resale.**

**California State Subclass: During the fullest period allowed by law, all persons in the State of California who purchased the Products (the "California Subclass") for personal use and not for resale.**

**Massachusetts State Subclass: During the fullest period allowed by law, all persons in the State of Massachusetts who purchased the Products (the "Massachusetts Subclass") for personal use and not for resale.**

**Missouri State Subclass: During the fullest period allowed by law, all persons in the State of Missouri who purchased the Products (the "Missouri Subclass") for personal use and not for resale.**

104.   Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3)

31

Class Counsel. Plaintiffs reserve the right to amend the Class definition and Subclass definitions as necessary.

105.   Certification of Plaintiffs' claims for class-wide treatment are appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence that individual Class members would use to prove those elements in individual actions alleging the same claims.

106.   <u>Numerosity</u>: The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of thousands of consumers. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendant and its authorized retailers.

107.   <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Products that were manufactured, marketed, advertised, distributed, and sold by Defendant. Furthermore, the factual basis of Defendant's misconduct is common to all Class Members because Defendant has engaged in systematic fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

**SECOND AMENDED CLASS ACTION COMPLAINT**

108.  <u>Commonality</u>: Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

a.       Whether the Products contain illegal dietary ingredients, are mislabeled as dietary supplements, and are being sold in violation of the FDCA;

b.       Whether Defendant is explicitly or implicitly claiming that its Products can mitigate or prevent a disease or class of diseases in violation of the FDCA and DSHEA;

c.       Whether the claims Defendant made and is making regarding the Products are unfair or deceptive; specifically, whether the Products were illegally labeled as dietary supplements;

d.       Whether Defendant's Products are misbranded because their labelling fails to include adequate directions for use;

e.       Whether Defendant has misbranded and mislabeled its Products by claiming they have "High antioxidant levels";

f.       Whether Defendant knowingly made misleading statements in connection with consumer transactions that reasonable consumers were likely to rely upon to their detriment;

33

**SECOND AMENDED CLASS ACTION COMPLAINT**

g.      Whether Defendant knew or should have known that the representations and advertisements regarding the Products were false and misleading;

h.      Whether Defendant has breached express and implied warranties in the sale and marketing of the Products;

i.      Whether Defendant's conduct violates public policy;

j.      Whether Defendant's acts and omissions violate California law;

k.      Whether Defendant's acts and omissions violate Massachusetts law;

l.      Whether Defendant's acts and omissions violate Missouri law;

m.      Whether Defendant has been unjustly enriched by the sale of the Products to the Plaintiffs and the Class Members;

n.      Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Products;

o.      Whether the Plaintiffs and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

p.      Whether Plaintiffs and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

109.    Adequate Representation: Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class

**SECOND AMENDED CLASS ACTION COMPLAINT**

Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

110.   <u>Injunctive/Declaratory Relief</u>: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Defect. Defendant has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

111.   <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that

**SECOND AMENDED CLASS ACTION COMPLAINT**

class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

112.   Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

113.   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## CAUSES OF ACTION

### COUNT I
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 et seq.  ("UCL")**
**(On Behalf of the National Class and California Subclass)**

114.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

115.   Plaintiff Corbett brings this claim individually and on behalf of all members of the National Class and California Subclass against Defendant.

116.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

117.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

**SECOND AMENDED CLASS ACTION COMPLAINT**

118.   <u>Unlawful</u>:   The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.      The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

b.      The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

c.      The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq.; and

d.      The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 et seq.

119.   <u>Unfair</u>: Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

120.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of: the Consumers Legal Remedies Act, the False Advertising Law, the FDCA, and the California Sherman Food, Drug, and Cosmetic Law.

121.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not

outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

122.   <u>Fraudulent</u>:  A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

123.   As set forth in detail above, Defendant has fraudulently labeled its Products as legal dietary supplements when in fact they are illegal to sell; has fraudulently misbranded and mislabeled in violation of the FDCA; and has made false and misleading statements that are likely to mislead reasonable consumers.

124.   Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

125.   Plaintiff Corbett and the Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging.  Plaintiff Corbett and the Class Members lack an adequate remedy at law to prevent this prospective harm and, therefore, injunctive relief enjoining Defendant's deceptive practices is proper.

126.   Defendant's conduct caused and continues to cause substantial injury to Plaintiff Corbett and the Class Members.  Plaintiff Corbett and the Class Members have suffered injury in fact as a result of Defendant's unlawful conduct.

**SECOND AMENDED CLASS ACTION COMPLAINT**

127.   In accordance with Bus. & Prof. Code § 17203, Plaintiff Corbett seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

128.   Plaintiff Corbett and the Class Members also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition violating the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. and the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*. because Plaintiff Corbett and the Class Members lack an adequate remedy of law for violations of those statutes.

