UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTIQUENO CORBETT and ROB DOBBS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHARMACARE U.S., INC.,<br><br>Defendant. | Case No.: 3:21-cv-00137-JES-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO SEAL PORTIONS OF PLAINTIFFS' OPPOSITION;**<br><br>**(2) GRANTING MOTION TO ALLOW NON-ELECTRONIC FILING OF PORTIONS OF EXHIBIT F; and**<br><br>**(3) GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 252, 255, 257]** |

Plaintiffs filed a putative class action against Defendant PharmaCare U.S., Inc. ("Defendant" or "PharmaCare"), asserting various consumer protection and breach of warranty claims based on Sambucol products, PharmaCare's dietary supplements containing black elderberry extract (the "Products"). ECF No. 1. Defendant moved for summary judgment ("Motion"). ECF No. 252. Plaintiff filed an Opposition, ("Opp'n," ECF

No. 253), and Defendant filed a Reply, ("Reply," ECF No. 258). The Court held oral arguments on February 19, 2025. Having reviewed the Parties' submissions and the applicable law, the Court **GRANTS** the Motion.

## I. BACKGROUND

### A. Procedural Background

On November 29, 2021, Plaintiffs[1] filed a Second Amended Complaint[2] ("SAC") alleging the following claims: (1) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (2) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (4) Missouri's Merchandising Practices Act ("MPPA"), Mo. Ann. Stat. § 407.010 et seq.; (5) Breach of Express Warranties; and (6) Breach of Implied Warranty of Merchantability. ECF No. 25. On May 25, 2023, Plaintiffs filed a Motion for Class Certification, (ECF No. 147), which was granted in part and denied in part.[3] ECF No. 210 ("Cert. Order"). On January 2, 2025, Defendant filed this Motion. ECF No. 252.

### B. Plaintiffs' Allegations

The Court previously detailed the Products and statements made on the Products' labels and advertising alleged to be false and misleading (the "Challenged Misrepresentations"). *See* Cert. Order at 2-4. Plaintiffs rely on two underlying theories. First, Plaintiffs allege the Products were illegal to sell as dietary supplements because they contain a new unreported dietary ingredient (the "NDI claims"). SAC ¶¶ 22-37. Second,

---

[1] Damaris Luciano, an original named plaintiff and Massachusetts resident who brought an additional claim under Massachusetts state law, was subsequently dismissed. ECF Nos. 59, 84, 120.

[2] On January 25, 2021, Plaintiffs filed their original Complaint. ECF No. 1. Defendant's motion to dismiss the Complaint was granted in part and denied in part. ECF No. 29. On July 7, 2021, Plaintiffs filed a First Amended Complaint ("FAC"). ECF No. 31. Defendant's motion to dismiss the FAC was granted in part and denied in part. ECF No. 44. Plaintiffs' motion for leave to file a third amended complaint was denied. ECF Nos. 133, 164.

[3] The Court granted certification of two California subclasses and one Missouri subclass but denied certification of two nationwide classes. ECF No. 210.

Plaintiffs allege the Products, through the Challenged Misrepresentations, unlawfully claim to mitigate or prevent disease (the "Disease claims"). *Id.* ¶¶ 38-56.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of establishing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. In such cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has satisfied its initial burden, the nonmoving party cannot rest on the mere allegations or denials of its pleading. *Id.* at 322 n.3. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The nonmoving party may meet this requirement by presenting evidence from which a reasonable jury could find in its favor, viewing the record as a whole, in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221–22 (9th Cir. 1995). In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citations omitted).

///

## III.   EX PARTE MOTIONS

Before addressing the merits of the motion for summary judgment, the Court first considers Plaintiffs' request to seal portions of their opposition, specifically Exhibits C and D; and their request to allow the non-electronic filing of portions of Exhibit F of the Declaration of Trenton R. Kashima. Defendant has not opposed either request. Good cause appearing, the Court **GRANTS** each motion.

## IV.   DISCUSSION

### A.   The NDI Claims

"Defendant admits that its Sambucol Products do not contain a novel elderberry extract" because "[i]t is just elderberry juice."[4] Opp'n at 6-7. Thus, Plaintiffs concede "[t]he parties agree that judgment should be entered for the NDI claims." *Id*. at 7; Reply at 7. As there is no genuine dispute of material fact, Plaintiffs' concession disposes of their individual and certified class NDI claims, including Dobbs' individual claims, the express and implied warranty claims, and the California and Missouri subclass claims. Therefore, the Court **GRANTS** summary judgment for PharmaCare as related to the NDI claims.[5]

### B.   The Disease Claims

Having conceded summary judgment on the NDI claims, Plaintiffs' only remaining claims are Plaintiff Corbett's and the California subclass Disease claims. Opp'n at 20 n.10.