## COUNT II
### California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500 ("FAL")
### (On Behalf of the California Subclass)

129.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

130.   Plaintiff Corbett brings this claim individually and on behalf of the members of the California Subclass against Defendant.

131.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly

**SECOND AMENDED CLASS ACTION COMPLAINT**

to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

132.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

133.    As alleged in detail above, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products misled consumers acting reasonably regarding the ingredients and that the Products were legally labeled dietary supplements when in fact they were and are illegal.

134.    Plaintiff Corbett and the Class Members suffered injury in fact as a result of Defendant's actions as set forth herein because they purchased the Products in reliance on Defendant's labeling claims that under the FDCA and DSHEA amount to intentional mislabeling and misbranding of the Products, including among other things, Defendant's claims that the Products are legal dietary supplements when they are not.

135.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant

40

**SECOND AMENDED CLASS ACTION COMPLAINT**

knew or reasonably should have known, and omitted material information from its advertising.

136.   Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

137.   As a result, Plaintiff Corbett, the California Subclass Members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

138.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff Corbett, on behalf of himself and the California Subclass, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

**COUNT III**
**California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 et seq. ("CLRA")**
**(On Behalf of the California Subclass)**

139.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

140.   Plaintiff Corbett brings this claim individually and on behalf of the members of the California Subclass against Defendant.

141.   Defendant is a "person" under the CLRA, Cal. Civ. Code § 1761(c).

41

142.   Plaintiff Corbett and California Subclass members are "consumers" under the CLRA, Cal. Civ. Code § 1761(d).

143.   The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

144.   Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff Corbett and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

145.   Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

**SECOND AMENDED CLASS ACTION COMPLAINT**

146.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

147.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), on October 26, 2021, Plaintiff Corbett, through counsel, mailed Defendant a letter by certified mail addressed to its headquarters in San Diego, California (with a copy sent to Defendant's counsel as well), providing notice of Defendant's alleged violations of the CLRA, demanding that Defendant correct such violations, and providing Defendant with the opportunity to correct its business practices.  See Exhibit A. Plaintiff Corbett specifically identified which provisions of Cal. Civ. Code § 1770 Defendant had violated. Defendant did not, however, correct its business practices, and more than 30 days have passed since Defendant received Plaintiff Corbett's notice on October 29, 2021.  See Exhibit B. Plaintiff lacks an adequate remedy at law to prevent prospective harm from defendant's unlawful business practices.

148.   Pursuant to California Civil Code § 1780, Plaintiff Corbett seeks monetary relief, injunctive relief, his reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

## COUNT IV
### VIOLATIONS OF MASS. GEN. LAWS CHAPTER 93A, § 2
### (On Behalf of the Massachusetts Subclass)

149.   Plaintiffs reallege and repeat the allegations set forth in the preceding paragraphs as if fully set forth herein.

43

**SECOND AMENDED CLASS ACTION COMPLAINT**

150.    Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

151.    Plaintiff Luciano, members of the Massachusetts Subclass, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

152.    Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

153.    The Elderberry Products at issue constitute property under Mass. Gen. Laws Ch. 93A.

154.    Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

a.    Misrepresenting the approval or certification of goods;

b.    Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

c.    Representing that goods are of a particular standard, quality, or grade, if they are of another;

d.    Disparaging the goods, services, or business of another by false or misleading representation of fact;

e.    Advertising goods with intent not to sell them as advertised;

f.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

**SECOND AMENDED CLASS ACTION COMPLAINT**

g.      Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

h.      Representing that goods have been supplied in accordance with a previous representation when they have not.

155.   Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold illegally labeled dietary supplements.

156.   Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

157.   Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Subclass members.

158.   Plaintiff Luciano and the members of the Massachusetts Subclass have suffered injury in fact, including economic injury, and actual damages resulting from

**SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant's material omissions and misrepresentations because, *inter alia*, they lost money when they purchased the Products and/or paid an inflated purchase price for the Products.

159.   Defendant knew, should have known, or was reckless in not knowing, that the defect in the Products rendered them not suitable for their intended use.

160.   Defendant had a duty to disclose mislabeling and misbranding because Defendant had knowledge of the true facts related to the Products prior to making sales of the Products.

161.   Pursuant to Mass. Gen. Laws Ch. 93A § 9(3), on October 26, 2021, more than 30 days prior to the filing of this Second Amended Class Action Complaint, Plaintiff Luciano, through Counsel, mailed Defendant through its registered agent (with a copy mailed to Defendant's counsel) a written demand for relief that identified Plaintiff Luciano and reasonably described the unfair or deceptive acts or practices relied upon and the injury suffered.  See Exhibit C. Defendant received the demand on October 29, 2021.  See Exhibit D.