California's UCL, CLRA, and FAL collectively prohibit unlawful, unfair, or fraudulent business practices, as well as untrue, deceptive, or misleading advertising. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Such claims are evaluated under the reasonable consumer standard, so Plaintiffs must show members of the public are "likely to be deceived." *Id*. (internal quotation marks and citations omitted).

---

[4] To be clear, the Court does not adopt Plaintiffs' assertions as fact. Rather, the assertions help explain why Plaintiffs concede judgment on the NDI claims.

[5] Plaintiffs request the Court make findings of fact on the NDI claims. Opp'n at 7. The Court declines. Once summary judgment is granted, "[t]here is no requirement that the [Court] make findings of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

These laws prohibit both false advertising and misleading advertising that, even if true, "[have] a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)). The reasonable consumer standard goes beyond "a mere possibility" that a product label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Instead, "the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation marks omitted). In sum, the determinative question is "whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers." *Id*.

In California, determining whether a business practice is deceptive is usually a question of fact considering the evidence. *Williams*, 552 F.3d at 938-39 (citations omitted). However, several Ninth Circuit cases have dismissed claims when it was not plausible for a reasonable consumer to have been deceived. *See McGinity*, 69 F.4th at 1099 ("[w]ith the entire product in hand, we conclude, no reasonable consumer would think that the products are either completely or substantially natural"); *see also Ebner*, 838 F.3d at 966 ("[p]laintiff has not alleged, and cannot allege, facts to state a plausible claim that the . . . label is false, deceptive, or misleading"); *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 886 (9th Cir. 2021) (the "representations on the front label and the ingredients statement . . . are not misleading to a reasonable consumer as a matter of law"). PharmaCare argues judgment on the Disease claims should be granted in their favor "[b]ecause Plaintiffs have not met their burden to show that a reasonable consumer would be deceived into believing that the Products treat or prevent disease despite an express disclaimer to the contrary." Mot. at 32. The Court agrees.

### 1. Standing

The Court previously rejected PharmaCare's argument that Plaintiff Corbett lacks standing. *See* Cert. Order at 12-13. PharmaCare again argues Plaintiff Corbett lacks

standing, despite offering neither factual reasoning nor legal authority to support this redundant assertion. Mot. at 32. Again, the Court rejects this argument for the same reasons discussed at the class certification stage. *See* Cert. Order at 12-13.

### 2. Federal Regulations

The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 343 et seq., govern the labeling of dietary supplements. *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 808 (9th Cir. 2020). The Food and Drug Administration ("FDA") enforces the FDCA, which prohibits product labels that are false or misleading. *Id*. at 809 (citing 21 C.F.R. § 1.21(a)). "For dietary supplements, the FDCA distinguishes between 'disease claims' and 'structure/function claims.'" *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 846 (9th Cir. 2019). Structure/function claims describe the role of the supplement or characterize how the supplement works, but "may not claim to diagnose, mitigate, treat, cure, or prevent [disease]." *Id*. (internal quotation marks and citation omitted). Whereas disease claims explicitly or implicitly claim to "diagnose, mitigate, treat, cure, or prevent disease . . . (such as by claiming that a product treats a disease's characteristic signs or symptoms)." *Id*. (internal quotation marks and citation omitted).

To make a proper structure/function claim: (1) the manufacturer must substantiate the statement is true and not misleading; (2) the statement includes a disclaimer that the FDA has not evaluated the statement and the product does not intend to "diagnose, treat, cure, or prevent any disease;" and (3) the statement itself does not claim to "diagnose, treat, cure, or prevent" disease. *Id*. at 846-47. So long as these requirements are met, a dietary supplement manufacturer may assert structure/function claims without FDA pre-approval. *Kroessler*, 977 F.3d at 809. For disease claims, "the product will be subject to regulation as a drug unless the claim is an authorized health claim for which the product qualifies." 21 C.F.R. § 101.93(f).