162.   As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and Subclass members have been damaged as alleged herein and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

**SECOND AMENDED CLASS ACTION COMPLAINT**

163.   Plaintiff and other Subclass members have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

164.   Pursuant to Mass. Gen. Laws, Chapter 93A § 9, Plaintiff Luciano and the Massachusetts Subclass seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, reasonable attorney's fees, costs, and any other just and proper relief available under Massachusetts law.

### COUNT V
**Violation of Missouri Merchandising Practices Act ("MMPA")**
**Mo. Ann. Stat. § 407.010, *et. seq.***
**(On Behalf of Missouri Subclass)**

165.   Plaintiffs reallege and repeat the allegations set forth in the preceding paragraphs as if fully set forth herein.

166.   Plaintiff Dobbs brings this action on behalf of himself and the Missouri State Class against Defendant.

167.   Plaintiff Dobbs, members of the Missouri Subclass, and Defendant are all persons within the meaning of Mo. Ann. Stat. § 407.010

168.   Defendant is engaged in "trade" or "commerce" within the meaning of Mo. Ann. Stat. § 407.010.

**SECOND AMENDED CLASS ACTION COMPLAINT**

169.   The Products are "merchandise" within the meaning of Mo. Ann. Stat. § 407.010.

170.   Plaintiff Dobbs purchased the Products for personal, family, or household purposes.

171.   Plaintiff Dobbs and Subclass members suffered an ascertainable loss of money as a result of Defendant's conduct.

172.   The MMPA prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Ann. Stat. § 407.020.

173.   The MMPA protects consumers by expanding the common law definition of fraud "to preserve fundamental honesty, fair play and right dealings in public transactions." *State ex rel. Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 368 (Mo.App.1973).

174.   Through the course of their business, Defendant violated the MMPA. Defendant knew or should have known that its representations regarding the Products were false or misleading.

175.   In the course of business, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud,

**SECOND AMENDED CLASS ACTION COMPLAINT**

misrepresentations, or concealment, suppression, or omission of any material with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Products, including, but not limited to:

a.    Misrepresenting the Products as legal dietary supplements when under the FDCA and DSHEA, they are illegal;

b.    Mislabeling and misbranding the Products and making false and deceiving representations regarding the Products' ability to mitigate, prevent, or cure a disease or class of diseases;

c.    Mislabeling and misbranding the Products under the FDCA and DSHEA by failing to include adequate directions for the Products' use;

d.    Mislabeling and misbranding the Products under the FDCA and DSHEA by unlawfully claiming that the Products have "high antioxidant levels"; and

e.    Making false and misleading claims that science has established the effectiveness of the Products.

176.    Defendant's actions have the tendency or capacity to mislead, deceive, cheat, or create a false impression or misrepresentation for the average consumer, and did mislead Plaintiff Dobbs and the Missouri State Class.

177.    As a direct and proximate result of Defendant's deceptive acts, practices, fraud, and misrepresentations, Plaintiff Dobbs and the Missouri State

**SECOND AMENDED CLASS ACTION COMPLAINT**

Class suffered significant damages, and seek damages in an amount to be determined at trial.

## COUNT VI
**Breach of Express Warranties**
**(On Behalf of the National Class and Subclasses)**

178.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

179.   Plaintiffs bring this claim individually and on behalf of the members of National Class and the California, Massachusetts, and Missouri Subclasses against Defendant.

180.   Through the Products' labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiffs and the Class Members purchased the Products in reasonable reliance on those statements.

181.   Plaintiffs and the Class Members have privity of contract with Defendant through their purchase of the Elderberry Products, and through the express warranties that Defendant issued to its customers.  Defendant's warranties accompanied the Elderberry Products and were intended to benefit end-users of the Elderberry Products.  To the extent that Plaintiffs and/or the Class Members purchased the Elderberry Products from third-party retailers, privity is not required

**SECOND AMENDED CLASS ACTION COMPLAINT**

because Plaintiffs and the Class Members are intended third-party beneficiaries of the contracts between Defendant and third-party retailers, and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailers.  In other words, the contracts are intended to benefit the ultimate consumer or user of the Elderberry Products.

182.   Defendant breached the express warranties by selling Products that are illegally labeled as dietary supplements.

183.   Plaintiffs and the Class Members would not have purchased the Products had they known that the Products are illegally labeled as dietary supplements.  Plaintiffs and the Class Members relied on Defendant's misrepresentations and misstatements.