The FDA published guidelines defining proper structure/function claims. *See* Regulations on Statements Made for Dietary Supplements Concerning the Effect of the

Product on the Structure or Function of the Body, 65 Fed. Reg. 1000-01 (Jan. 6, 2000). "[S]tructure/function claims may use general terms such as strengthen, improve, and protect, as long as the claims do not suggest disease prevention or treatment." *Dachauer*, 913 F.3d at 847. (internal quotation marks and citation omitted). As a relevant example, the FDA defines "supports the immune system" as a structure/function claim. 65 Fed. Reg. 1000-01 at 1029. However, "supports the body's antiviral capabilities" is a disease claim, with the FDA noting, "[t]he distinction between the two claims is one of specificity." *Id*.

### 3. Preemption

Private plaintiffs cannot sue to enforce FDCA violations, but "may bring analogous state law claims as long as the FDCA does not preempt those claims." *Kroessler*, 977 F.3d at 808. The Court previously rejected PharmaCare's argument that the Disease claims are preempted. *See* ECF No. 44 at 15-24. PharmaCare again argues the Disease claims are preempted, despite failing to offer legal authority to support this assertion. Mot. at 34. Again, the Court rejects this argument. *See* ECF No. 44 at 15-24.

### 4. The Challenged Misrepresentations

Ninth Circuit case law offers guideposts for how the Court should analyze the Challenged Misrepresentations, often distinguishing between deception and ambiguity. A deceptive statement on the front of a label cannot be saved by the truth being hidden on the side or back. *Williams*, 552 F.3d at 939 ("reasonable consumers should [not] be expected to look beyond misleading misrepresentations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"); *Ebner*, 838 F.3d at 966 ("[if] the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception"); *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024) ("[p]lacing a disclaimer or a fine-print ingredients list on a product's back label does not necessarily absolve a defendant of liability for deceptive statements on the front label").

However, an ambiguous statement on the front of a label can be clarified by the side or back label to avoid misleading consumers. *Whiteside*, 108 F.4th at 779 ("the back label

clarified the ambiguity on the front label and removed any reasonable possibility that consumers would be misled"); *McGinity*, 69 F.4th at 1099 ("when . . . a front label is ambiguous, the ambiguity can be resolved by reference to the back label"). When defining ambiguity, the Ninth Circuit holds that "a front label is not ambiguous simply because it is susceptible to two possible meanings; a front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Whiteside*, 108 F.4th at 781; *see also Trader Joe's*, 4 F.4th at 882 (reasonable consumers would need more information before they could reasonably determine the meaning behind an ambiguous label).

Also relevant to the analysis is whether the potentially misleading label or statement is accompanied by an asterisk. As a matter of law, "the presence of an asterisk alone puts a [reasonable] consumer on notice that there are qualifications or caveats" to the label or statement in question. *Whiteside*, 108 F.4th at 785; *see also Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *5 (S.D. Cal. Sep. 18, 2015) ("Plaintiff cannot simply look to the statement on the front label, ignore the asterisk, and claim he has been misled."). In *Whiteside*, the Ninth Circuit held that "[t]he asterisk and [disclaimer] . . ., paired with the back label ingredients list, [made] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Whiteside*, 108 F.4th at 785 (internal quotation marks omitted) (citing *Williams*, 552 F.3d at 939).

Turning to the merits of this case, Plaintiffs' argument as to why the Products mislead reasonable consumers directly contradicts Ninth Circuit precedent and is unsustainable as a matter of law. Plaintiffs allege "[w]hen Defendant's claims are viewed in their totality, they are . . . claiming to mitigate or prevent disease."[6] SAC ¶ 39. Plaintiffs do not argue the Challenged Misrepresentations are false. Opp'n at 21. Instead, Plaintiffs

---

[6] As an initial matter, "Plaintiffs' challenges to the 'Scientifically Tested' claim do not apply to the UCL, FAL and CLRA causes of action herein." SAC at 22 n.14. Therefore, the Court does not factor "Scientifically Tested" into its analysis whether the Challenged Misrepresentations are misleading and unlawfully claim to mitigate or prevent disease.

assert Defendant illegally marketed the Products with implied disease claims such as "virologist developed," "developed by a world renowned virologist," and "support[s] immunity." *Id*.