184.   That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiffs and Class members paid for the Products.

185.   Furthermore, Defendant had actual knowledge that the Products were not legal dietary supplements because it has actual knowledge of the nature, ingredients and qualities of the ingredients in its Products and it knows that the affirmations and representations it makes concerning the legality of the Products' on their labeling and on Defendant's website and advertising are false.

186.   Plaintiffs provided Defendant with notice of the alleged breach within a reasonable time after they discovered the breach or should have discovered it.

**SECOND AMENDED CLASS ACTION COMPLAINT**

187.    As a result of Defendant's breach of warranty, Plaintiffs and the Class Members have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from the purchases.

## COUNT VII
**Breach of Implied Warranty of Merchantability**
**(On Behalf of the National Class and Subclasses)**

188.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

189.    Plaintiffs bring this claim individually and on behalf of the members of National Class and the California, Massachusetts, and Missouri Subclasses against Defendant.

190.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiffs and the Class Members that, among other things, the Products were properly labeled as legal dietary supplements.

191.    Plaintiffs and the Class Members bought the Products manufactured, advertised, and sold by Defendant, as described herein.

192.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class Members, and there was, in the sale to Plaintiffs and other consumers, an implied warranty that those goods were merchantable.

**SECOND AMENDED CLASS ACTION COMPLAINT**

193.   Plaintiffs and the Class Members purchased the Elderberry Products manufactured and marketed by Defendant by and through Defendant's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers when bought from a third party. Defendant knew or had reason to know of the specific use for which the Elderberry Products were purchased.

194.   However, Defendant breached the implied warranty of merchantability in that the Products are not lawfully labeled as legal dietary supplements.

195.   Plaintiffs provided Defendant with notice of the alleged breach within a reasonable time after they discovered the breach or should have discovered it.

196.   As an actual and proximate result of Defendant's conduct, Plaintiffs and the Class Members did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the Products nor are they fit for their ordinary purpose of providing the benefits as promised.

197.   Here, privity is not required because the implied warranty claim relates to food or other substances intended for human consumption by consumers, such as the Products.

198.   To the extent that Privity is required, Defendant entered into contracts with the authorized retailers from whom Plaintiffs and the Class Members purchased

**SECOND AMENDED CLASS ACTION COMPLAINT**

the Products, and Plaintiffs and the Class Members were the intended third-party beneficiaries of those contracts, an exception to the privity requirement.

199.   Plaintiffs and the Class Members have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase prices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.   Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiffs as the class representatives, and designating the undersigned as class counsel;

B.   Enter an order awarding Plaintiffs and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law;

C.   Declare that Defendant is financially responsible for notifying all Class members of the mislabeling and misbranding of the Products;

D.   Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendant to make full restitution to Plaintiffs and the members of the Class;

**SECOND AMENDED CLASS ACTION COMPLAINT**

E.     Defendant shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

F.     An order awarding Plaintiffs and the Classes pre-judgment and post-judgment interest as allowed under the law;

G.     Grant reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action, including expert witness fees; and

H.     Grant such other and further relief as this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: November 29, 2021                  Respectfully Submitted,

                                    By:  */s/ Alex Straus*
                                          Alex Straus (State Bar. No. 321366)
                                          **MILBERG COLEMAN BRYSON**
                                          **PHILLIPS GROSSMAN, PLLC**
                                          280 S. Beverly Drive
                                          Beverly Hills, CA 902126
                                          Tel: 865-247-0080
                                          astraus@milberg.com.com

                                          Rachel Soffin*
                                          **MILBERG COLEMAN BRYSON**
                                          **PHILLIPS GROSSMAN, PLLC**
                                          First Tennessee Plaza
                                          800 S. Gay Street, Suite 1100
                                          Knoxville, Tennessee 37929
                                          Tel: 865-247-0080

**SECOND AMENDED CLASS ACTION COMPLAINT**

rsoffin@ milberg.com

Martha A. Geer*
Erin Ruben*
Sarah Spangenburg*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 West Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: 919-600-5035
mgeer@milberg.com
eruben@ milberg.com
sspangenburg@ milberg.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: 313-303-3472
nsuciu@milberg.com

***Admitted Pro Hac Vice***

***Counsel for Plaintiffs and the Class***

**SECOND AMENDED CLASS ACTION COMPLAINT**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2021, I caused the foregoing to be filed via the Court's electronic filing system which will notify all counsel of record of the same.

*/s/ Alex R. Straus*
Alex R. Straus

**SECOND AMENDED CLASS ACTION COMPLAINT**