Three labels from one of the Products expose a major legal flaw with Plaintiffs' argument. *See* SAC at ¶ 9. The Challenged Misrepresentations appear in multiple locations on the Product's box. "Virologist developed" appears on a side or back label. *Id*. "Developed by a world renowned virologist" appears in small print on a separate side or back label. *Id*. "Supports immunity" appears on the front label and is accompanied by an asterisk. *Id*. Of relevance, the SAC does not include a picture of the fourth label from the Product's box, which presumably includes the ingredient list and mandatory FDA disclaimer associated with the asterisk.[7] More importantly, Plaintiff Corbett admits "he relied on the entire label, which included statements other than the 'scientifically tested' and 'supports immunity' claims" located on the front of the Product's box. Opp'n at 21 n.11.

PharmaCare's argument is persuasive, "that if Plaintiffs are correct that a reasonable consumer would explore the various panels of the packaging sufficient to find all three Challenged [Misrepresentations], then the reasonable consumer would also find the disclaimer." Reply at 12. Although the mere existence of the disclaimer does not bar the Disease claims, *Whiteside*, 108 F.4th at 778, its presence within the context of the entire label helps to inform whether the Challenged Misrepresentations are deceptive or ambiguous. Plaintiff Corbett's reliance on the entire label, which included an asterisk, ingredients list and disclaimer, is indicative of its ambiguity because he necessarily required more information about the Product. *See Whiteside*, 108 F.4th at 781; *see also Trader Joe's*, 4 F.4th at 882. It follows that the Product's entire label "[makes] it impossible for [Plaintiffs] to prove that a reasonable consumer was likely to be deceived" by the Challenged Misrepresentations. *Williams*, 552 F.3d at 939.

---

[7] Plaintiffs concede the existence of the FDA disclaimer on the Product's label. See Opp'n at 24-25.

Plaintiffs' subsequent argument that the "disclaimer was not effective to dispel the alleged implied disease claims" is also unpersuasive. Opp'n at 25. Plaintiff primarily relies on the expert report of Dr. Dennis, ("Dennis Report," ECF No. 147-15), that noted an increase in consumer belief that the Products would "help lessen the severity of symptoms" from a cold, flu, or virus. Opp'n at 26. However, this conclusion is unhelpful because it answers the wrong question. The question is not whether reasonable consumers *are more likely to believe* that labels containing the Challenged Misrepresentations imply disease claims, *as compared to* labels that do not contain the Challenged Misrepresentations. The relevant question is whether reasonable consumers *actually believe* the Challenged Misrepresentations implicitly claim the Products treat or prevent disease.

The consumer perception survey results within the Dennis Report help answer the relevant question. *See* Dennis Report at ¶ 66. The survey tested six statements to determine if consumers were deceived by the Challenged Misrepresentations (the "Test Group"). *Id*. For the most part, they were not. The least impactful statement was, "[t]he product will help lessen the severity of symptoms from flu or virus," with 46.1% of the Test Group agreeing. *Id*. The most impactful statement was, "[t]here are scientific publications that show the Black Elderberry in the product is effective in protecting you from disease, colds, flu, or virus," with 61.2% of the Test Group agreeing. Combined, only 51.9% of the Test Group indicated the Challenged Misrepresentations implicitly claim the Products treat or prevent disease. *Id*. In *McGinity*, the Ninth Circuit found a survey where the respondents "were split nearly 50/50" confirmed the challenged terms were ambiguous, not misleading. *McGinity*, 69 F.4th at 1099. Applying *McGinity* to the facts here, the Court agrees with PharmaCare that the Dennis Report "results evidence ambiguity, not deception." Reply at 13.

In sum, there is no dispute of material fact. As a matter of law, the Challenged Misrepresentations are ambiguous, not deceptive, and are not misleading to a reasonable consumer. Therefore, the Court **GRANTS** summary judgment for PharmaCare as related to the Disease claims.

## V. CONCLUSION

After due consideration and for the reasons discussed above, the Court **GRANTS** summary judgment on both the NDI claims and the Disease claims to Defendant. Further, the Court **GRANTS** Plaintiffs' request to file portions of their opposition under seal and Plaintiffs' request to allow non-electronic filing of portions of Exhibit F of the Declaration of Trenton R. Kashima. The Clerk of Court shall enter judgment for Defendant and close this case.

**IT IS SO ORDERED.**

Dated: June 24, 2025

Honorable James E. Simmons Jr.
United States District Judge